USDC SCAN INDEX SHEET










MAM    11/8/04    10:58
3:03-CV-00562    CAPIANCO V. LONG-TERM DISABILITY
*71*
*O.*

04 NOV -4 AM 8:26

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL CAPIANCO,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>LONG TERM DISABILITY PLAN OF SPONSOR UROMED CORP., a Corporation, et al.,<br><br>　　　　　　Defendants. | CASE NO. 03cv0562 DMS (AJB)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 41, 52] |

Plaintiff Gil Capianco ("Plaintiff") brings this civil action pursuant to 29 U.S.C. § 1132. Plaintiff alleges two counts in his Complaint: (1) A claim for benefits under the Employee Retirement Income Security Act ("ERISA"), and (2) a claim for statutory penalties under ERISA. Plaintiff filed his present motion for summary judgment on April 28, 2004. Defendant filed its opposition to Plaintiff's motion and its cross-motion for summary judgment on June 4, 2004. Plaintiff filed his opposition to Defendant's motion and reply to his motion on July 8, 2004. Defendant filed its reply to Plaintiff's opposition on July 16, 2004.

On October 29, 2004, the Court heard oral argument on the parties' motions. Howard Hellen, Esq. appeared on behalf of Plaintiff, and Dennis Rolstad, Esq. appeared on behalf of Defendant. After reviewing the parties' moving papers and oppositions thereto and the record

///

- 1 -

03cv0562

on file herein, and after hearing oral argument from counsel, the Court issues the following order.

## I.
## FACTUAL BACKGROUND

Plaintiff is a participant in a Hartford long-term disability insurance policy issued to his former employer, Uromed Corporation. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 2.) The Hartford policy is part of an ERISA plan. (*Id.*) The policy provides: "[The Hartford Life and Accident Insurance Company has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Decl. of Kim M. Huber in Supp. of Def.'s Mot. for Summ. J. ("Huber Decl."), Ex. A at POL020.)

On or about October 29, 2001, two days before leaving his employment at Uromed, Plaintiff submitted a claim to Hartford for payment of long-term disability benefits. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 2.)

On March 5, 2002, Hartford sent a letter to the pharmacy Express Scripts requesting a complete printout of all prescriptions filled for Plaintiff from October 1, 2000, to the present. (*Id.*)

On March 6, 2002, Hartford sent a letter to Plaintiff urging him to contact his treating physicians and Express Scripts to expedite the information to Hartford. (*Id.* at 3.)

On March 25, 2002, Hartford sent letters to Doctors Nelson and Anderson requesting additional information pertaining to Plaintiff's claim for the period of January 1, 2001, to March 31, 2001, as well as information previously requested. (*Id.*) Hartford also requested information from Plaintiff's employer about the medical insurance carrier for employees during October 2001. (*Id.*)

On April 11, 2002, Hartford sent a further request to Plaintiff for outstanding information so that it could fully evaluate his claim. (*Id.*)

///

1   On May 3, 2002, Hartford notified Plaintiff that the pre-existing conditions limitations in the policy[1] applied to his claim, and therefore his claim was denied. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 5.)

On August 15, 2002, Plaintiff sent a letter to Hartford providing notice of his intent to appeal the denial of his claim and requesting a copy of the policy and file. (Pl.'s Separate Statement of Uncontroverted Material Facts in Supp. of Opp'n to Cross-Mot. for Summ. J. at 13.)

On August 28, 2002, Hartford sent Plaintiff a copy of the policy and other information from the administrative review. (*Id.* at 14.) Hartford sent a follow-up letter to Plaintiff on September 9, 2002, asking Plaintiff to complete the appeal and submit it to Hartford. (*Id.*)

On October 28, 2002, Plaintiff appealed Hartford's decision. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 4.)

On November 13, 2002, Hartford sent a letter to Plaintiff advising him that it had received his appeal and referred it to an appeals specialist, and advised Plaintiff of the regulations concerning the time for rendering a decision on an appeal. (Pl.'s Separate Statement of Uncontroverted Material Facts in Supp. of Opp'n to Cross-Mot. for Summ. J. at 14.)

