US DISTRICT COURT INDEX SHEET










NMC

3:03-CV-562 CAPIANCO V. LONG TERM DISABILITY

*97*

*O*

FILED

05 APR 14 PM 3:34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL CAPIANCO,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LONG-TERM DISABILITY PLAN OF SPONSOR UROMED CORP., a corporation; and THE HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, a business entity, form unknown, doing business in California, as Administrator of the LONG-TERM DISABILITY PLAN; and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | Civil No. 03cv562 DMS(AJB)<br><br>Order Granting In Part and Denying In Part Plaintiff's Motion to Compel<br>[Doc. No. 77] |

Plaintiff, Gil Capianco, moves the Court for a Motion to Compel Defendant The Hartford Life and Accident Insurance Co. (Hartford) to provide further responses to Special Interrogatories, Requests for Production of Documents, and Requests for Admissions and to strike improper objections and responses. Hartford has filed an opposition. Capianco has filed a reply. This motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1) and the hearing date set for April 15, 2000 at 1:00pm is hereby vacated. For the reasons set forth herein, Capianco's Motion to Compel is GRANTED IN PART AND DENIED IN PART.

///

## *Background*

Capianco, an employee who had been diagnosed with multiple sclerosis, filed an Employee Retirement Income Security Act (ERISA) case after his disability benefits under Uromed Corporation's Long Term Disability Plan were denied.

Capianco was diagnosed with multiple sclerosis after first noticing symptoms in 1984. Capianco worked as a software engineer for eight years and then as technical support for twelve years with this condition. Hartford states that Capianco first participated in the Uromed Corporation Long Term Disability Plan, and became covered by the Hartford policy, on March 27, 2001. Fewer than seven months later, Capianco was terminated in a company-wide reduction in work force, with his last day of work being October 31, 2001. After being informed of his impending termination, Capianco applied for benefits pursuant to the policy on October 31, 2001. The employer statement submitted in addition to his application stated that Capianco was informed on October 18, 2001 that he would be terminated as of October 31, 2001. The employer also indicated that Capianco had not been covered under a prior long term disability plan.

Capianco contends that because he was a salaried employee, when he applied for disability benefits, his claim was appropriate. Capianco also contends that the Administrative Record in this case does not contain any clear statement from his employer that he was not covered, only an inquiry memo.

The Hartford policy contains a pre-existing condition limitation, which precludes claimants from receiving benefits due to disability from a pre-existing condition. "Pre-existing condition" is defined by the policy as any accidental bodily injury or sickness for which the claimant received "medical care" during the 90 day period before the claimant's effective date of coverage. "Medical care" includes receiving treatment that is recommended, prescribed by, or received from a physician. "Treatment" includes the use of drugs, medicines, medical services, supplies or equipment.

Hartford claims that evidence in the Administrative Record indicates that Capianco received "medical care" during the 90-day period prior to the March 27, 2001 effective date of his coverage. Multiple progress notes by Capianco's treating physician indicate that Capianco was continuously taking the prescription drug Avonex for his multiple sclerosis during this 90-day look-back period. As a result,