On November 22, 2002, Hartford sent a request to Express Scripts for missing prescription information. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 5.)

On December 5, 2002, Plaintiff sent a letter to Hartford following-up on his appeal. (Pl.'s Separate Statement of Uncontroverted Material Facts in Supp. of Opp'n to Cross-Mot. for Summ. J. at 15.)

Hartford sent another letter to Plaintiff on December 9, 2002. (*Id.* at 15-16.)

---

[1] The pre-existing conditions limitation clause provides: "No benefit will be payable under the plan for any Disability that is due to, contributed to by, or results from a Pre-existing Condition, unless such Disability begins: 1. after the last day of 90 consecutive day(s) while insured during which you receive no medical care for the Pre-existing Condition; or 2. after the last day of 365 consecutive day(s) during which you have been continuously insured under this plan." (Huber Decl., Ex. A at POL011.)

- 3 - 03cv0562

On December 20, 2002, Plaintiff sent another letter to Hartford. (*Id.* at 17-18.) On December 23, 2002, Plaintiff sent another letter to Hartford, and included an executed client authorization for the release of the Express Scripts records. (*Id.* at 18.)

On January 16, 2003, Hartford informed Plaintiff of its efforts to obtain the prescription information from Express Scripts, requested Plaintiff's assistance in obtaining this information, and advised Plaintiff that if the information was not received by January 27, 2003, it would proceed without the information. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 7.) Plaintiff responded to Hartford's letter by letter dated January 23, 2003. (Pl.'s Separate Statement of Uncontroverted Material Facts in Supp. of Opp'n to Cross-Mot. for Summ. J. at 20.)

Hartford did not issue a decision on Plaintiff's appeal on January 27, 2003. Rather, on February 12, 2003, Hartford sent Plaintiff another letter informing him it had scheduled an independent medical record review. (Def.'s Separate Statement of Uncontroverted Material Facts in Opp'n to Pl.'s Mot. for Summ. J. at 8.)

More than one month later, on March 20, 2003, Plaintiff filed the present action. To date, Hartford has not rendered a decision on Plaintiff's appeal.

## II.

## DISCUSSION

The parties move for summary judgment on the issue of the standard of review for Plaintiff's claims. Plaintiff argues the standard of review should be *de novo*, whereas Defendant asserts this Court should review Plaintiff's claim for an abuse of discretion.

### A. Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A

material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Standard of Review for ERISA Claims

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court addressed "the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA." *Id.* at 105. Applying "established principles of trust law," the Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If the plan gives the administrator or fiduciary discretion to determine eligibility for benefits or to construe the terms of the plan, a denial of benefits is to be reviewed for abuse of discretion. *Alford v. DCH Found. Group Long-Term Disability Plan*, 311 F.3d 955, 957 (9th Cir. 2002); *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990) (citing *Bruch*, 489 U.S. at 115).

Given these general rules, the starting point for determining the standard of review for ERISA claims is the plan language. *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1068 (9th Cir. 1999). In this case, the plan provides: "[The Hartford has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Huber Decl., Ex. A at POL 020.) This

language unambiguously vests Defendant with discretion to determine Plaintiff's claim. *See Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1321 (9th Cir. 1995) (finding discretion where employer was sole and exclusive judge of whether to award benefits under plan); *Jones*, 906 F.2d at 481 (finding discretion where plan gave trustees power to construe provisions of trust). Under the general rule set out in *Firestone*, the abuse of discretion standard should apply to this case.