1  Hartford denied Capianco's claim on May 3, 2002, citing the pre-existing condition limitation provision
2  as precluding Capianco from receiving long-term disability benefits under the Hartford policy.
3      On October 28, 2002, Capianco submitted, through his attorney, an appeal of Hartford's denial.
4  Capianco's asserts that because he was covered under a prior plan, the policy's pre-existing condition
5  limitation was not applicable. The Hartford policy defines "Prior Plan" as the long term disability
6  insurance carried by the employer on the day before the plan effective date. Hartford contends that
7  Capianco never provided evidence of coverage, not even a copy of the alleged prior plan. Conversely,
8  Capianco states that he has, on multiple occasions, provided Hartford with evidence that he was covered.
9      Both parties agree that the proper standard of review for Hartford's decision to deny coverage is
10 *de novo*, however, they dispute the extent to which the court may consider evidence outside the
11 administrative record in conducting it's *de novo* review. Capianco contends that the court must, in order
12 to conduct a full and fair review, consider evidence outside the administrative record. In particular,
13 Capianco contends that the court should consider that there was an inherent conflict of interest involved
14 in Hartford's decision to apply the pre-existing condition provision over the continuity of care exception
15 in their denial of benefits to Capianco, because Hartford is both the plan administrator and the insurer.
16     To further these arguments, Capianco has propounded discovery seeking to expand upon the
17 conflict of interest posed as a result of Hartford's dual role of administrator and insurer. Through
18 Interrogatory Nos. 6 and 7, Capianco seeks to discover the names of persons in charge of setting claims
19 handling procedures and administrative appeal procedures as follows: (6) from January 1, 2000 to the
20 present, "[i]dentify the person(s) in charge of setting disability claims handling policies and procedures
21 for you", and (7) from January 1, 2000 to the present, "[i]dentify the person(s) in charge of setting
22 disability administrative appeal policies and procedures for you".
23     Capianco also propounded Requests for Production of Documents Nos. 2, 3, 4, 5, 11, 12, 13, 14,
24 and 15, which seek Hartford claims manuals and procedures as follows: (2) documents from January 1,
25 2000 to the present comprising "internal company standards, guidelines, 'Claims Manuals' and
26 procedures used by Hartford in making determinations as to whether a claimant for long-term disability
27 ("LTD") benefits is covered for LTD benefits by the Plan Policy", (3) documents from January 1, 2000
28 to the present comprising "industry-wide standards and practices referred to and relied upon by Hartford

in evaluating claims for long-term disability under those certain policies of Long-Term Disability ("LTD") insurance issued by it, (4) documents in effect from January 1, 2000 to the present comprising "disability claims termination procedures referred to and relied upon by Hartford in evaluating claims for long-term disability under those certain policies of Long-Term Disability("LTD") insurance issued by it, (5) documents in effect from January 1, 2000 to the present comprising "disability claims termination procedures, whether or not referred to and relied upon by Hartford, for reviewing internal, so-called 'administrative' appeals of its denials of claims for long-term disability under those certain policies of Long-Term Disability("LTD") insurance issued by it", (11) documents generated between January 1, 2000 and the present comprising any form of transcription of internal company meetings concerning the handling of LTD claims by Hartford personnel", (12) documents generated between January 1, 2000 and the present comprising "materials distributed at any internal seminars and/or training sessions respecting the handling of LTD claims and appeals", (13) documents generated between January 1, 2000 and the present comprising "material distributed at any internal seminars, conventions, or other meetings attended by representatives of Hartford", (14) documents generated between January 1, 2000 and the present comprising "materials distributed after, and relating to, any Hartford internal seminars (including but not limited to any transcriptions of oral speeches or presentations made at such seminars and/or training sessions) respecting the handling of LTD claims and appeals", and (15) documents generated between January 1, 2000 and the present comprising "materials generated by, or available to Hartford, relating to issues concerning Hartford's claims reserves".

Finally, Capianco propounded Request for Admissions No. 6 seeking admission that Hartford "failed to decide Capianco's internal appeal on its merits by December 13, 2002 or any time thereafter through the filing of the instant action" and No. 7 seeking admission that Hartford possess one or more internal manuals, whether called "claims manuals" or anything else descriptive of instructions or guidelines to claims employees respecting the handling and processing of claims and appeals of denials of claims for disability benefits under policies issued by Hartford, and whether in 'hard copy' form or solely in computer databases or on computer hard drives or discs of any kind".

Hartford objected as follows: to Request for Production of Documents Nos. 2, 3, 6, 15 and 16 and Request for Admission No 3 as being vague and ambiguous; to Request for Production of Docu-

ments Nos. 2, 3, 6, and 15 as being overly broad, unduly burdensome and oppressive; to Request for Production of Documents No. 1 as being a protected trade secret. Hartford refused to respond to Interrogatory Nos. 1, 3, 6 and 7 and Request for Production of Documents Nos. 2, 3, 4, 5, 11, 12, 13, 14 and 15 and to Request for Admissions Nos. 6 and 7.