However, Plaintiff argues this case falls within an exception to *Firestone*'s general rule. That exception was set out by the Ninth Circuit in *Jebian v. Hewlett Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098 (9th Cir. 2003).[2] In *Jebian*, the plaintiff applied for long-term disability benefits through his employee benefit plan. *Id.* at 1101. The plan administrator denied the plaintiff's application, and he appealed. *Id.* at 1101-02. Under the terms of the plan, the plaintiff's claim was deemed denied if the administrator did not respond within sixty days or inform the claimant that another sixty days was required to issue its decision. *Id.* at 1102. In Jebian's case, the administrator waited 119 days before responding to Jebian's appeal. *Id.* In that response, the administrator did not render a decision, but informed Jebian that his appeal would remain open "to consider further medical documentation." *Id.* Approximately three months later, the administrator sent another letter to Jebian "stating that it was still awaiting some medical records and that the appeal therefore remained pending." *Id.* Jebian filed a complaint in district court approximately three months later. *Id.* More than one month later, the administrator denied Jebian's appeal. *Id.*

After the district court applied the abuse of discretion standard to Jebian's claim and granted summary judgment to the plan administrator, Jebian filed an appeal in the Ninth Circuit. The primary question on appeal was "whether a plan administrator's decision, otherwise within the administrator's discretion, can be accorded judicial deference when the purported final, discretionary decision is not made until after the claim is, according to both

---

[2] The Court notes there is a petition for writ of certiorari currently pending before the United States Supreme Court in *Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan v. Jebian*, Case Number 03-1202. However, until the Supreme Court rules on that petition, *Jebian* remains the controlling law of this Circuit. *Neighbors for a Toxic Free Community v. Vulcan Materials Co.*, 964 F.Supp. 1448, 1452 n.3 (D. Colo. 1997).

the terms of the plan and Department of Labor (DOL) regulations, already automatically deemed denied on review." *Id.* at 1103.

In analyzing this question, the court noted a split of authority between the Circuits. At least one Circuit Court had held "the standard of review is no different whether the claim is actually denied or is deemed denied." *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993).[3] However, two other Circuit Courts had reached the opposite conclusion. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003) (holding "that when substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims."); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) (stating de novo review is appropriate when trustee "fails to act or to exercise his or her discretion"). In *Gilbertson*, the court explained that the purpose of applying an abuse of discretion standard to the decision of a trustee or administrator is "that the trustee's or administrator's expertise and familiarity with the overall scheme, as well as the details of each case, make him more likely to get the decision right than a court." 328 F.3d at 632. The court stated that purpose:

> is not served by judicial deference to automatically "deemed denied" decisions. Such decisions are not exercises of discretionary power vested in the trustee, as intended by the trust instrument, because in these instances the terms of the plan and its governing regulations require that a decision be rendered within a specified time.

*Id.*

The Ninth Circuit found this reasoning "most illuminating[.]" *Jebian*, 349 F.3d at 1107. It also reasoned that the application of de novo review simply because the administrator used "the *language* of discretion - - that is, providing reasons and asking for more information - - would become a talisman by which administrators could ensure deference even when they are

---

[3] In a pre-*Firestone* decision, the Sixth Circuit reached the same conclusion as the Fifth Circuit. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988) (finding failure of plan administrator to act on an appeal "did not give rise to a de novo action.") However, in a more recent case, the Sixth Circuit has stated "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner." *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000).

expressly precluded by the trust agreement from exercising discretion because the time for doing so has passed." *Id.* at 1104. Based on this reasoning and the plan language at issue in *Jebian*, the Ninth Circuit sided with the Third and Tenth Circuits, and held: "Deemed denials are not exercises of discretion. They are therefore undeserving of deference under *Firestone*, and a *de novo* standard of review applies." *Id.* at 1106.

Defendant does not dispute the basic holding of *Jebian*. Rather, Defendant argues *Jebian* actually supports a deferential standard of review because Defendant was engaged in an ongoing, good faith exchange of information with Plaintiff, which preserves the abuse of discretion standard.

In *Gilbertson*, the court held an "administrators' failure to meet certain procedural requirements" may be overlooked "when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations." 328 F.3d at 634. The court explained:

> an administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator.

*Id.* at 636.[4] In *Jebian*, the Ninth Circuit set out a similar exception for administrators "engaged in a genuine, productive, ongoing dialogue that substantially complies with a plan's and the regulations' timelines[.]" 349 F.3d at 1108. The issue here, therefore, is whether the parties were engaged in a "genuine, productive, ongoing dialogue" that substantially complied with the timelines of the plan and regulations.