### *Discussion*

Hartford's arguments focus almost exclusively upon whether the information sought by Capianco is necessary or material for the Court's *de novo* review of this case. As such, the Court must determine whether the information sought by Capianco in discovery is relevant to the claims or defenses of any party." Fed. R. Civ. P. 26(b)(1). Capianco argues that the discovery he propounded is relevant to demonstrate that Hartford was not acting as a neutral administrator, but was instead acting under a conflict of interest. Capianco argues that the conflict of interest resulting from Hartford's position as both administrator and insurer implicates the adequacy of the administrative record in this case. Capianco also argues that the information sought is relevant to the impartiality and credibility of Hartford's decision to deny benefits under the pre-existing condition cause.

A plan administrator's alleged conflict of interest is relevant to the district court's review of an ERISA claim in two ways. First, it is well established that evidence of an administrator's conflict of interest is relevant to the determination of what standard of review the district court should apply when evaluating the propriety of the benefits denial decision. However, since both parties agree that the *de novo* standard of review applies, it is not necessary to address this issue.

Second, an administrator's conflict of interest is also relevant to the question of what, if any, evidence the district court will consider outside of the administrative record. In most cases where the district court is reviewing the plan administrator's decision *de novo*, "additional evidence is not necessary for adequate review of the benefits decision, [and] the district court should only look at the evidence that was before the plan administrator . . . at the time of the determination." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir.1995) (quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir.1993)). In order to enable the district court to come to a fully informed and independent judgment regarding the question of whether the plaintiff is entitled to benefits, however, the Ninth Circuit has held that a district court has

the discretion to consider evidence outside the record when conducting a *de novo* review of a benefits decision. *Mongeluzo*, 46 F.3d at 943-44. The district court should exercise its authority to consider additional evidence "when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Id. (quoting *Quesinberry*, 987 F.2d at 1025); see also *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir.1999) (en banc).

The Ninth Circuit has not specifically addressed the situations that warrant consideration of evidence outside the administrative record upon *de novo* review of an administrator's decision. In *Mongeluzo*, however, the court cited favorably the Fourth Circuit's decision in *Quesinberry*, wherein the court noted that exceptional circumstances may give rise to the need for additional evidence, including the following:

> [C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; *the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality*; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Quesinberry*, 987 F.2d at 1027 (*emphasis added*). The Second Circuit has similarly stressed that "[a] demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice v. American Int'l Life Assurance Co.*, 112 F.3d 61, 67 (2d Cir.1997).

In light of these decisions, it is clear that the district judge in this case will have to decide whether or not to exercise his discretion to allow the introduction of evidence outside the administrative record at the time of trial. The question presented by this motion to compel, is whether such information is discoverable and, if so, what the scope of discovery should be. This court believes that some information regarding Hartford's handling of Capianco's claims is certainly discoverable.

Other district courts have addressed similar discovery issues, finding that information regarding a conflict of interest is discoverable to support the plaintiff's claim that evidence outside the administrative record should be considered upon *de novo* review. In *Waggener v. Unum Life Ins. Co. Of America*, 238 F. Supp. 2d 1179 (S.D. Cal. 2002), this Court held that Plaintiff's request for information regarding the

plan administrator's alleged conflict of interest was discoverable to support its claim that evidence outside the administrative record ought to be considered upon *de novo* review. However, this Court found that the plaintiff employee sought far more discovery than was necessary to demonstrate the type of conflict that would permit introduction of additional evidence at the time of summary judgment or trial, and discovery would be limited to information necessary to demonstrate the manner or extent to which conflict of interest affected the administrator's decision making process and address any shortcomings in the record or decision making process caused by conflict.