The plan language in this case provides: "[The Hartford Life and Accident Insurance Company has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Huber Decl., Ex. A at POL020.) Pursuant to the regulations applicable to this case, Defendant should have exercised

---

[4] In a recent case, the Tenth Circuit explained that a plan administrator meets this "substantial compliance" test "if the delay is: (1) 'inconsequential'; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant." *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1174 (10th Cir. 2004) (citing *Gilbertson*, 328 F.3d at 635).

that discretion and rendered a decision on Plaintiff's appeal "no later than 60 days after the plan's receipt of a request for review," and certainly "not later than 120 days after receipt of request for review." 29 C.F.R. § 2560.503-1(h)(1)(i) (1984).

The evidence before the Court does indicate Defendant was engaged in a dialogue with Plaintiff concerning his appeal, but that the dialogue was insufficient under controlling law. The parties exchanged eight letters over the course of four months regarding Plaintiff's appeal. Defendant informed Plaintiff of the steps it intended to take to process Plaintiff's appeal, and requested Plaintiff's assistance in that process, specifically in the effort to obtain a complete set of records from Express Scripts. (*See* Huber Decl., Ex B at 194-95.) Plaintiff acknowledged that process and agreed to assist Defendant in obtaining the medical records. (*See id.* at 154-56, 189-90.) Despite the efforts of both parties, Hartford did not receive the requested medical records by its previously-imposed deadline of January 27, 2003. Per its January 16, 2003 letter to Plaintiff, Hartford advised that if the requested medical records were not received by that deadline, it would "proceed with [its] evaluation of this claim appeal." (*Id.* at 178.) However, contrary to that representation, Hartford did not proceed with its evaluation. Instead, it waited nearly one month, until February 12, 2003, to inform Plaintiff for the first time that it had scheduled an independent medical record review. (*Id.* at 146.)[5] Plaintiff did not respond to that letter, but chose to file the present action.

There is no evidence of any dialogue between the parties concerning Plaintiff's appeal after February 12, 2003, other than the proceedings in this case. Thus, although there is evidence of a dialogue between the parties, there is no evidence that dialogue continued to the completion of Plaintiff's appeal. Moreover, Defendant never issued a decision on Plaintiff's appeal despite its stated intention to proceed by January 27, 2003. Plaintiff thereafter filed the present action nearly two months later on March 20, 2003.[6]

---

[5] The administrative record in this case indicates that the independent medical record review was completed on March 14, 2003. (*Id.* at 137-43.)

[6] The filing of the action does not explain why Defendant did not render a decision on Plaintiff's appeal. Indeed, in *Jebian* the defendant rendered a decision on the plaintiff's appeal after the complaint had been filed. 349 F.3d at 1102.

As stated in *Jebian*: "Deference to an exercise of discretion requires discretion actually to have been exercised." 349 F.3d at 1106. Here, Defendant has not exercised its discretion to grant or deny Plaintiff's appeal because it has not issued a decision. In this situation, "the Court cannot apply the abuse of discretion standard because there is no decision on [Plaintiff's] appeal to which the Court can defer." *Fleming v. Kemper National Services, Inc.*, 320 F.Supp.2d 951, 956 (N.D. Cal. 2004). *See also Gilbertson*, 328 F.3d at 632 ("because LINA never used its discretionary authority to make and issue a final, reasoned decision on Mrs. Gilbertson's appeal, LINA has provided no actual exercise of discretion or application of reasoned judgment to which a court can defer.").

In the absence of dialogue between the parties beyond February 2003 and in the absence of an "actual exercise of discretion" by issuing a decision on Plaintiff's appeal, this Court finds the appropriate standard of review under these circumstances is de novo.[7]

### III.
### CONCLUSION AND ORDER

For all the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment [Doc. No. 41] and DENIES Defendant's cross-motion for summary judgment [Doc. No. 52].

**IT IS SO ORDERED.**

DATED: _11-3-04_

DANA M. SABRAW
United States District Judge

cc: Judge Battaglia
all parties

---

[7] Because de novo review is appropriate for the reasons set out above, the Court does not reach the issue of whether de novo review is appropriate based on an alleged conflict of interest.