In *Sheehan v. Metropolitan Life Ins. Co.*, 2002 WL 1424592 (S.D.N.Y.2002), plaintiff requested the production of documents and depositions in order to discover whether the defendant plan administrator had a conflict of interest when it terminated plaintiff's disability benefits. The magistrate judge noted that a conflict of interest may constitute good cause to allow the district judge to consider evidence outside the record in conducting a *de novo* review of the benefits decision. *Id.* at *3-4. The magistrate judge then reviewed plaintiff's discovery requests, allowing discovery of information directly related to the plaintiff, and the relationship between plaintiff's employer and the administrator regarding the administration of benefits. The magistrate judge denied plaintiff's request for discovery, however, with regard to disability claims by other employees based upon burden and confidentiality. Finally, the magistrate judge noted, generally, that with regard to the conflict of interest issue, "[p]laintiff is entitled to seek discovery for the purpose of determining which persons were involved in the evaluation of plaintiff's claim for benefits, in particular whether [the employer] influenced [the administrator's] evaluation of the claim, and what procedure was followed in terminating plaintiff's benefits." *Id.* at *6.

Similarly, in *Caldwell v. Life Ins. Co. of North America*, 165 F.R.D. 633 (D. Kan.1996), plaintiff sought discovery in order to explore "(1) whether [the administrator] fulfilled its fiduciary duty to obtain information necessary to make its determination to deny benefits; (2) whether [the administrator] followed proper procedures in reviewing and denying the claim of plaintiff; and, (3) whether the record is complete." *Id.* at 638. The magistrate judge noted that although the trial court is ordinarily confined to the administrative record on ERISA claims, the discovery sought by the plaintiff was relevant insofar as it could provide a basis for the court to consider evidence outside that record. *Id.* at 637-38. Thus, the magistrate judge permitted the plaintiff to take the deposition of a physician whose records should have

been included in the administrative file, but limited other discovery which was found to be irrelevant. *Id.* at 638.

Hartford relies on the decisions in *Kearny v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) for the proposition that the court must make its own determination of whether Capianco is entitled to benefits under the policy and to do so the Court does not require additional information under *de novo* review. Further, Hartford argues that whether Hartford properly interpreted the policy provisions, pre-existing condition exclusion in conjunction with continuity of coverage has no bearing on the Court's ultimate *de novo* review because it is the Court's function to interpret the policy. *Kunin v. Benefit Trust Life Mut. Ins. Co.*, 910 F.2d 534 (9th Cir. 1990).

Hartford's argument is unpersuasive in light of the fact that the district court will review the administrator's decision *de novo*, and some discovery regarding the conflict of interest is appropriate where there is concern about Hartford's impartiality in denying the disability claim. In reviewing Capianco's discovery requests, however, this Court believes that Capianco has sought more than what is necessary to demonstrate the type of conflict that would permit the introduction of additional evidence. Capianco's broad discovery requests do not focus on learning information regarding Hartford's decision to deny his benefits. Instead, Capianco requests the production of large categories of general claims handling information. Even if this information was of marginal relevance, this Court may limit or prohibit such discovery to the extent that it is unreasonably cumulative, duplicative, could be obtained through other less burdensome sources, or where the burden of the discovery outweighs its likely benefits. Fed.R.Civ.P. 26(c)).

Review under ERISA of an administrator's decision to deny or terminate benefits is not subject to the level of adversarial testing as other types of cases such as breach of contract. ERISA has two primary goals: " 'to increase the likelihood' that beneficiaries 'will receive their full benefits' and 'to maintain the premium costs of such a system at a reasonable level'." *Kearney*, 175 F.3d at 1094 (quoting 29 U.S.C. § 1001b(c)(3), (5)). The Supreme Court has stressed both "the public interest in encouraging the formation of employee benefit plans" and "the need for prompt and fair claims settlement procedures." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54(1987). Because of the interest in both maintaining premium costs at a reasonable level and allowing for the prompt and fair resolution of claims, discovery

simply cannot be as broad and overreaching as in other types of cases. Instead, this Court believes that discovery must be more carefully tailored to the issues raised in the case. In this particular instance, for example, the discovery Capianco seeks must be closely related to the need to demonstrate conflict of interest.

In this regard, this Court finds the case of *Hall v. Unum Life Ins. Co.*, 300 F.3d 1197 (10th Cir.2002) to be particularly instructive. In *Hall*, the court first stressed that "it is the unusual case in which the district court should allow supplementation of the record." *Id.* at 1203. The court then extensively discussed the *Quesinberry* exception that permits the consideration of additional evidence "where the payor and the administrator are the same entity and the court is concerned about impartiality." *Quesinberry*, 987 F.2d at 1027. The court in Hall first noted that additional evidence for *de novo* review cases is not necessarily appropriate just because the administrator and the payor are the same party. *Hall*, 300 F.3d at 1205. "The administrator and the payor are often the same party for many ERISA benefit plans. If we were to adopt a blanket rule that the admission of additional evidence should be allowed whenever the same party is the administrator and payor, then it will not be the unusual case in which additional evidence is admitted." *Id.*

With regard to what evidence of conflict of interest should be permitted upon *de novo* review of an administrator's decision, the court went on to explain as follows:

> Similarly, in the context of admitting additional evidence based on a possible conflict of interest, evidence should only be permitted to the extent that it is relevant to the conflict of interest and that the conflict of interest in fact requires the admission of the evidence. That way the district court can calibrate the admission of additional evidence to the amount of conflict of interest that actually existed and to the manner in which that conflict tainted the decision making process of the administrator.

Id. at 1205-06. Finally, the court noted that before the additional evidence should be admitted by the district court, there should be a showing of "the manner in or extent to which the conflict of interest affected Hartford's decision making process" and "how the additional evidence would be relevant to the conflict of interest or would address any shortcomings in the record or decision making process caused by the conflict." Id. at 1206. As noted earlier, exceptional circumstances may give rise to the need for additional evidence. *Quesinberry*, 987 F.2d at 1027. Presently, the only exceptional circumstance pled by Capianco is the potential conflict of interest created by Hartford's occupation of the dual roles of

payor and administrator. While interpretation of the plan terms is certainly required, additional evidence appears unnecessary because application of the pre-existing condition exclusion or the continuity of coverage provision will hinge on specific historical facts, namely, whether Capianco was covered under a prior policy and whether his failure to locate and submit proof of coverage under a prior plan during review of the claim by the claim administrator should act as a bar excluding consideration of the newly discovered information.

To this point, Hartford argues that the district court should not consider evidence later introduced by the claimant that was not submitted to the claims administrator. *Mongeluzo*, 46 F.3d at 944. Capianco, however, contends in his reply brief 1:16 "that he has time and time again provided evidence to Hartford that he was covered." Additionally, Capianco explains later in his reply brief that he did not withhold evidence, rather he did not know that he had additional documentation when the case was filed. In Capianco's declaration he states that he looked for additional documents from his former employer and was finally able to find several more key documents from his former employer demonstrating that he was indeed covered by a prior ERISA plan.

Hartford cites a recent opinion, *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 876 (9th Cir. 2004). In the case, the Ninth Circuit held that the claim administrator's failure to obtain plaintiff's medical leave slip was not a breach of fiduciary duty or an abuse of discretion when there was no reason shown by plaintiff why he failed to produce the leave slips during the claims process.

Conversely, Capianco argues that exceptional circumstances may warrant an exercise of the Court's discretion to allow additional evidence where there is additional evidence that the claimant could not have presented in the administrative process. *Quesinberry* at 1027. Capianco argues that he promptly disclosed the additional evidence nearly a year prior to the ultimate disposition of this case. Capianco argues that *Mongeluzo* clearly supports the discovery and admissibility of this evidence. Further, Capianco argues that *Jordan* is distinguishable from the present case because there the claimant clearly had the documents and was aware that he had the documents all along, even during the initial claims process. Additionally, Capianco contends that Hartford had a duty to investigate imposed by ERISA. Interestingly, both parties cite the same cases for opposing propositions. However, it is clear

1  that an ERISA plan "shall provide to every claimant who is denied a claim for benefits written notice
2  setting forth in a manner calculated to be understood by the claimant: (1) The specific reason or reasons
3  for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; (3) a
4  description of any additional material or information necessary for the claimant to perfect the claim and
5  an explanation of why such material or information is necessary; and (4) appropriate information as to
6  the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29
7  C.F.R. § 2560.503-1(f).

8      Clearly this regulation calls for a meaningful dialogue between ERISA plan administrators and
9  their beneficiaries. If the plan administrators believe that more information is needed to make a reasoned
10 decision, they *must* ask for it. There is nothing extraordinary about this; it is how civilized people
11 communicate with each other regarding important matters. *See Kunin v. Benefit Trust Life Ins. Co.*, 910
12 F.2d 534, 538 (9th Cir.1990) (burden is on plan to obtain adequate information to make decision);
13 *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 691 (7th Cir.1992) (an ERISA plan cannot rely on a lack
14 of information to support its denial of benefits when it fails to inform the beneficiary about the missing
15 information so that the beneficiary can provide it).

16     It is clear from the record that Capianco claimed from early on that he was covered by a prior
17 plan. Further, Capianco states, and Hartford does not refute that the only reference in the administrative
18 record cited by Hartford is an inquiry memo which does not contain any clear statement that Capianco
19 was not covered and demonstrates no effort on the part of the plan administrator to obtain information
20 relevant to whether Capianco was covered under a prior plan. Since Capianco was able to locate the
21 relevant documentation and there is no indication of deliberate or knowing delay on his part, it would
22 run counter to the interests of justice to exclude this information, particularly in light of Hartford's
23 apparent reliance on the lack of this information in denying benefits. Since this information would be
24 extremely relevant to the claims at issue in this case and would address shortcomings in the record and
25 decision making process that are potentially attributable to Hartford's conflict of interest, it will, in all
26 likelihood be admitted by the court in deciding this case.

27     Based upon the relevance of conflict of interest evidence upon *de novo* review of an administra-
28 tor's decision under ERISA, and the Ninth Circuit case law justifying a heightened review where conflict

of interest exists, this Court concludes that Capianco's discovery in this case is properly limited to information necessary to demonstrate "the manner in or extent to which the conflict of interest affected Hartford's decision making process" and "address any shortcomings in the record or decision making process caused by the conflict."

These categories of information appear reasonably related to the claims and defenses in this case, and may lead to evidence that the district judge may permit to be admitted at the time of summary judgment or trial. Limiting discovery to these categories of information will permit Capianco to obtain the information he needs, but protect Hartford from the more broad and far-reaching discovery Capianco has proposed.

To this end, the Court will order Hartford to provide responses to Interrogatory Nos. 6 (identifying persons who participated in evaluation of Capianco's claim) and 7 (identifying persons who participated in evaluating Capianco's appeal). Hartford shall also produce documents responsive to Request for Production of Documents Nos. 2 (claim guidelines, manuals, and procedures for multiple sclerosis and other matters limited to those which were in effect at the time Capianco's claim was terminated); 4 (limited to documents reflecting the underwriting or definitions of pre-existing condition, continuity of coverage in the Uromed Corporation Long Term Disability Plan at the time Capianco's claim was terminated); and, 5 (limited to documents reflecting the claims termination procedures used in evaluating administrative appeals of denials for long-term disability claims which were in effect at the time Capianco's claim was terminated). The Court concludes that the additional information sought by Capianco is not relevant to how Hartford's decision making process in this case was impacted by its dual role as insurer and administrator. Thus, Capianco's motion to compel Hartford's further response to the remaining discovery requests are hereby DENIED.

*Conclusion*

For the reasons set forth herein, Capianco's Motion to Compel [Doc. No. 77] is GRANTED IN PART AND DENIED IN PART. Within thirty (30) days of service of this Order, and subject to the limitations imposed herein with regard to particular discovery requests, Hartford shall provide responses

///

///

1 to Interrogatory Nos. 6 and 7, and shall produce documents responsive to Request for Production of
2 Documents Nos. 2, 4, and 5.
3     IT IS SO ORDERED.

6 Dated: 4/14/05

ANTHONY J. BATTAGLIA
United States Magistrate Judge

8 cc: Judge Sabraw
9     All Counsel of Record