Howard Bennett Hellen (State Bar No. 140640)
LAW OFFICES OF HOWARD BENNETT HELLEN
380 South Melrose Drive, Suite # 361
Vista, California 92081
Tel: (760) 942-7848
Fax: (760) 942-7849

Attorneys for Plaintiff,
GIL CAPIANCO

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL CAPIANCO, | CASE NO. 03-CV-562 DMS (AJB) |
| | **NOTICE OF DEPOSITION OF NON-PARTY WITNESS WITNESS LISA TRACEY aka LISA M. TRACEY aka LISA SCIBILIA-TRACEY** |
| Plaintiff, | |
| v. | |
| LONG-TERM DISABILITY PLAN OF SPONSOR UROMED CORP., et. al., | |
| Defendants. | |
| | TRIAL JUDGE: HON. DANA M. SABRAW |
| | MAGISTRATE JUDGE: HON. ANTHONY J. BATTAGLIA |
| | Discovery Cut: 02-22-08 |
| | Motion Cut: 03-28-08 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff GIL CAPIANCO (hereinafter "Plaintiff" or "Mr. Capianco" ), pursuant to Rule 30(b) and 34(b) of the Federal Rules of Civil Procedure, by and through his attorneys of record herein, will take the deposition of the following non-party witness

////

-1-

EXHIBIT A
Tracey
1-18-08

1 listed below, on the dates and at the times indicated, before a certified shorthand reporter:

2 **DEPONENT**               **DATE**                          **TIME**

3 **LISA TRACEY**            **January 18, 2008**       **10:00 am***

4 **(aka LISA M. TRACEY aka LISA SCIBILIA-TRACEY)**

5 ***Note: All times are Eastern Time**

6 **Please note that this deposition may be videotaped, as permitted pursuant to Rule 30(b)(2).**

7     The above-stated deposition will be taken at the offices of **Rosenfeld & Rafik P.C.,** located

8 at 44 School Street, Boston, Massachusetts 02108.

9     The above deponent was or is an employee and/or manager of Uromed Corporation

10 (hereinafter referred to as "Uromed") , which company employed Plaintiff at all relevant times in

11 the instant action. Said deponent acted as a benefits and/or human resources contact at Uromed and

12 was the contact for both Plaintiff and Defendant HARTFORD LIFE & ACCIDENT COMPANY

13 (hereinafter "HARTFORD"), as the named Plan Administrator and funder. **A COPY OF THE**

14 **DEPOSITION SUBPOENA IS ATTACHED HERETO AND SERVED HEREWITH.**

15     The matters on which this deponent will be examined are as follows:

16     1.    The business relationship or connection between Uromed and any previous parent,

17 subsidiary, or related business entity(ies) that you also were employed in as a human resources

18 and/or benefits liaison;

19     2.    The contractual relationships between Uromed and Defendant HARTFORD

20 respecting the administration of and the provision of benefits under the long-term disability

21 (hereinafter "LTD") Plan at issue in this action, and the means and methods of operation of these

22 relationships, including but not limited to the decision-making process respecting determination of

23 eligibility for LTD benefits;

24     3.    Standards and practices developed by HARTFORD for communications between

25 Uromed and HARTFORD relating to the processing of employee LTD claims;

26     4.    Standards and practices developed by Uromed for communications between

27                              -2-

28

1 Uromed and HARTFORD relating to the processing of employee LTD claims;

2     5. The working relationship between Uromed and HARTFORD in handling LTD
3 claims;

4     6. The nature of any and all working relationships between you and anyone else at
5 Uromed who were involved in the handling of Mr. Capianco's LTD claim at any time between his
6 initial inquiry as to whether he was eligible for LTD benefits, through the filing of his LTD claim
7 and the present date, and who were/are either deponent's subordinate employees or her supervisors
8 or managers;

9     7. The nature of any and all working relationships between the deponent and anyone in
10 the employ or agency of HARTFORD who was involved in the handling of Mr. Capianco's LTD
11 claim at any time between the initial filing of his LTD claim and the present date;

12     8. The details of deponent's interactions with anyone in the employ or agency of
13 HARTFORD, which interactions related to the processing of handling of Mr. Capianco's LTD claim
14 in this matter;

15     9. The details of the administrative processes and safeguards utilized by the deponent
16 and/or any of her managers, supervisors and/or subordinate employees, including the name, address
17 and telephone number of the author(s) of business entities responsible for such processes and
18 safeguards, which processes and safeguards are to be relied upon in order to ensure and verify that
19 benefit claim determinations are made fairly and in accordance with governing plan documents;

20     10. The details of the administrative processes and safeguards utilized by the deponent
21 and/or any of her managers, supervisors, and/or subordinate employees, including the name, address
22 and telephone number of the author(s) of business entities responsible for such processes and
23 safeguards, which processes and safeguards are to be relied upon in order to ensure and verify that
24 benefit claim determinations are made in accordance with ERISA and any other applicable laws and
25 federal regulations;

26     11. The documents (including documents relating to communications, further including
27 but not limited to e-mails, letters, faxes, and any and all forms of correspondence that are capable

28                              -3-

1    of being printed in readable form or readable on any relevant computer hard drive, disc or related
2    systems) relied upon by the deponent, her managers and supervisors, and/or any of her subordinate
3    employees when handling Mr. Capianco's LTD from the point in time he inquired about his
4    eligibility through said deponent's last involvement with his LTD claim, including but not limited
5    to any such documents generated to the present date; and

6        12.     Any and all other issues reasonably related to the subject matter of Plaintiff's action.

7    **The foregoing deposition will be taken at the offices of Rosenfeld & Rafik, located at**
8    **44 School Street, Boston, Massachusetts 02108; telephone number (617) 723-7470. The**
9    **deposition will continue from day to day at the same location until completed, weekends and**
10    **holidays excluded.**

11    A list of all parties or attorneys for parties on whom this Notice of Deposition is being served
12    is shown on the accompanying Proof of Service.

13

14    DATED:       December 21, 2007          LAW OFFICES OF HOWARD B. HELLEN

15

16

17                                     By: _____

                                       Howard Bennett Hellen
18                                        Attorneys for Plaintiff,
                                       GIL CAPIANCO

19

20

21

22

23

24

25

26

27

28                               -4-

## Issued by the
# UNITED STATES DISTRICT COURT

| Eastern | DISTRICT OF | Massachusetts |
|---|---|---|

| | |
|---|---|
| Capianco | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Long-Term Disability Plan of Sponsor Uromed Corp. et. al. | |

Case Number:[1] 03-cv-562 DMS (AJB)

US District Court for the Southern District of California

TO: Lisa Tracey, aka Lisa M. Tracey, aka Lisa Scibilla-Tracey
10 Lothrop Drive
Avon, MA 02322-1247

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION Rosenfeld & Rafik, P.C. 44 School Street, Suite 350, Boston, MA 02108 (Please note, this deposition may be videotaped). | DATE AND TIME 1/18/2008 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Mala M. Rafik   Digitally signed by Mala M. Rafik DN: cn=Mala M. Rafik, o=Rosenfeld & Rafik, P.C., ou, email=mrm@ssrbenefits.com, c=US Date: 2007.12.21 17:22:39 -05'00' | 12/21/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Mala M. Rafik, Rosenfeld & Rafik, P.C., 44 School Street, Suite 350, Boston, MA 02108. Tel: 617-723-7470, ext. 205

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# PROOF OF SERVICE BY MAIL

Attorney name and address:
Howard Bennett Hellen
LAW OFFICES OF HOWARD BENNETT HELLEN
Melrose Law Center
380 S. Melrose Drive, Ste. 361
Vista, California 92081
Tel: (760) 942-7848
Fax: (760) 942-7849
hhellen@aol.com

Attorneys for:                    **Plaintiff, Gil Capianco**

CASE TITLE:                    **Capianco v. Long-Term Disability Plan, et. al.**

CASE NUMBER:              **03-CV- 00562 DMS (AJB)**

    I, Stephanie Spirn , declare: That I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action; and I am employed in the County of San Diego, California, within which County the within-mentioned mailing occurred. My business address is 380 S. Melrose Drive, Ste. 361, Vista, CA 92081. I served the following documents:

### SEE ATTACHED DOCUMENTS LIST

    by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

### SEE ATTACHED SERVICE LIST

    I then sealed each such envelope and, with the appropriate postage thereon fully prepaid, deposited each in the United States Mail at Vista, California on December 26, 2007.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed at Vista, California on December 26, 2007.


_____
Stephanie Spirn

## DOCUMENTS LIST

1.   NOTICE OF DEPOSITION OF NON-PARTY WITNESS LISA TRACEY

2.   DEPSIOTION SUBPOENA RE: ABOVE

1          **SERVICE LIST**

2

3
    1.      Bruce D. Celebrezze, Esq.
4           Dennis G. Rolstad, Esq.
            Erin A. Cornell, Esq.
5           SEDGWICK, DETERT, MORAN & ARNOLD LLP
            One Market Plaza
6           Steuart Tower, 8th Floor
            San Francisco, CA 94105
7
            **Attorneys for Defendant THE HARTFORD LIFE AND ACCIDENT INSURANCE
8           COMPANY**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Issued by the**
# UNITED STATES DISTRICT COURT

Eastern                     DISTRICT OF                     Massachusetts

Capianco

V.

Long-Term Disability Plan of Sponsor Uromed Corp. et. al.

## SUBPOENA IN A CIVIL CASE

Case Number:[1] 03-cv-562 DMS (AJB)

US District Court for the Southern
District of California

TO:  Lisa Tracey, aka Lisa M. Tracey, aka Lisa Scibilia-Tracey
     10 Lothrop Drive
     Avon, MA 02322-1247

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Rosenfeld & Rafik, P.C. 44 School Street, Suite 350, Boston, MA 02108 (Please note, this deposition may be videotaped). | DATE AND TIME 1/18/2008 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Mala M. Rafik  Digitally signed by Mala M. Rafik DN: cn=Mala M. Rafik, o=Rosenfeld & Rafik, P.C., ou, email=mmr@reserfeld.com, c=US Date: 2008.01.04 14:42:34 -05'00' | 1/4/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Mala M. Rafik, Rosenfeld & Rafik, P.C., 44 School Street, Suite 350, Boston, MA 02108. Tel: 617-723-7470, ext. 205

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



**Norfolk County Sheriff's Department**  P.O. Box 859215 Braintree, MA 02185-9215 / Tel. # (781) 326-1787
*Norfolk, ss.*

January 9, 2008

I hereby certify and return that on 1/7/2008 at 3:15PM I served a true and attested copy of the deposition subpoena in this action in the following manner: To wit, by delivering in hand to Lisa Tracey aka Lisa M. Tracey aka Lisa Scibilia-Tracey at 10 Lothrop Drive Avon MA 02322 . Witness Fee ($45.00), Basic Service Fee ($30.00), Copies-Attestation ($5.00), Conveyance ($3.00), Postage and Handling ($1.00), Travel ($10.88) Total Charges $94.88

Deputy Sheriff William H. Mullane

*Deputy Sheriff*

in the Proof of Service is true and correct.

Executed on _____
                          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   BRUCE D. CELEBREZZE  Bar No. 102181
2  DENNIS G. ROLSTAD  Bar No. 150006
   ERIN A. CORNELL  Bar No. 227135
3  One Market Plaza
   Steuart Tower, 8th Floor
4  San Francisco, California 94105
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   HARTFORD LIFE AND ACCIDENT INSURANCE
7  COMPANY

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  GIL CAPIANCO,                      CASE NO. 03-CV-562 DMS (AJB)

12        Plaintiff,                   **DEFENDANT HARTFORD LIFE AND**
                                       **ACCIDENT INSURANCE COMPANY'S**
13        v.                           **OBJECTION TO NOTICE OF**
                                       **DEPOSITION OF NON-PARTY WITNESS**
14  LONG-TERM DISABILITY PLAN OF       **LISA TRACEY aka LISA M. TRACEY aka**
    SPONSOR UROMED CORP., A            **LISA SCIBILIA-TRACEY**
15  CORPORATION; AND THE
    HARTFORD LIFE AND ACCIDENT
16  INSURANCE COMPANY, A BUSINESS
    ENTITY, FORM UNKNOWN, DOING
17  BUSINESS IN CALIFORNIA, AN
    ADMINISTRATOR OF THE LONG-
18  TERM DISABILTIY PLAN; AND DOES
    1 THROUGH 10, INCLUSIVE,
19
          Defendants.
20

21

22        TO ALL PARTIES HEREIN, AND THEIR ATTORNEYS OF RECORD:

23        Defendant Hartford Life and Accident Insurance Company ("Hartford") hereby objects to

24  plaintiff Gil Capianco's Notice of Deposition of Non-Party Witness Lisa Tracey aka Lisa M.

25  Tracey aka Lisa Scibilia-Tracey, set for January 18, 2008 at 10:00 a.m. Eastern Standard Time, in

26  Boston, Massachusetts at the offices of Rosenfeld & Rafik P.C. The matters on which the

27  deponent will be examined, as set forth in the Notice of Deposition, go beyond the scope allowed

28  by the Court.

EXHIBIT B
Tracey
1-18-08  AC

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1475700v1                                    -1-          CASE NO. 03-CV-562 DMS (AJB)
           HARTFORD'S OBJECTION TO NOTICE OF DEPOSITION OF LISA SCIBILIA-TRACEY

1    The District Court's review in this remanded action is limited to two issues, and summary
2    judgment was affirmed in Hartford's favor on all other issues. Of the two issues currently before
3    this Court, only one is relevant to Ms. Scibilia-Tracey: the purported waiver of the Plan's pre-
4    existing condition exclusion as it applies to plaintiff. All other issues, including those set forth in
5    the Notice of Deposition, are superfluous and inappropriate.

6        Based on the above objections, Hartford will only allow Ms. Scibilia-Tracey to be
7    examined regarding whether Hartford waived the Plan's pre-existing condition exclusion. All
8    other topics are beyond the scope allowed by the Court.

9    DATED: January 8, 2008          SEDGWICK, DETERT, MORAN & ARNOLD LLP

11                                   By: _____
12                                       Dennis G. Rolstad
                                         Erin A. Cornell
13                                       Attorneys for Defendant
                                         HARTFORD LIFE AND ACCIDENT INSURANCE
14                                       COMPANY

SEDGWICK
DETERT, MORAN & ARNOLD LLP

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Embarcadero Center, 16th Floor, San Francisco, California 94111-3628. On January 8, 2008, I served the within document described as:

**DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S OBJECTION TO NOTICE OF DEPOSITION OF NON-PARTY WITNESS LISA TRACEY aka LISA M. TRACEY aka LISA SCIBILIA-TRACEY**

☐      by transmitting via facsimile the document listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☒      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐      by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐      by OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via .

☐      by causing personal delivery by an agent of _____ of the document(s) listed above to the person(s) at the address(es) set forth below

Howard Bennett Hellen, Esq.            Attorneys For Gil Capianco
Law Offices of Howard Bennett Hellen
380 S. Melrose Drive, Suite 404
Vista, California 92081
Tel.: (760) 643-4115
Fax: (760) 643-4116

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the above is true and correct. Executed on January 8, 2008, at San Francisco, California.

_____
Jenni Linteo

From: Lisa Scibilia <LScibilia@UROMED.com>
To: "'gcapianco@prowess.com'" <gcapianco@prowess.com>
Subject: benefit info
Date: Thu, 12 Apr 2001 15:35:44 -0400
X-Mailer: Internet Mail Service (5.5.2650.21)

Hi Gil,

I called the Hartrford and Blue Cross and they had said that since your
group is being considered a transfer and not as newhires and you are coming
directly from another plan, than both for medical and all disabilitites that
the pre-existing conditions are waived.

Hope this answers your question.

Take care

Lisa





Eudora Pro

File  Edit  Mailbox  Message  Transfer  Special  Tools  Window  Help

benefits

| | | Who | Date | | | Subject |
|---|---|---|---|---|---|---|
| ✔ | | lscibilia@uromed.com | 04:10 AM 4/20/2001 +0100 | 1 | | forms for benefits |
| | 🗎 | Lisa Scibilia | 04:02 AM 4/12/2001 -0400 | 2 | ◆ | FW: benefits agenda memo |
| | | Lisa Scibilia | 07:35 AM 4/12/2001 -0400 | 2 | ◆ | benefit info |
| | | Diahanna McCracken | 05:18 AM 4/6/2001 -0700 | 2 | ◆ | RE: Benefits Package |
| | | Diahanna McCracken | 07:06 AM 4/11/2001 -0700 | 2 | ◆ | Benefits Conference Call |
| ✔ | | Lisa Scibilia | 05:26 AM 4/20/2001 +0100 | 2 | | RE: forms for benefits |
| ← | | Lisa Scibilia | 07:38 AM 4/20/2001 -0400 | 2 | ◆ | RE: forms for benefits |
| | | Lisa Scibilia | 12:25 AM 4/9/2001 -0400 | 2 | ◆ | RE: benefits package |
| | | Diahanna McCracken | 01:57 AM 4/13/2001 -0700 | 2 | ◆ | Benefits packages |
| | | Lisa Scibilia | 09:16 AM 4/6/2001 -0400 | 2 | ◆ | RE: Benefits Package |
| | | Lisa Scibilia | 01:41 AM 4/13/2001 -0400 | 3 | ◆ | RE: benefit info |

11/13K/0K

Lisa Scibilia, 07:35 AM 4/12/2001 -0400, benefit info

Subject: benefit info

From: Lisa Scibilia <LScibilia@UROMED.com>
To: "'gcapianco@prowess.com'" <gcapianco@prowess.com>
Subject: benefit info
Date: Thu, 12 Apr 2001 15:35:44 -0400
X-Mailer: Internet Mail Service (5.5.2650.21)

Hi Gil,

I called the Hartrford and Blue Cross and they had said that since your
group is being considered a transfer and not as newhires and you are coming
directly from another plan, then both for medical and all disabilitites that
the pre-existing conditions are waived.

Hope this answers your question.

Take care

Lisa

benefits          ● Lisa Scibilia, 07:3...



EXHIBIT
Tracy
1-18-08  AR



**Hartford Life**

April 11, 2002

Lisa Tracey
Alliant Medical Technologies
1400 Providence Highway
Building #2
Norwood, MA 02062

Policy Holder:     Alliant Medical Technologies
Claimant:          Gil Capianco
SSN:               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
Policy Number:     GLT219661

Dear Ms. Tracey:

We are writing to you regarding the LongTerm Disability (LTD) claim on behalf of the above referenced claimant.

Please forward photocopy of Mr. Capianco's signed enrollment card.

If you have any questions, please feel free to contact our office at (888) 875-4727, x5952. Our office hours are 8:00 AM to 6:00 PM EST, Monday through Friday.

Sincerely,

Sabrina P. Coleman, Examiner
Hartford Life and Accident Insurance Co.

CC:    File Copy



EXHIBIT E
Tracey
1-18-08 AR

**Benefit Management Services**
**Syracuse Disability Claim Office**
**P.O. Box 4907**
**Syracuse, NY 13221-4907**
**(315) 385-5014**

**AR033**


**Hartford Life**

File Copy
Xx
Syracuse, NY  13221



**Hartford Life**

February 18, 2002

Lisa Scibilia
Uromed Corporation
1400 Providence Highway
Building #2
Norwood, MA  02062

| | |
|---|---|
| Policy Holder: | Uromed Corporation |
| Claimant: | Gil Capianco |
| SSN: | 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 |
| Policy Number: | GLT219661 |

Dear Lisa:

In order to fully evaluate this claim for Long Term Disability (LTD) benefits, we need the following information:

Please complete and return the enclosed Physical Demands Analysis.

Please provide the weekly amounts and dates of Short Term Disability benefits
_____.

Please verify if this employee had coverage under your prior LTD carrier _____.
If so please provide the prior carrier policy booklet.

Please confirm the last day of work _____.

Please provide this employee's date of hire _____.

Please send us a photocopy of the enrollment card for this employee.  If not available, send copies of payroll records showing deductions for LTD premium since March 2001.

Please return all requested information within (21) days in order to avoid any delays in processing your claim for benefits.

Benefit Management Services
Syracuse Disability Claim Office
P.O. Box 4907
Syracuse, NY 13221-4907
(315) 385-5014



**EXHIBIT** F
Tracey
1-18-08  AR

**AR076**

If you have any questions, please feel free to contact our office at (888) 875-4727. Our office hours are 8:00 AM to 6:00 PM EST, Monday through Friday.

Sincerely,

Christina M. Diecuch, Examiner
Hartford Life and Accident Insurance Co.

CC:    File Copy

**THE HARTFORD**

HARTFORD LIFE INSURANCE COMPANY
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

**Employer's Statement**

o be Completed by the Employer

his claim is for (Employee's Name)      | Social Security Number | Date of Birth
Gil Capianco        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    6/23/56

mployee's Address (Street, City, State, Zip)
4274 Mt. Hukee Avenue   San Diego, CA  92117-4734

## Information About the Employer

ompany's Name                             FEB 1 2002    | Group Policy Number
UnoMed Corporation                                        GLT-219661

ddress (Street, City, State, Zip)                       | Telephone Number
1400 Providence Highway   Norwood, MA 02062               781-762-2080

lame and address of division where employee works (if different from above)   | Fax Number
Employee works from his home address noted above                                781-762-2737

## Information About the Employee

late employee was hired | Date employee became insured under this plan | What was the employee's regularly scheduled work week? 40 hours per week
3/19/90  l  |  3/27/0 l

Was the employee's group insurance issued on the basis of a Personal Health Statement?  ☐ Yes  ☐ No  If "Yes," attach copy.

Was the employee insured under your prior LTD policy?  ☑ Yes  ☐ No

"Yes," please provide the inclusive date of coverage. From _____ Through _____

**C. Information for Group Life Premium Waiver Benefits**

las the employee been terminated?  ☑ Yes  ☐ No If "Yes," date: 10/31/01 *

Does the employee also have Group Life Insurance coverage with The Hartford?

leason: * The employee was terminated as part of a company with work force reduction. He was informed on 10/18/01 that he would be terminated as of 10/31/01.

☑ Yes  ☐ No  If "Yes," provide the following information:

Basic Amount   $2X Salary   annual

Was the employee on Qualified Family Leave when disability began?  ☐ Yes  ☐ No

Did LTD insurance continue while on Family Leave?  ☐ Yes  ☐ No

Supplemental Amount  $ _____

late Leave of Absence started under Family Leave Act _____

Effective Date of Group Life Insurance coverage _____

## D. Information Needed for Withholding and Reporting Taxes

Based on the employer/employee premium contributions made over the last 3 years, what percentage of the LTD benefits is considered taxable? _____ %. (See Section 7 of IRS Publication 15-A for information on determining the taxable percentage.)

## E. Information About the Claim

Were there any changes to the employee's job responsibilities due to the disabling condition before the employee became totally disabled?  ☐ Yes  ☑ No  If "Yes," what were the changes, and when were they made?

What was the employee's permanent job on his or her last day at work?   | How long had the employee been in this job?
Telephone support (technical) for customers                               1 yea

ast day employee actually worked   | On that day, did the employee work a full day?
10/30/01                             ☐ Yes  ☐ No  If "No," how many hours were worked? unsure

Why did employee stop working?            | Is the employee's condition work related?
Terminated                                 ☐ Yes  ☑ No

Has a claim been filed with Workers' Compensation?  ☐ Yes  ☑ No  If "Yes," send initial report of illness or injury and award notice.   | Date employee is expected/did return to work  Full time? ☐ Yes  ☑ No
(Month, Day, Year)

Name and address of your compensation carrier
The Hartford    Policy # 08 WB 100800

## F. Information About Your Pension Plan (Do not complete for maternity claim.)

Do you have a pension plan?  ☑ Yes  ☐ No   | If "Yes," what type? (Check as many as applicable.)  ☐ Defined benefit  ☐ Defined contribution  ☑ 401K  ☐ Profit Sharing  ☐ Other (specify)

s the employee eligible for your pension plan? ☑ Yes  ☐ No   | If eligible, does the employee participate? ☑ Yes  ☐ No
f "No," why?                                                    If "No," why?

If the employee is participating, when is he or she eligible for benefits under the plan? _____  (Month, Day, Year)

t what point does the employee qualify for a full pension? _N/A_

s there a Disability Retirement Option available to this employee?  ☐ Yes  ☐ No

EXHIBIT G

Tracey
1-18-08

## A. Information About Your Rehire or Return-to-Work Policies

Does your company have a rehire or return-to-work policy for disabled employees? ☐ Yes ☒ No

What is the name and title of the manager we should contact if we identify a rehabilitation or return-to-work option?

## H. Information About the Employee's Salary

Basic Salary or wage immediately prior to cessation of work because of disability (exclude bonuses, overtime payment, etc.)

$ 70,000 ☐ Monthly ☐ Weekly ☒ Annually ☐ Hourly # Hours/Week

Is this employer eligible for salary continuation?

☐ Yes ☒ No If "Yes," what is the weekly amount? $ _____ When do benefits begin? _____ End? _____

Will the employee file for Short Term or State Disability benefits?

☐ Yes ☐ No If "Yes," what is the weekly amount? $ _____ When do benefits begin? _____ End? _____

The employee filed and his claim was denied because he was not

List any other sources of income to which the employee is entitled as a result of this disability: an active employee.

## I. Information About the Physical Aspects of the Employee's Job

Check the items below that relate to the employee's job and complete the information requested. Use these definitions for the frequency of occurrence:

*Not Applicable* means the person does not perform this activity.
*Occasionally* means the person does the activity up to 33% of the time.
*Frequently* means the person does the activity 34% to 66% of the time.
*Continuously* means the person does the activity 67% to 100% of the time.

### Frequency of Occurrence

| Activity | N/A | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| ☐ Standing | ☐ | ☒ | ☐ | ☐ |
| ☐ Walking | ☐ | ☒ | ☐ | ☐ |
| ☐ Sitting | ☐ | ☐ | ☐ | ☐ |
| ☐ Balancing | ☐ | ☒ | ☐ | ☐ |
| ☐ Stooping | ☐ | ☒ | ☐ | ☐ |
| ☐ Kneeling | ☒ | ☐ | ☐ | ☐ |
| ☐ Crouching | ☒ | ☐ | ☐ | ☐ |
| ☐ Crawling | ☒ | ☐ | ☐ | ☐ |
| ☐ Reaching/working overhead | ☐ | ☐ | ☒ | ☐ |
| ☐ Keyboard Use/Repetitive Hand Motion | ☐ | ☐ | ☐ | ☒ |
| ☐ Climbing | ☐ | ☐ | ☐ | ☐ |

| Activity | Description | Frequency | Weight |
|---|---|---|---|
| ☐ Pushing | N/A | | lbs. |
| ☐ Pulling | N/A | | lbs. |
| ☐ Lifting | N/A | | lbs. |
| ☐ Carrying | N/A | | lbs. |

Can the job be performed by alternating sitting and standing? ☒ Yes ☐ No

What are the major tasks requiring the use of one or both hands? Indicate the percentage of the employee's workday that is spent on each of these tasks. Telephone use ........ 50 %

Computer entry and review ........ 50 %

........ %

## J. Information About the Job as it Relates to the Disability

Can the job be modified to accommodate the disability either temporarily or permanently? ☒ Yes ☐ No If "Yes," explain.

This job requires intermittent work during an 8 hr day

Is it possible to offer the employee assistance in doing the job (e.g. through ___) ☐ Yes ☒ No

If "Yes," explain.

## K. Required Attachments and Signature

Please attach a copy of the employee's job description.

If the employee contributes to the premiums for LTD or Group Life Insurance coverage, attach a copy of the enrollment form and/or copies of the last two Flexible Benefits Election forms.

If salary is based on a W-2, K-1, 1099, or a similar document, attach a copy of the document.

If you have medical information from the employee's file relating to this disability, please attach copies.

If a Workers' Compensation claim is filed, send initial report of injury or illness and award notice.

Name of person completing this form *(if this claim is approved for disability benefits, the benefit check will be sent to the employee with a copy to you)*.

Domenic Micale | Chief Financial Off
Name (Please print or type) | Title

Signature | 1/8/02 Date

4571-12 (2)



**THE HARTFORD**

APPLICATION FOR LONG TERM DISABILITY INCOME BENEFITS
**HARTFORD LIFE INSURANCE COMPANY**
**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

**Section II**
**Employee's Statement**

## To Be Completed by the Employee ( BE SURE TO ANSWER ALL QUESTIONS— FAILURE TO DO SO MAY DELAY YOUR CLAIM )

### A. Information about you

| Last name | First | Middle initial | Social Security Number |
|---|---|---|---|
| CAPIANCO | GIL | | 123 48 2072 |

| Address (Street) | City | State/Province | Zip |
|---|---|---|---|
| 4274 MT. HUKEE AVE. | SAN DIEGO | CA | 92117-4734 |

Telephone Number
858-268-7920

| Date of Birth (Month, Day, Year) | Height | Weight | ☒ Male ☐ Female | ☐ Single ☒ Married | ☐ Widowed ☐ Divorced |
|---|---|---|---|---|---|
| JUNE 23, 1956 | 5'8" | 145 | | | |

Your employer (include division, if applicable)
American Search Technologies

Occupation
TECHNICAL SUPPORT

When your disability began, did you have more than one employer (includes self-employment)? ☐ Yes ☒ No. If "Yes," please provide the name, address and phone number of that employer. Indicate the dates when you worked (or were self-employed).

Please indicate the extent of your formal education (Circle one)
High School: 1 2 3 4 5 6 7 8 9 10 11 12
College: 1 2 3 ④       Masters _____       Ph.D. _____

Trade School: _____

Briefly describe your past work experience for the last 20 years (Begin with your most recent job.)

| Job Title | Duties | Years Worked |
|---|---|---|
| (a) TECHNICAL SUPPORT | SUPPORT OF MEDICAL TPS | 1989-2001 |
| (b) SOFTWARE ENGINEER | PROGRAMMING | 1981-1989 |
| (c) | | |
| (d) | | |

Now, or at some time in the future, would you be interested in seeking rehabilitation to some other kind of work?
☒ Yes ☐ No (and why?)

Have you contacted your State Department of Vocational Rehabilitation?
☐ Yes ☒ No If "Yes," please include the name, address and telephone number of your counselor.        FEB 1 2002

### B. Information About your Family (required to determine your eligibility for Social Security Benefits)

Spouse's Name (Last, first)
CAPIANCO, ALLA

| Spouse's Social Security Number | Date of Birth (Month, Day, Year) | Is your spouse employed? ☒ Yes ☐ No | Retired? ☐ Yes ☒ No |
|---|---|---|---|
| 610 13 9383 | OCTOBER 15, 1972 | | |

Do you have any children under Age 19?
☐ Yes ☒ No If "Yes," name and date of birth of each child

Do you have any children with disabilities (regardless of age)?
☐ Yes ☒ No If "Yes," name and date of birth of each child

LC-4571-12        (3)

## C. Information About the Condition Causing Your Disability

**1. For illness, answer the following questions:**

What were your first symptoms?

OPTICAL NEURITIS

When did you first notice them?

1984

Have you had this illness before? If so, when?

1984 - 2001

**2. For an injury, answer the following questions:**

When, where and how did the injury occur?

**3. For illness, injury or Pregnancy, answer the following questions:**

Date you were first treated by a physician?

MARCH 1998
(Month) (Day) (Year)

Name of Physician

Address of Physician  SKOPJE, MACEDONIA (INSTITUTE OF RADIOLOGY & ONCOLOGY)

Before you stopped working, did your condition require you to change your job, or the way you did your job?
☒ Yes ☐ No  If "Yes," explain.

DAYTIME SLEEPING - NEEDING TO CHECK WORK REPEATEDLY FOR MISTAKES

What aspect of your condition made you unable to work?

FATIGUE, DYSLEXIA, FORGETFULNESS, CONFUSION

Is your condition related to your occupation?
☐ Yes ☒ No  If "Yes," explain.

Have you filed, or do you intend to file a Workers' Compensation claim? ☐ Yes ☐ No

## D. Information About the Disability

Last day you worked before the disability

OCTOBER 29 2001
(Month) (Day) (Year)

Did you work a full day? ☐ Yes ☒ No
If "No," explain.  WORKING 1 HOUR

Date you were first unable to work

OCT 10 2001
(Month) (Day) (Year)

Since that date, have you done any work? ☒ Yes ☐ No
If "Yes," please indicate dates worked, name of employer and amount earned.

29 OCT 2001  ALLIANT MEDICAL TECH  REGULAR SALARY

If you have not returned to work, do you expect to?
☐ Yes  Part time (date) _____  Full time (date) _____
☐ No  DON'T KNOW

## E. Information About Physicians and Hospitals

First medical attention for the current disability was given by (complete below)

Doctor's Name

JAMES R. NELSON, MD

Telephone 858 646 0440
FAX: (858) 646 0402

Specialty

NEUROLOGY

Address (Street, City, State, Zip)

9850 GENESEE AVE. STE 320  LA JOLLA, CALIF 92037

Dates seen

1998 to PRESENT

List all Physicians and Hospitals you have seen for this condition (attach separate sheet, if needed)

Doctor's Name

WAYNE R. ANDERSON, MD

Telephone 858-646-0400
619 258 5400

Specialty

FAMILY PRACTICE

Address (Street, City, State, Zip)

10862 CALLE VERDE  LA MESA, CALIF 91941-7387

Dates seen

to 2001

Hospital

SCRIPPS CLINIC RANCHO SAN DIEGO

Address (Street, City, State, Zip)

10862 CALLE VERDE  LA MESA, CALIF 91941-7387

Dates of Confinement

to

Have you consulted any other physicians or been hospitalized in the past three months? ☐ Yes ☐ No
If "Yes," complete the following concerning your past treatment (attach separate sheet, if needed)

Doctor's Name

DR DANIEL MICHAELS

Telephone
FAX

Specialty

FAMILY PRACTICE

Address (Street, City, State, Zip)

4150 REGENTS PARK ROW, STE 200  LA JOLLA, CALIF 92037

Dates seen

1994 to 1999

Hospital

Address (Street, City, State, Zip)

Dates of Confinement

to

## F. Other Income

Check the other income benefits you have received/are receiving, or are eligible to receive during your disability (complete the information requested).

| Source of Income | Amount(week /month) | Date Claim was filed | Date Payments began | Date Payments ended |
|---|---|---|---|---|
| Social Security/Retirement | $____/____ | ____ | ____ | ____ |
| Social Security/Disability | $____/____ | ____ | ____ | ____ |
| Sick Pay or Salary Continuation | $____/____ | ____ | ____ | ____ |
| Income from Work | $____/____ | ____ | ____ | ____ |
| Workers Compensation | $____/____ | ____ | ____ | ____ |
| State Disability | $____/____ | ____ | ____ | ____ |
| Pension/Retirement | $____/____ | ____ | ____ | ____ |
| Pension/Disability | $____/____ | ____ | ____ | ____ |
| Short Term Disability | $____/____ | ____ | ____ | ____ |
| Unemployment | $____/____ | ____ | ____ | ____ |
| No-Fault Insurance | $____/____ | ____ | ____ | ____ |
| Other (include Individual or Group Benefits) | $____/____ | ____ | ____ | ____ |

## G. Information about Tax Withholding

Federal law requires us to withhold federal income tax from your check *if you request us to do so.* We are also required to send a report to your employer at the end of each calendar year showing your name, total amount of benefits paid to you, total amount withheld, if any, and your social security number. If you want us to withhold tax, please indicate on the line below the dollar amount to be withheld per benefit check. Whole dollars only *(minimum is $87.00 per month)*: $_____.00.

## H. Signature

With the exception of any source(s) of income reported above in Section F of this form, I certify by my signature that I have not and am not eligible to receive any source of income, except for my Hartford Disability Income. Further, I understand that should I receive income of any kind or perform work of any kind during any period The Hartford has approved my disability claim, I must report all details to The Hartford, immediately.

If I receive disability benefits greater than those which should have been paid, I understand that I will be required to provide a lump sum repayment to the insurance company. The insurance company has the option to reduce or eliminate future disability payments in order to recover any overpayment balance that is not reimbursed.

**For residents of all states *EXCEPT* California, Florida, New Jersey, Colorado, Pennsylvania, Arkansas, New Mexico, Louisiana and Virginia:** A person commits a fraudulent insurance act, which is a crime, and shall be subject to a substantial civil penalty where applicable and to the fullest extent of the law, if that person knowingly and with intent to defraud any insurance company or other person either: (a) files an application for insurance or statement of claim containing any materially false information, or (b) conceals information concerning any fact material thereto for the purpose of misleading.

**For residents of Florida:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**For residents of New Jersey, Arkansas, New Mexico, and Louisiana:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. Any person who includes any false or misleading information on an application for insurance policy is subject to criminal and civil penalties.

**For residents of Colorado:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or its agent who knowingly provides false, incomplete, or misleading information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to an insurance settlement or award shall be reported to the Colorado Division of Insurance.

**For residents of Pennsylvania:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects a person to criminal and civil penalties.

**For residents of California:** For your protection, California requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

The statements contained in this application for Long Term Disability Income Benefits are true and complete to the best of my knowledge and belief.

X _____   X _29 Oct 2001_
    *SIGNATURE OF THE EMPLOYEE*            DATE

**PLEASE ATTACH A COPY OF YOUR DRIVER'S LICENSE OR ANOTHER DOCUMENT THAT VERIFIES YOUR DATE OF BIRTH.**

FEB 1 2002



**Authorization to Obtain and Release Information**

TO:  Any physician, medical practitioner, hospital, pharmacy, clinic or other medical or medically-related facility or provider of medical or dental services or supplies;

  any employer, group policyholder, contract holder or insurer, benefit plan administrator, Medical Information Bureau, Inc., Health Claims Index, The Index System, business entities, financial institutions, consumer reporting agencies, educational institutions, or

  any Federal, State or Local Government Agency, including Social Security Administration and Veterans Administration.

I authorize you to release and send to: (i) Hartford Fire Insurance Company, Hartford Life Insurance Company, Hartford Life and Accident Insurance Company, and any affiliate of one or more of these three companies, known collectively as The Hartford; or (ii) The Hartford's representatives, a complete copy of any and all of the following information, records or documents relative to

_GIL CAPIANCO_____ Insured's Name *(Please print.)*

_23 June 1956_ (Date of Birth)  _123 48 2072_  (Social Security Number)

1.  Any and all medical information, including x-ray films, photocopies of medical records, medical histories, physical, mental or diagnostic examinations, and treatment notes. For purposes of this authorization, medical information specifically includes confidential information regarding HIV/AIDS, communicable diseases, alcohol or drug abuse, and mental health, as such information may relate to my claim for benefits.

2.  Work information and history, including, but not limited to, job duties, earnings and personnel records, client lists, any and all other work-related information for contractual work performed; information on any insurance coverage and claims filed, including all records and information related to such coverage and claims; credit information, including, but not limited to, credit reports and credit applications; other financial information, e.g., bank records; business transactions of any kind or description, including billing, invoices or payment records of any kind; and academic transcripts.

3.  Information concerning Social Security benefits, including, but not limited to, monthly benefit amounts, monthly payment amounts, entitlement dates, and information from my Master Beneficiary Record.

I further authorize The Hartford or its reinsurers to request a report from the Medical Information Bureau (MIB), which is an association of life insurance companies that operates the Health Claim Index (HCI) on behalf of subscriber insurers. I understand that The Hartford may also send a brief report to HCI. An HCI report includes the dates of claims filed for or by me, claim date of loss and the names of companies to which claims were submitted, but does not contain medical information. Upon receipt of a request from me, MIB will arrange disclosure of any information it may have in my HCI file. If I question the accuracy of information in the file, I may contact MIB and seek a correction in accordance with the procedures set forth in the Federal Fair Credit Reporting Act. The address of MIB, Inc.'s information office is Post Office Box 105, Essex Station, Boston, MA 02112, telephone number (617) 426-3660.

I understand that the information obtained by use of the Authorization will be used for the purpose of evaluating and administering a claim for benefits. Any information obtained by The Hartford will not be released by The Hartford to any person or organization EXCEPT to reinsuring companies or their representatives, The Index System, Medical Information Bureau, Health Claim Index, physicians who have treated me, or other persons or organizations performing business or legal services in connection with my Claim, or as may be otherwise lawfully required, or as I may further authorize, or as may be necessary to prevent or to detect the perpetration of a fraud.

I know that I may request to receive a copy of this Authorization.

This Authorization is given in connection with a claim for benefits. I intend that it be valid for the duration of the claim.

A photocopy or facsimile of this authorization shall be valid as the original.

_____               _____
Signature of Insured or Guardian                Relationship to Insured *(if signed by Guardian)*

_29 Oct 2001_
Date

FEB 1 2002

**ATTENDING PHYSICIAN'S STATEMENT OF DISABILITY**

## To be completed by the Employee

Name of patient _GIL CAPIANCO_    Social Security Number _12 3 48 2072_ D.O.B _23 JUNE 1958_

Address of patient _4274 MT. HUKEE Ave_    _SAN DIEGO_    _CALIF_    _92117-4734_
   Street    City    State or Province    Zip Code or Postal Code

Employer's name (and division, if applicable) _ALLIANT MEDICAL TECHNOLOGIES_

---

I hereby authorize release of information on this form by the below named physician for the purpose of claim processing.

Signed (Patient) _[signature]_

Date: _29 October 2001_

## To be completed by the Attending Physician (The patient is responsible for the completion of this form without expense to the Company.)

Patient's condition is the result of: ☑ Illness   ☐ Injury   ☐ Pregnancy   Height _5/10_  Weight _60_

If pregnancy, what is the expected date of delivery?   Month _____   Day _____   Year _____

Is condition due to illness or an injury that is work related? ☐ Yes ☐ No

### DIAGNOSIS

Primary diagnosis: _Multiple Sclerosis_    ICD-9 Code: _340_

Secondary diagnosis(es): _optic neuritis_    ICD-9 Code(s): _377.3_

Subjective symptoms: _bilateral partial blindness, low vision_

Test Results (list all results, or enclose test):

Test: _visual_    Date: _11/20_  Results: _20/400 (R), 20/25 (L) with central scotoma_

Test: _____    Date: _____  Results: _____

Physical examination findings: _bilateral optic disk pallor R>L_

If pregnancy, indicate LMP date:   Month _N_ Day _A_   Year _____

### TREATMENTS

Date you first treated this patient: _4/7/98_  Date you first treated this patient for this condition: _____

Date of onset of this condition: _____   Date of most recent treatment: _12/17/01_

How often has patient been seen/treated? _____    Date of next office visit: _____

Has patient been referred to any other physician? ☐ Yes ☑ No  If "Yes," Date(s): _____

Name and address: _____

_____    Specialty: _____

Nature of treatment for this condition: _____

Has surgery been performed? ☐ Yes ☑ No  If "Yes," Date: _____   Procedure: _____   CPT Code: _____

Was patient hospitalized for this condition? ☐ Yes ☑ No  If "Yes," Date(s) admitted: _____   Date(s) discharged: _____

Name and address of hospital(s): _____

Progress (Please check one.):   ☐ Recovered   ☐ Improved   ☑ Unchanged   ☐ Retrogressed

**ATTENDING PHYSICIAN'S STATEMENT OF DISABILITY** (Side two)

**IMPAIRMENT**

If the patient's ability to perform any of the following activities is limited by his/her disorder, please describe the extent of the limitation and its expected duration.

Standing:

Walking: _Can do_

Sitting:

Lifting/carrying:

Reaching/working overhead: _poor due to visual loss_

Pushing:

Pulling:

Driving: _impaired partially_

Keyboard use/repetitive hand motion: _OK_

If any other activities are limited, please specify the activities and the limitations: _visual impairment impacts all work activities_

If the patient's vision is impaired, please describe the extent of the impairment: _See previous_

Do you believe the patient is competent to endorse checks and direct the use of the proceeds thereof? ☑ Yes ☐ No

What is the psychiatric impairment (If applicable)?

☐ Inadequate information to make assessment.

☐ Essentially good functioning in all areas. Occupationally and socially effective.

☐ Slight difficulty in occupational functioning, but generally functioning well. Has some meaningful interpersonal relationships.

☑ Moderate impairment in occupational functioning. Limited in performing some occupational duties.

☐ Major impairment in several areas—work, family relations. Avoidant behavior, neglects family, is unable to work.

☐ Inability to function in almost all areas.

Date patient became unable to work due to this impairment? Month __10__ Day __10__ Year __2001__

If physical or psychiatric limitations exist, how long do you feel limitations will last? _Permanent_

Attending Physician's Name: _James R. Nelson, M.D._    Telephone # (858) 646-0400
(Please print or type.)

License No. _G10532_    FAX # (858) 646-0402

SS# or E.I.N.#: _532 30 6557_    Degree: _M.D._    Specialty: _Neurology_

Street Address: _9850 Genesee Ave._   City: _La Jolla_   State: _CA_   Zip Code: _92037_

Signature: _J R Nelson M.D._    Date signed: _1/30/02_

LC-4571-12     (9)

**PRINCIPALS ONLY** - Submit a letter of application, salary requirement and résumé.
CONTACT: Human Resources
SSGI Prowess Systems
1370 Ridgewood Drive, Suite #20
Chico, CA 95973-7803
Tel: 530-898-0660
FAX: 530-342-8966
Email: hrdept@prowess.com

SSGI is seeking an individual to fill a highly visible, full-time position in Customer Technical Support. This individual will perform:
- telephone product customer support;
- test and document user problems; run regression tests on interim versions of software;
- assemble, test and configure computer systems;
- and manufacture software.

Extensive experience with MS-DOS and MS-Windows software; a good understanding of PC based computer hardware and configuration; and excellent problem-solving abilities and communication skills are required. Applicants should also have a rudimentary knowledge of some scripting language (e.g. batch files), networking, text editing tools, and databases. A bachelor's degree in a relevant field is preferred. The salary is commensurate with experience, and an extensive benefits package is provided.

Occasional onsite travel

**Traits...**
- Team Player
- Self-Directed
- Organized and Detail-Oriented
- Positive Attitude
- Outgoing
- Enjoys interaction with Clients and Staff

**Skills...**
- Technical support / training over the telephone
- Providing outstanding client support
- Technically skilled with PC hardware, especially current systems (e.g.. Pentium II, Pentium Pro )
- Able to install, configure and support Windows 3.11, Windows-95 and NT systems
- Network client configuration experience a PLUS

**Responsibilities...**
- Customer interaction on support calls.
- Troubleshooting software and hardware problems.
- Maintenance of all associated paperwork and databases.
- ~~Preparation of complete computer systems for shipment to customers, worldwide. To include PCs, Printers, Digitizers, Scanners, installed software.~~
- ~~Tracking customer system production for timely shipment.~~
- ~~Receiving materials, and data entry into accounting system. (Will be trained on job)~~
- ~~Occasional lifting of heavy parcels up to 90 lbs.~~
- ~~Preparation of initial paperwork for shipping.~~
- ~~Assist with maintenance and quality control of in-house computers.~~
- ~~Assist with RMA's and other purchasing tasks.~~
- And other duties assigned on an as-needed basis

For prompt consideration, please send cover letter, resume, and salary history.

**Benefits**

**Bonus Benefits**

- Medical/Prescriptions Insurance
- Dental Insurance
- Disability Insurance
- Life Insurance
- 401(K) Plan /Profit Sharing
- Vacation /Sick Leave
- Paid Holidays

- Small Community
- Short commute to work
- University Community
- Team Environment
- Close to big cities
- Even closer to outdoor recreation

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 Fax
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

October 13, 2003

Ms. Lisa Tracey
106 High Street
Charlestown, MA 02129

## VIA FEDERAL EXPRESS OVERNIGHT DELIVERY

**Re:** **Capianco v. Hartford, et. al./ United States District Court, So. Dist. Cal.
Case No. 03-CV-00562- J (AJB)**

Dear Ms. Tracey:

This office represents Mr. Gil Capianco, a former employee of UROMED/Alliant Medical Technologies, in the above-captioned action. Please allow me to introduce myself and to explain why I am contacting you at this time.

As I believe you are aware, Mr. Capianco's Long-Term Disability ("LTD") benefits were denied by Hartford Insurance. Due to the fact that Hartford failed and refused to respond to our formal administrative appeal within he time limits set by the Employee Retirement and Income Security Act ("ERISA"), Mr. Capianco, who has Multiple Sclerosis, exhausted his administrative remedies and had no choice remaining to him but to file suit in the United States District Court.

The basis for the denial was the imposition of a "preexisting condition limitation" in the Hartford LTD Plan Policy. We take issue with this, and also argue that the "continuity of coverage" provision which immediately follows the preexisting clause should have allowed benefits to be paid to Mr. Capianco. This brings me to the reason I need to contact you.

As you were the key HR/Benefits contact at UROMED/Alliant to Mr. Capianco at all relevant times while he was still an employee there, you are a key material witness in this action for the following reason: You had e-mailed Mr. Capianco a message in April of 2001 in response to his concern about whether or not the preexisting limitation would be applied by Hartford. A true and correct copy of that e-mail is attached to this letter.

As you can see, you informed Mr. Capianco that Hartford and Blue Cross had assured you that the preexisting exclusion was waived in Mr. Capianco's case. As Hartford now denies it ever

continued....

EXHIBIT H
Tracey
1-18-08 AR

informed you of such a thing, implying that you were not accurate and/or truthful in your e-mail statement, Mr. Capianco has no choice but to ask you to confirm this statement and, if at all possible, to inform us of who at Hartford and/or Blue Cross made that statement. Your confirmation/input is probably the single most important piece of evidence in Mr. Capianco's case.

Please understand that neither Mr. Capianco nor this office has any "hidden agenda" as to your involvement in any of this. We simply need your input as a material witness; we are not naming you as a defendant or implicating you with any form of liability whatsoever in this matter. Furthermore, if we can settle this case your actual presence to give testimony will most likely never be required.

Finally, you may be wondering why I am contacting you, rather than Mr. Capainco. Mr. Capainco indicated that he felt more comfortable with my making the contact at least for now. I want you to know that I did give him the opportunity to call you first, so that you would perhaps not feel unduly intimidated. However, he insisted, and he is the client, whose wishes I must obey. Since it is not unreasonable for me to contact you directly, I have done so in order to fulfill my ongoing duty of competent representation of a client.

In view of the above, I would greatly appreciate your calling me at (760) 643-4115 or faxing me at (760) 643-4116 with a response to this letter, at your earliest possible convenience. If I do not hear from you by this Thursday, October 16, I will call you on the following day.

Again, please accept in advance my sincere thanks and those of Mr. Capianco for speaking with me about your recollections surrounding the enclosed e-mail correspondence. I look forward

to speaking with you, and will make every attempt to minimize your inconvenience.

Sincerely,

Howard Bennett Hellen
HBH/sls

cc:     Client
        File

encl: 1, per above

From: Lisa Scibilia <LScibilia@UROMED.com>
To: "'gcapianco@prowess.com'" <gcapianco@prowess.com>
Subject: benefit info
Date: Thu, 12 Apr 2001 15:35:44 -0400
X-Mailer: Internet Mail Service (5.5.2650.21)

Hi Gil,

I called the Hartrford and Blue Cross and they had said that since your
group is being considered a transfer and not as newhires and you are coming
directly from another plan, than both for medical and all disabilitites that
the pre-existing conditions are waived.

Hope this answers your question.

Take care

Lisa

April 29, 2004

Dennis G. Rolstad
Sedgwick, Detert. Moran & Arnold LLP

Re: The letter of April 28, 2004 to Howard Bennett Hellen, Esq. re Capianco v. Hartford.

Dear Mr. Rolstad.

In response to your April 28, 2004 letter to attorney Hellen, there are several very important inaccuracies in regard to the interaction between Ms Lisa Scibilia Tracey and myself.

In my capacity as investigator for attorney Hellen in this case I visited and spoke to Ms Tracey at her home in Avon, MA (not Boston) on two occasions. The first was on February 18th. 2004, when after I identified myself, by photo id as well as function, I was invited into her home by herself and her husband, Jayson Tracey. We had a very friendly, as well as lengthy, conversation in regard to Mr. Capianco. In fact she gave me permission to call her regarding the Capianco matter and she promised to communicate with Mr. Capianco's attorney, Mr. Hellen, after I gave her his name and telephone number. We did not speak again for approximately two months.

On April 16. 2004, I was requested telephonically by attorney Hellen to revisit Ms Tracey and inquire about the status of her decision to sign a Declaration provided for her by Mr. Hellen. I visited Ms Tracey on April 19th. Ms Tracey at this point stated that she had intended to discuss the Declaration received from Mr. Hellen with a former Human Resource colleague and had intended to contact this colleague for the previous several weeks but had not done so. She stated that she would call this former colleague, discuss and/or show him a copy of the Declaration and that we should talk within several days.

On April 21, 2004, I called the Tracey residence at approximately 5:30PM and was informed by Mr. Tracey that Lisa should be home by 6:30-7:00PM and that I should try her again at that time. I did and he stated that she still was "running late". I asked if it was all right to call in a couple of hours and he said "of course". I called at approximately 9:00PM. No one answered and I left a message on their telephone answering machine asking her to contact me at her convenience regarding her talk with her colleague concerning the Declaration. Ms Tracey called me on April 26, 2004 and left a message on my answering machine that stated that her former colleague had just returned from a business trip and had not responded to her yet. She stated that she would call him the next morning, April 27th. and get back to me with her thoughts regarding the Declaration. This call from Ms Tracey was the last time, and perhaps the third or fourth, that we had



spoken telephonically about the Capianco matter over a two month period, during which there were only two visits. At no time and in no manner, in person, or over the telephone, did she request that I stop communicating with her. In fact, the interaction ended with her calling me and promising to follow up quickly with the matter.

Very truly yours,

Stewart Reiser, Licensed Investigator.

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 FAX
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

March 5, 2004

Ms. Lisa Scibilia-Tracey
Avon, MA

VIA FACSIMILE TRANSMISSION ONLY TO (508) 897-0831

**Re:    Capianco v. Hartford, et. al./ United States District Court, So. Dist. Cal.
Case No. 03-CV-00562- DMS (AJB)**

Dear Lisa:

First, I would like to thank you once again for your time and courtesy in our telephone conversation of Saturday, February 21 respecting my client, Mr. Gil Capianco, a former employee of UROMED/Alliant Medical Technologies, in the above-captioned action.

As we discussed, you agreed to review a brief declaration based on your personal knowledge of this matter, which basically revolves around your e-mail of April, 2001 to Mr. Capianco, in which you stated that Hartford told you that the pre-existing bar would be waived due to Mr. Capianco's continuity of coverage provision, since he was considered a transfer and not a "new hire". You indicated that you have a copy of that e-mail in your possession from Mr. Reiser's visit with you.

I apologize for the delay in getting this draft to you. The delay was caused by the sudden death of my best friend of 30 years, which caused me to have to be in Pennsylvania for the funeral and New York for the burial in her husband's family plot. I needed to spend some time consoling my other best friend, the husband, and to help in any way I could. Thus I was gone from February 24 until yesterday, March 4.

Please review the Declaration carefully. I believe I have made it as simple and straightforward as possible, and have limited it to only your direct observations and recollections. If there is anything you feel is not accurate, please contact me and let me know, and I will amend it. If all is in order, please sign and return a copy by fax to the number atop this letterhead,

continued....



and return your original signature page by US Mail.

As we discussed, neither Mr. Capianco nor this office has any "hidden agenda" as to your involvement in any of this. We simply need your input as a material witness; we are not naming you as a defendant or implicating you with any form of liability whatsoever in this matter. Furthermore, if we can settle this case your actual presence to give oral testimony will most likely never be required. Of course, I have no total control over that, since Hartford can seek your testimony in deposition or at trial, and we would need your testimony at trial, should the case go that far. I sincerely hope, with the help of your signed Declaration, that it settles quickly (and thus that there will be no depositions or trial) for all our sakes.

Again, please accept my sincere thanks and those of Mr. Capianco for providing your observations and recollections in declaration form. As you know, your input is vital to any chance of Mr. Capianco, who suffers from Multiple Sclerosis, for which there is no cure, receiving LTD benefits in the future. I look forward to hearing from you as soon as possible should you have any questions or comments, or to receiving your signed Declaration.

Please feel free to call at any time should you have any additional questions. I will make every attempt to minimize your inconvenience in this case, to the extent it is within my power to do so.

Sincerely,

Howard Bennett Hellen
HBH/sls
cc:     Client
        File

encl: 1, per above

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 FAX
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

March 10, 2004

Ms. Lisa Scibilia-Tracey
Avon, MA

<u>VIA FACSIMILE TRANSMISSION ONLY TO (508) 897-0831 / URGENT</u>

**Re:** **<u>Capianco v. Hartford, et. al./ United States District Court, So. Dist. Cal.
Case No. 03-CV-00562- DMS (AJB)</u>**

Dear Lisa:

Further to my voice-mail message of about 12:55 PST today, in which I followed up on
the status of the draft declaration I faxed to you on the 5th, another piece of information has been
brought to my attention. I know that you said you could not recall the name of the contact at
Hartford who told you that Mr. Capianco's pre-existing condition bar would be waived due to his
previous coverage and his status as a transfer rather than a new hire. With that in mind, please see
the following document enclosed for your reference:

Copy of letter on HARTFORD letterhead addressed to you and authored by Ms. Sabrina
Coleman, Disability Examiner, and dated April 11, 2002.

In view of the above, please let me know if the enclosed letter refreshes your memory and
if it was in fact Ms. Coleman that told you about HARTFORD's waiver of the pre-existing
condition bar. If not, so be it; if so, I would like to revise your declaration to add Ms. Coleman's
name. Again, Lisa, I would not expect you to agree unless the enclosure does in fact refresh your
memory.

Please let me know your response to the above question and also when I can expect your
signed declaration, or if you have any questions, comments or requests on the draft declaration. A
major hearing is set for one week from today (i.e. on 3/17) and your input and signed

continued....



declaration before then is vitally important to Gil.

I realize you are working and busy, and I greatly appreciate your understanding of this situation. Thanks very much, Lisa, for your aniticpated cooperation and kind attention.

Sincerely,

Howard Bennett Hellen
HBH/sls
cc:     Client
        File

encl: 1, per above

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 FAX
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

March 16, 2004

Ms. Lisa Scibilia-Tracey
10 Lothrop Drive
Avon, MA 02322-1247

Re:   **Capianco v. Hartford, et. al./ United States District Court, So. Dist. Cal.
Case No. 03-CV-00562- DMS (AJB)/ URGENT**

Dear Lisa:

Further to my several voice-mail messages over the past week to your telephone number of (508) 586-7205, following up on your comments on the draft Declaration I faxed to you at your then-working fax number of (508) 897-0831 on March 5th, I tried to fax you a follow-up letter on March 10, a copy of which is enclosed. However, your fax number appears to no longer be in service. We have called two or three times since then; once we did not get either an answer or voice-mail; two other times we got your voice-mail and my assistant Stephanie and I each left a message for you.

As you can see from the enclosed March 10 letter, time is of the essence. In my last message I summarized the entire content of the enclosed March 10 letter, also bringing your attention to Ms. Sabrina Coleman of Hartford who had written to you on April 11, 2002 respecting Mr. Capianco's claim and the prior LTD coverage. That letter is enclosed with my March 10 letter enclosed herewith.

I am sorry to "bug" you, Lisa, and I suspect perhaps you are just on vacation or unavailable due to similar things. However, when you get this letter I implore you to contact me immediately. As I said in my March 10 letter:

"Please let me know your response to the above question and also when I can expect your signed declaration, or if you have any questions, comments or requests on the draft declaration. A major hearing is set for one week from today (i.e. on 3/17) and your input

continued....



and signed declaration before then is vitally important to Gil.

I realize you are working and busy, and I greatly appreciate your understanding of this situation."

Luckily, the hearing set for tomorrow has been decided on early, with a first victory for Gil. However, another even more important decision is imminent on Hartford's Motion for Summary Judgment, which will decide whether Gil's case remains in court, or is thrown back to Hartford. This decision is due in the next week or possibly less. Thus, again, I am in urgent need of your signed Declaration, or your comments on the one you received. I also need to know whether you remember Ms. Coleman and whether we can add her to your Declaration.

In view of the above, I would sincerely and tremendously appreciate your getting back to me as soon as possible with your comments and/or questions. Again, the main office at the middle-top of the letterhead on Page 1 has the best address, fax number, e-mail, telephone number, etc.. at which to reach me.

Again, thanks for your understanding, Lisa, in this increasingly- urgent situation. I look forward to hearing from you very soon.

Sincerely,

Howard Bennett Hellen
HBH/sls
cc:     Client
        File

encl: 1, per above (with its own enclosure)

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 FAX
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

March 10, 2004

Ms. Lisa Scibilia-Tracey
Avon, MA

<u>VIA FACSIMILE TRANSMISSION ONLY TO (508) 897-0831 / URGENT</u>

**Re:** **<u>Capianco v. Hartford, et. al./ United States District Court, So. Dist. Cal.
Case No. 03-CV-00562- DMS (AJB)</u>**

Dear Lisa:

Further to my voice-mail message of about 12:55 PST today, in which I followed up on the status of the draft declaration I faxed to you on the 5th, another piece of information has been brought to my attention. I know that you said you could not recall the name of the contact at Hartford who told you that Mr. Capianco's pre-existing condition bar would be waived due to his previous coverage and his status as a transfer rather than a new hire. With that in mind, please see the following document enclosed for your reference:

Copy of letter on HARTFORD letterhead addressed to you and authored by Ms. Sabrina Coleman, Disability Examiner, and dated April 11, 2002.

In view of the above, please let me know if the enclosed letter refreshes your memory and if it was in fact Ms. Coleman that told you about HARTFORD's waiver of the pre-existing condition bar. If not, so be it; if so, I would like to revise your declaration to add Ms. Coleman's name. Again, Lisa, I would not expect you to agree unless the enclosure does in fact refresh your memory.

Please let me know your response to the above question and also when I can expect your signed declaration, or if you have any questions, comments or requests on the draft declaration. A major hearing is set for one week from today (i.e. on 3/17) and your input and signed

continued....

declaration before then is vitally important to Gil.

I realize you are working and busy, and I greatly appreciate your understanding of this situation. Thanks very much, Lisa, for your aniticpated cooperation and kind attention.

Sincerely,

Howard Bennett Hellen
HBH/sls
cc: Client
File

encl: 1, per above

1
2
3
4
5
6
7
8     **UNITED STATES DISTRICT COURT**

9     **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11    GIL CAPIANCO,                    )    CASE NO. 03-CV-562 DMS (AJB)
                                       )
12                                     )    **DECLARATION OF**
              Plaintiff ,              )    **LISA SCIBILA-TRACEY**
13                                     )
              v.                       )
14                                     )
      LONG-TERM DISABILITY PLAN        )
15    OF SPONSOR UROMED CORP.,         )
      et. al.,                         )
16                                     )
                                       )
17            Defendants.              )    TRIAL JUDGE:
                                       )    HON. DANA M. SABRAW
18                                     )    MAGISTRATE JUDGE:
                                       )    HON. ANTHONY J. BATTAGLIA
19                                     )
                                       )    Cutoff Dates:      None Set
20                                     )    Trial Date:        None Set
                                       )
21    _____    )

22

23    I, Lisa Scibilia-Tracey, also known as Lisa Scibilia and Lisa Tracey, declare:

24            1.      I am over the age of 18 years and am a material witness in this case. I

25    have personal knowledge of the facts and circumstances referred to in this Declaration, and if called

26    as a witness I could competently testify thereto.

27            2.      I was employed by Prowess Systems, Inc. ("Prowess"), which was

28                                              -1-

DECLARATION OF LISA SCIBILIA-TRACEY                          03-CV-00562 DMS (AJB)

subsequently purchased by and/or merged into UROMED Corporation ("UROMED"). During the time of the incidents described below, my job position was as Human Resources Officer, in charge of, among other things, the processing of employee benefits, including long-term disability benefits insured and administered by the Hartford Life & Accident Insurance Company ("HARTFORD").

3. In the year 2001, Plaintiff Gil Capianco ("Mr. Capianco"), an employee of Prowess and then UROMED, applied for long-term disability ("LTD") benefits with HARTFORD. He specifically inquired of me, during the beginning of his application process, whether there would be any danger of his being barred by any "preexisting condition" clause or provision if he applied for LTD benefits. I inquired directly of HARTFORD as to whether or not this would pose a problem. I spoke with one of HARTFORD's regular contacts for LTD benefits and was assured that I could inform Mr. Capianco that since he was considered by my employer as a "transfer" and not a "new hire", that since he had a prior LTD policy, the preexisting condition bar would be waived. Although I cannot recall the contact person's name after approximately three years, I am certain that I recall the substance of the conversation correctly.

4. Based on my clear understanding and my years of experience as a Human Resources Officer, including my general knowledge of preexisting condition bars and continuity of coverage provisions, such as those existing in Mr. Capianco's HARTFORD LTD Plan Policy, I was fully confident in writing an e-mail in answer to Mr. Capianco's concerns. A true and correct copy of that e-mail, bearing my name and dated April 12, 2001, is attached hereto as Exhibit "A". I am the author of the attached e-mail. In my e-mail I stated the following to Mr. Capianco:

" I called the Hartford and Blue Cross and they had said that since your group is being considered a transfer and not as new hires and you are coming directly from another plan, then both for medical and all disabilities that the pre-existing condition [limitations] are waived."

I stand by the above statement as clear, accurate and truthful based on my personal

////

-2-

knowledge at that time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.

DATED:

_____
LISA SCIBILIA-TRACEY

-3-

## STEWART REISER
## HURON INVESTIGATIONS, INC.
**P.O. Box 400709**
**N. Cambridge, MA 02140-0008**
**Tel. and Fax (617) 491-2669**

February 19, 2004

Howard Bennett Hellen, Attorney at Law
Melrose Law Center
380 S. Melrose Drive, Suite 404
Vista, CA 92081

Investigation Summary II; Capianco v. Long-Term Disability Plan of Sponsor UROMED Corp.

Following the first stage of the investigation that comprised searching for the correct Lisa Scibilia- Tracey, the investigator prepared a work in progress report for attorney Hellen and the client Gil Capianco and forwarded it to the attorney. The investigator then called the town clerks of the towns of Avon and Easton to further confirm the proper identity and residence of Tracey (by inquiring about the change of name from Scibilia to Tracey within the past several years and the type of employment listed in her annual census response). After consulting with attorney Hellen it was decided that the investigator should read the motion filed in Mr. Capianco's behalf and to be in possession of the Scibilia E-mail to Capianco. The investigator read the file which included the attorney's correspondence with Hartford Insurance, etc.

The investigator proceeded to locate and interview Lisa Tracey in Avon, MA. After speaking with Mr. Tracey in Mrs. Tracey's absence, the investigator returned and had a conversation with her that was lengthy and comprehensive and that confirmed that she was the former Human Resource Officer at the now bankrupt UROMED Corporation and that the content of the copy of the E-mail did reflect a conversation she had had with a member of Hartford. She also recalled the rationale behind Hartford's declaration that "the pre-existing conditions are waived." In addition, after we discussed aspects of Mr. Capianco's employment, such as him having worked from home, she actually recalled Mr. Capianco. While she did not recall the name of the person at Hartford Insurance who had spoken to her regarding Mr. Capianco's situation, she did recall having taken home some discs that contain files; she volunteered to look for them and examine them for Mr. Capianco's case. The investigator requested if it was agreeable with Mrs. Tracey if attorney Hellen contact her by telephone and that after a discussion if she would agree to reading and, if necessary, revising a memorandum produced by the attorney. She agreed without any hesitation.

Upon arrival at his office the investigator consulted with attorney Hellen regarding the Tracey interview and was requested to provide this memo.


EXHIBIT N
Tracey
1-18-08 AfC



**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

One Embarcadero Center, 16th Floor
San Francisco, California 94111-3628
Tel: 415.781.7900  Fax: 415.781.2635


www.sdma.com

April 28, 2004

**VIA FACSIMILE AND REGULAR MAIL**

Howard Bennett Hellen, Esq.
Law Offices of Howard Bennett Hellen
380 S. Melrose Drive, Suite 404
Vista, California 92081

Re:  <u>Gil Capianco v. The Hartford Life and Accident Insurance Company, et al.</u>
     U.S.D.C. – Southern District of California
     Case No. 03-CV-00562J AJB
     File No.: 2489-111653

Dear Mr. Hellen:

As we discussed in our telephone conversation today, I have been contacted by Ms. Lisa Tracy of Boston, Massachusetts. Ms. Tracy complained at length about the actions of your investigator, who has attempted at your apparent behest to cause her to execute an affidavit. Ms. Tracy asked me to inform you that she will not sign an affidavit in this matter, and she asked that your investigator cease harassing her. As relayed by Ms. Tracy, the investigator has apparently stopped by her house four times, he calls her constantly, and his messages have taken on a menacing tone.

We do not suggest that you have requested that your investigator employ such tactics. Ms. Tracy was under the impression that this is the first time that the investigator has worked for you, and so perhaps he is attempting to impress you with his overzealous tactics. However, please instruct your investigator to stop harassing Ms. Tracy, and to cease efforts to obtain an affidavit. We remind you that under the discretionary standard of review, such an affidavit is not admissible in this action for any purpose. If Ms. Tracy's testimony ever becomes admissible in this action, we should obtain that testimony through a deposition in Boston at a time and place convenient to Ms. Tracy.

Very truly yours,

Dennis G. Rolstad
Sedgwick, Detert, Moran & Arnold LLP
DGR/rcr

SF/1174982v1

EXHIBIT 0
Tracey
1-18-08   AR

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 FAX
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

April 29, 2004

Ms. Lisa Scibilia-Tracey
10 Lothrop Drive
Avon, MA 02322-1247

Re: **Capianco v. Hartford, et. al./ United States District Court, So. Dist. Cal.
Case No. 03-CV-00562- DMS (AJB)**

Dear Ms. Scibilia-Tracey:

Please find enclosed copies of the following documents, which I believe will speak for themselves:

1.   Letter dated April 28, 2004 from attorney Dennis Rolstad of Sedgwick, Detert (defense firm representing HARTFORD in this case)

2.   Reply letter from this office to Mr. Rolstad dated April 29, 2004 (with enclosure of letter from Mr. Reiser)

As you can see, I have instructed Mr. Reiser to refrain from further contact with you.

There is no need to respond to this letter if you do not wish to do so. If you are now represented in this matter by Mr. Rolstad's firm, you should not respond directly, as it would then be unethical for me to correspond with a represented party.

Sincerely,

Howard Bennett Hellen
HBH/sls
cc:   Client
      File

encls: 2, per above (with enclosures)

EXHIBIT P
Tracey
1-18-08 AR

# LAW OFFICES OF HOWARD BENNETT HELLEN

MELROSE LAW CENTER
380 SOUTH MELROSE DRIVE, SUITE 404
VISTA, CA 92081
(760) 433-1860
(760) 433-3101 FAX
HHELLEN@AOL.COM

MISSION VALLEY OFFICE:
3111 CAMINO DEL RIO NORTH
SUITE 400
SAN DIEGO, CA 92108
(619) 284-9375

RANCHO BERNARDO OFFICE:
11440 W. BERNARDO COURT
SUITE 300
SAN DIEGO, CA 92127
(858) 485-8830

April 29, 2004

Bruce D. Celebrezze, Esq.
Dennis G. Rolstad, Esq.
Teresa L. Hu, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One Embarcadero Center, 16th Floor
San Francisco, CA 94111-3628

VIA FACSIMILE TRANSMISSION TO (415) 781-2635 AND FIRST-CLASS MAIL

Re: *Capianco v. Long-Term Disability Plan of Sponsor UROMED Corp, HARTFORD LIFE & ACCIDENT INSURANCE CO., et. al.*
**United States District Court, So. Dist. Cal., Case No. 03-CV-00562 DMS (AJB)**

Dear Mr. Rolstad:

Thank you for your letter of April 28, concerning the Lisa Scibilia-Tracey situation. After reviewing it, and revisiting the situation myself and with our private investigator, I have confirmed my suspicions (based on my own recollection of events) that the information contained in your letter is grossly inaccurate. This letter shall serve to clarify this matter and "set the record straight".

First, Ms. Tracey does not reside in Boston, but rather in Avon, Massachusetts.

Secondly, the investigator, Mr. Stewart Reiser of Huron Investigations, a licensed private investigator in good standing, confirmed that he did not "harass" Ms. Tracey. In fact, I forwarded a copy of your letter to Mr. Reiser and he was shocked by its inaccuracies. It should be noted that Mr. Reiser was recommended by one of the leading and most well-respected law firms in the Boston area, and I have full faith and confidence that said firm would not have made such a recommendation had Mr. Reiser any history of engaging in the level of "harassment" you charge.

Mr. Reiser has written a letter to your attention which I enclose herewith. Among the salient points are the following:

1.      Mr. Reiser did not visit Ms. Tracey at her home four (4) times, but rather only twice, with a gap of 2-3 months in between visits. I asked him to go back to Ms.

continued....

Tracey's home since she stopped returning my calls, after she had agreed to sign the declaration at issue.

2. Mr. Reiser did not call Ms. Tracey "constantly" but rather only once that he has documented, on April 21, 2004. He thinks he may have called her on one or two other occasions, without any indication of protest from Ms. Tracey, who herself initiated a return call to Mr. Reiser as recently as April 26. This is in line with my recollection of events.

3. Ms. Tracey at no time whatsoever indicated to either Mr. Riser or me that we should not call or write to her or that we were in any way "harassing" her. In fact, I spoke to Ms. Tracey after Mr. Reiser's first visit, at her invitation, and we had a very cordial conversation.

Please rest assured that I have instructed Mr. Reiser to refrain from any further visits or calls or any contact whatsoever with Ms. Scibilia-Tracey, unless and until notified to the contrary (i.e. only in the event that Ms. Scibilia-Tracey should either have a change of heart or she attempts to avoid lawful service of process, should that occur). However, your letter causes my client and me grave concern, particularly in view of Ms. Scibilia-Tracey's apparent recent "180 degree turnaround" on her previous kind agreement to sign a reasonable, truthful, and fact-based declaration after careful review. What causes us equal concern is your writing a letter on Mr. Tracey's behalf to this firm, which raises the question: *Is Sedgwick, Detert now representing Ms. Tracey as its own client in this matter* ? If not, you have absolutely no legal standing to demand anything from this firm on her behalf. I would appreciate your prompt clarification of the relationship between your firm and Mr. Tracey.

In closing, with respect to your statement that Ms. Tracy's declaration would not be admissible "for any purpose" should the standard of review be abuse of discretion, I do not

necessarily agree with your interpretation. I do agree with you that this issue will be deferred until we see how Judge Sabraw rules on our Motion for Summary Judgment Re: Standard of Review.

Thank you for your considerate attention.

Very truly yours,

Howard Bennett Hellen
HBH/sls
cc:    Lisa Scibilia-Tracey (for informational purposes; no response required)
      Mr. Reiser
      Client
      File

encl. (Letter dated April 29, 2004 from Mr. Reiser)

## STEWART REISER
## HURON INVESTIGATIONS, INC.
P.O. Box 400709
N. Cambridge, MA 02140-0008
Tel. and Fax (617) 491-2669

April 29, 2004

Dennis G. Rolstad
Sedgwick, Detert. Moran & Arnold LLP

Re: The letter of April 28, 2004 to Howard Bennett Hellen, Esq. re Capianco v. Hartford.

Dear Mr. Rolstad.

In response to your April 28, 2004 letter to attorney Hellen, there are several very important inaccuracies in regard to the interaction between Ms Lisa Scibilia Tracey and myself.

In my capacity as investigator for attorney Hellen in this case I visited and spoke to Ms Tracey at her home in Avon, MA (not Boston) on two occasions. The first was on February 18th. 2004, when after I identified myself, by photo id as well as function, I was invited into her home by herself and her husband, Jayson Tracey. We had a very friendly, as well as lengthy, conversation in regard to Mr. Capianco. In fact she gave me permission to call her regarding the Capianco matter and she promised to communicate with Mr. Capianco's attorney, Mr. Hellen, after I gave her his name and telephone number. We did not speak again for approximately two months.

On April 16. 2004, I was requested telephonically by attorney Hellen to revisit Ms Tracey and inquire about the status of her decision to sign a Declaration provided for her by Mr. Hellen. I visited Ms Tracey on April 19th. Ms Tracey at this point stated that she had intended to discuss the Declaration received from Mr. Hellen with a former Human Resource colleague and had intended to contact this colleague for the previous several weeks but had not done so. She stated that she would call this former colleague, discuss and/or show him a copy of the Declaration and that we should talk within several days.

On April 21, 2004, I called the Tracey residence at approximately 5:30PM and was informed by Mr. Tracey that Lisa should be home by 6:30-7:00PM and that I should try her again at that time. I did and he stated that she still was "running late". I asked if it was all right to call in a couple of hours and he said "of course". I called at approximately 9:00PM. No one answered and I left a message on their telephone answering machine asking her to contact me at her convenience regarding her talk with her colleague concerning the Declaration. Ms Tracey called me on April 26, 2004 and left a message on my answering machine that stated that her former colleague had just returned from a business trip and had not responded to her yet. She stated that she would call him the next morning, April 27th. and get back to me with her thoughts regarding the Declaration. This call from Ms Tracey was the last time, and perhaps the third or fourth, that we had

spoken telephonically about the Capianco matter over a two month period, during which there were only two visits. At no time and in no manner, in person, or over the telephone, did she request that I stop communicating with her. In fact, the interaction ended with her calling me and promising to follow up quickly with the matter.

Very truly yours,

Stewart Reiser, Licensed Investigator.

**LAW OFFICES OF HOWARD BENNETT HELLEN**
**380 South Melrose Drive, Suite 404**
**Vista, CA 92081**
**(760)643-4115**
**(760)643-4116 fax**

## FACSIMILE COVER SHEET

DATE: 4-25-04    FAX NUMBER: (415) 741-2635

TO: Dennis Rowan Eq.
Seyfarth, Perry

RE: Califano v. Hartford

NUMBER OF PAGES ( 6 ) INCLUDING COVER SHEET (IF YOU DON'T
RECEIVE ANY OF THESE PAGES, PLEASE CALL THE ABOVE NUMBER.)

[   ] THIS WILL BE THE ONLY FORM OF DELIVERY OF THE
     TRANSMITTED DOCUMENT.

[ ✓ ] THE ORIGINAL OF THE TRANSMITTED DOCUMENT WILL BE SENT
     BY REGULAR MAIL.

NOTES: Please see attached.

THIS FACSIMILE TRANSMISSION CONSTITUTES WRITTEN CONFIRMATION AS
REQUIRED BY C.C.P. 1013 (e) THAT THE PARTIES TO THE ABOVE REFERENCED
CASE HAVE AGREED TO SERVICE VIA FACSIMILE THE LISTED DOCUMENTS.

THIS MESSAGE IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT
IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED,
CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE
EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE
INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT
THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE, AND WE WILL PAY ALL
POSTAGE COSTS. THANK YOU.

```
         TRANSMISSION VERIFICATION REPORT

                                    TIME : 04/29/2004 16:43
                                    NAME : HOWARD B HELLEN ATTY
                                    FAX  : 7606434116
                                    TEL  : 7606434115


         DATE,TIME            04/29 16:41
         FAX NO./NAME         914157812635
         DURATION             00:02:22
         PAGE(S)              06
         RESULT               OK
         MODE                 STANDARD
                              ECM
```

# GROUP
# BENEFIT
# PLAN

## UROMED CORPORATION





EXHIBIT Q

Tracey
1-18-08 OAR

219661(GLT/GL)1 Long Term Disability, Life, Supplemental Life, Accidental Death and
Dismemberment and Supplemental Dependent Life

Printed in U.S.A.                                                                      7-'00

# TABLE OF CONTENTS

### Group Long Term Disability Benefits

PAGE

SCHEDULE OF INSURANCE ........................................................................................................................ 3
   Must you contribute toward the cost of coverage? .................................................................................... 3
   Who is eligible for coverage? ..................................................................................................................... 3
   When will You become eligible? (Eligibility Waiting Period) ................................................................... 3
DEFINITIONS ........................................................................................................................................... 4
ELIGIBILITY AND ENROLLMENT ......................................................................................................... 7
   When does your coverage start? ................................................................................................................ 8
   When will coverage become effective if a disabling condition causes you to be absent from work on the date it
   is to start? .................................................................................................................................................. 8
   Can you change benefit options? ............................................................................................................... 9
   When will a requested change in benefit options take effect? ................................................................... 9
EXCLUSIONS ............................................................................................................................................ 9
   What Disabilities are not covered? ............................................................................................................ 9
PRE-EXISTING CONDITIONS LIMITATIONS ....................................................................................... 10
   Are there any other limitations on coverage? ............................................................................................ 10
TERMINATION ......................................................................................................................................... 11
   When does your coverage terminate? ......................................................................................................... 11
   Does your coverage continue if your employment terminates or you cease to be a member of an eligible class? .... 11
   Does your coverage continue if your employment terminates because you are Disabled? ......................... 11
BENEFITS .................................................................................................................................................. 12
   When do benefits become payable? ........................................................................................................... 12
   When will benefit payments terminate? ..................................................................................................... 12
   What happens if you return to work but become Disabled again? .............................................................. 13
CALCULATION OF MONTHLY BENEFIT ............................................................................................... 13
   What is Rehabilitation? ............................................................................................................................. 14
   Family Care Credit Benefit? ...................................................................................................................... 15
   Survivor Income Benefit? .......................................................................................................................... 15
   Workplace Modification Benefit ................................................................................................................ 16
GENERAL PROVISIONS .......................................................................................................................... 16

PS-M-90

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford, Connecticut
(Herein called Hartford Life)

---

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy
as of the Effective Date**
Issued by
**HARTFORD LIFE**
to
**The Policyholder**

---

This is to certify that Hartford Life has issued and delivered the Group Insurance Policy to The Policyholder.

The Group Insurance Policy insures the employees of the Policyholder who:
- are eligible for the insurance;
- become insured; and
- continue to be insured;

according to the terms of the Policy.

The terms of the Group Insurance Policy which affect an employee's insurance are contained in the following pages. This Certificate of Insurance and the following pages will become your Booklet-certificate. The Booklet-certificate is a part of the Group Insurance Policy.

This Booklet-certificate replaces any other which Hartford Life may have issued to the Policyholder to give to you under the Group Insurance Policy specified herein.

*Lynda Godkin*
**Lynda Godkin, Secretary**

*Lowndes A. Smith*
**Lowndes A. Smith, President**

Z-LTD(C001)

POL003

## SCHEDULE OF INSURANCE

Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office.

| | |
|---|---|
| Policyholder: | UROMED CORPORATION |
| Group Insurance Policy: | GLT-219661 |
| Plan Effective Date: | April 1, 2000 |

This plan of Disability Insurance provides you with loss of income protection if you become disabled from a covered accidental bodily injury, sickness or pregnancy.

**Must you contribute toward the cost of coverage?**
You must contribute toward the cost of coverage.

**Who is eligible for coverage?**

| | |
|---|---|
| Eligible Class(es): | All Active Full-time Employees who are U.S. citizens or U.S. residents |
| Full-time Employees: | 30 hours weekly |
| **Maximum Monthly Benefit:** | $6,000 |

The **Minimum Monthly Benefit** will be the greater of:
- $100; or
- 10% of the benefit based on Monthly Income Loss before the deduction of Other Income Benefits.

| | |
|---|---|
| **Benefit Percentage:** | 60% |
| **Annual Enrollment Period:** | March 1 - March 31 |

**When will You become eligible? (Eligibility Waiting Period)**
You are eligible on the later of either the Policy Effective Date or the date You enter an eligible class.

The Elimination Period is the period of time you must be Disabled before benefits become payable. It is the last to be satisfied of the following:
1. the first 3 consecutive month(s) of any one period of Disability; or
2. with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

### MAXIMUM DURATION OF BENEFITS TABLE

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 63 | To Normal Retirement Age or 48 months, if greater |
| Age 63 | 42 months |
| Age 64 | 36 months |
| Age 65 | 30 months |
| Age 66 | 27 months |
| Age 67 | 24 months |
| Age 68 | 21 months |
| Age 69 and over | 18 months |

**POL004**

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by your date of birth as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 |
| 1938 | 65 + 2 months |
| 1939 | 65 + 4 months |
| 1940 | 65 + 6 months |
| 1941 | 65 + 8 months |
| 1942 | 65 + 10 months |
| 1943 thru 1954 | 66 |
| 1955 | 66 + 2 months |
| 1956 | 66 + 4 months |
| 1957 | 66 + 6 months |
| 1958 | 66 + 8 months |
| 1959 | 66 + 10 months |
| 1960 or after | 67 |

The above table shows the maximum duration for which benefits may be paid. All other limitations of the plan will apply.

## DEFINITIONS

The terms listed will have these meanings.

**Actively at Work**
You will be considered to be actively at work with your Employer on a day which is one of your Employer's scheduled work days if you are performing, in the usual way, all of the regular duties of your job on a full time basis on that day. You will be deemed to be actively at work on a day which is not one of your Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

**Active Full-time Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. The employee must work the number of hours in the Employer's normal work week. This must be at least the number of hours indicated in the Schedule of Insurance.

**Any Occupation** means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

**Current Monthly Earnings** means the monthly earnings you receive from:
1. the Employer while Disabled;
2. other employment.

However, if the other employment is a job you held in addition to Active Full-time Employment with the Employer, then:
1. during the Elimination Period, and while eligible to receive benefits for being Disabled from Your Occupation;
2. any earnings from this other employment will be Current Monthly Earnings only to the extent that such earnings exceed the average monthly earnings you were receiving from this other job during the 6 month period immediately prior to becoming Disabled.

4

**Disability or Disabled** means that during the Elimination Period and for the next 24 months you are prevented by:
1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Disabled.

**Employer** means the Policyholder.

**Essential Duty** means a duty that:
1. is substantial, not incidental;
2. is fundamental or inherent to the occupation; and
3. can not be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

**Indexed Pre-disability Earnings** when used in this policy means your Pre-disability Earnings adjusted annually by adding the lesser of:
1. 10%; or
2. the percentage change in the Consumer Price Index (CPI-W).

The adjustment is made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, we may use another nationally published index that is comparable to the CPI-W.

For the purposes of this benefit, the percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31st, and the prior year's CPI-W as of July 31st, divided by the prior year's CPI-W.

**Monthly Benefit** means a monthly sum payable to you while you are Disabled, subject to the terms of the Group Insurance Policy.

**Monthly Income Loss** is the difference of your Pre-disability Earnings less your Current Monthly Earnings.

**Monthly Rate of Basic Earnings** means your regular monthly rate of pay from the Employer just prior to the date you become Disabled:
1. including contributions you make through a salary reduction agreement with the Employer to:
   a) an Internal Revenue Code (IRC) Section 401(k), 403(b) or 457 deferred compensation arrangement;
   b) an executive non qualified deferred compensation arrangement; or
   c) a salary reduction arrangement under an IRC Section 125 plan; and
2. not including bonuses, commissions, overtime pay or expense reimbursements for the same period as above.

**POL006**

**Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any:

1. temporary disability benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
2. governmental law or program that provides disability or unemployment benefits as a result of your job with the Employer;
3. plan or arrangement of coverage, whether insured or not, or as a result of employment by or association with the Employer or as a result of membership in or association with any group, association, union or other organization;
4. individual insurance policy where the premium is wholly or partially paid by the Employer;
5. mandatory "no-fault" automobile insurance plan;
6. disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act that you, your spouse and children are eligible to receive because of your Disability; or
7. disability benefit from the Veteran's Administration, or any other foreign or domestic governmental agency:
   a) that begins after you become Disabled; or
   b) if you were receiving the benefit before becoming Disabled, the amount of any increase in the benefit that is attributed to your Disability.

Other Income Benefits also mean any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:
1. disability benefit under the Employer's Retirement Plan;
2. permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges of such benefits;
3. portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;
4. retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
   a) you were receiving it prior to becoming Disabled; or
   b) you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.

   Other Income Benefits will not include the portion, if any, of such retirement benefit that was funded by your after-tax contributions; or
5. retirement benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act; the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act that you, your spouse and children receive because of your retirement, unless you were receiving them prior to becoming Disabled.

If you are paid Other Income Benefits in a lump sum or settlement, you must provide proof satisfactory to us of:
1. the amount attributed to loss of income; and
2. the period of time covered by the lump sum or settlement.

We will pro-rate the lump sum or settlement over this period of time. If you cannot or do not provide this information, we will assume the entire sum to be for loss of income, and the time period to be 24 months. We may make a retroactive allocation of any retroactive Other Income Benefit. A retroactive allocation may result in an overpayment of your claim. Please see the provision entitled "What happens if benefits are overpaid."

The amount of any increase in Other Income Benefits will not be included as Other Income Benefits if such increase:
1. takes effect after the date benefits become payable under this plan; and
2. is a general increase which applies to all persons who are entitled to such benefits.

**POL007**

**Physician** means a person who is:
1. a doctor of medicine, osteopathy, psychology or other healing art recognized by us;
2. licensed to practice in the state or jurisdiction where care is being given; and
3. practicing within the scope of that license.

**Pre-disability Earnings** means your Monthly Rate of Basic Earnings in effect on the day before you became Disabled.

**Prior Plan** means the long term disability insurance carried by the Employer on the day before the Plan Effective Date.

**Regular Care of a Physician** means you are attended by a Physician, who is not related to you:
1. with medical training and clinical experience suitable to treat your disabling condition; and
2. whose treatment is:
    a) consistent with the diagnosis of the disabling condition;
    b) according to guidelines established by medical, research and rehabilitative organizations; and
    c) administered as often as needed,

    to achieve the maximum medical improvement.

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for your retirement and which is not funded wholly by your contributions. It does not include:
1. a profit sharing plan;
2. thrift, savings or stock ownership plans;
3. a non-qualified deferred compensation plan; or
4. an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan or 403(b) plan.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1. impairments in social and/or occupational functioning;
2. debilitating physical condition;
3. inability to abstain from or reduce consumption of the substance; or
4. the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**We, us** or **our** means the Hartford Life and Accident Insurance Company.

**You, your, Insured Person** means the Insured Person to whom this Booklet-certificate is issued.

**Your Occupation**, if used in this Booklet-certificate, means your occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location.

## ELIGIBILITY AND ENROLLMENT

**Who are Eligible Persons?**
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**When will you become eligible?**
You will become eligible for coverage on either:
1. the Plan Effective Date, if you have completed the Eligibility Waiting Period; or if not
2. the date on which you complete the Eligibility Waiting Period.

See the Schedule of Insurance for the Eligibility Waiting Period.

**How do you enroll?**
To enroll you must:
1. complete and sign a group insurance enrollment form which is satisfactory to us; and
2. deliver it to the Employer.

If you do not enroll within 31 days after becoming eligible, the following limitations will apply to a later enrollment:
1. you must submit Evidence of Insurability satisfactory to us; and
2. you may not enroll until:
   a) an Annual Enrollment Period; or
   b) you have a Change in Family Status.

Any such enrollment must be made during the Annual Enrollment Period or within 31 days of the Change in Family Status.

The dates of the Annual Enrollment Period are shown in the Schedule of Insurance.

**What constitutes a Change in Family Status?**
A Change in Family Status means:
1. your marriage, or the birth or adoption of a child, or becoming the legal guardian of a child;
2. the death of or divorce from your spouse; or
3. the death of or emancipation of a child.

**What is Evidence of Insurability?**
If you are required to submit Evidence of Insurability, you must:
1. complete and sign a health and medical history form provided by us;
2. submit to a medical examination, if requested;
3. provide any additional information and attending physicians' statements that we may require; and
4. furnish all such evidence at your own expense.

We will then determine if you are insurable under the plan.

**WHEN COVERAGE STARTS**

**When does your coverage start?**
If you must contribute towards the plan's cost, your coverage will start on the date determined below:
1. the date you become eligible, if you enroll or have enrolled by then;
2. the date on which you enroll, if you do so within 31 days after the date you are eligible;
3. the date we approve your Evidence of Insurability, if you are required to submit Evidence of Insurability; or
4. the first day of the month following the Annual Enrollment Period if you enroll during an Annual Enrollment Period.

**DEFERRED EFFECTIVE DATE**

**When will coverage become effective if a disabling condition causes you to be absent from work on the date it is to start?**
If you are absent from work due to:
1. accidental bodily injury;
2. sickness;
3. pregnancy;
4. Mental Illness; or
5. Substance Abuse,

on the date your insurance or increase in coverage would otherwise have become effective, your effective date will be deferred. Your insurance, or increase in coverage will not become effective until you are Actively at Work for one full day.

**POL009**

# CHANGES IN COVERAGE

**Can you change benefit options?**
You may change to an option providing increased or decreased benefits only:
1. during an Annual Enrollment Period; or
2. within 31 days of a Change in Family Status.

You may decrease coverage, or increase coverage to a higher option. An increase in coverage will be subject to your submission of Evidence of Insurability that meets our approval.

**When will a requested change in benefit options take effect?**
If you enroll for a change in benefit option during an Annual Enrollment Period, the change will take effect on the later of:
1. the first day of the month following the Annual Enrollment Period; or
2. the date we approve your Evidence of Insurability if you are required to submit Evidence of Insurability.

If you enroll for a change in benefit option within 31 days following a Change in Family Status, the change will take effect on the later of:
1. the date you enroll for the change; or
2. the date we approve your Evidence of Insurability if you are required to submit Evidence of Insurability.

Any such increase in coverage is subject to the following limitations:
1. the Deferred Effective Date Provision; and
2. Pre-existing Conditions Limitations.

**Do coverage amounts change if there is a change in your class or your rate of pay?**
Your coverage may increase or decrease on the date there is a change in your class or Monthly Rate of Basic Earnings. However, no increase in coverage will be effective unless on that date you:
1. are an Active Full-time Employee; and
2. are not absent from work due to being Disabled.

If you were so absent from work, the effective date of such increase will be deferred until you are Actively at Work for one full day.

No change in your Rate of Basic Earnings will become effective until the date we receive notice of the change.

**What happens if the Employer changes the plan?**
Any increase or decrease in coverage because of a change in the Schedule of Insurance will become effective on the date of the change, subject to the following limitations on an increase:
1. the Deferred Effective Date provision; and
2. Pre-existing Conditions Limitations.

# EXCLUSIONS

**What Disabilities are not covered?**
The plan does not cover, and no benefit shall be paid for any Disability:
1. unless you are under the Regular Care of a Physician;
2. that is caused or contributed to by war or act of war (declared or not);
3. caused by your commission of or attempt to commit a felony, or to which a contributing cause was your being engaged in an illegal occupation; or
4. caused or contributed to by an intentionally self-inflicted injury.

**POL010**

If you are receiving or are eligible for benefits for a Disability under a prior disability plan that:
1. was sponsored by the Employer; and
2. was terminated before the Effective Date of this plan,

no benefits will be payable for the Disability under this plan.

## PRE-EXISTING CONDITIONS LIMITATIONS

**Are there any other limitations on coverage?**
No benefit will be payable under the plan for any Disability that is due to, contributed to by, or results from a Pre-existing Condition, unless such Disability begins:
1. after the last day of 90 consecutive day(s) while insured during which you receive no medical care for the Pre-existing Condition; or
2. after the last day of 365 consecutive day(s) during which you have been continuously insured under this plan.

**Pre-existing Condition** means:
1. any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
2. any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;

for which you received Medical Care during the 90 day period that ends the day before:
1. your effective date of coverage; or
2. the effective date of a Change in Coverage.

**Medical Care** is received when:
1. a Physician is consulted or medical advice is given; or
2. treatment is recommended, prescribed by, or received from a Physician.

Treatment includes but is not limited to:
1. medical examinations, tests, attendance or observation; and
2. use of drugs, medicines, medical services, supplies or equipment.

## CONTINUITY FROM A PRIOR PLAN

**Is there continuity of coverage from a Prior Plan?**
If you were:
1. insured under the Prior Plan;
2. Actively at Work; and
3. not eligible to receive benefits under the Prior Plan,

on the day before the Plan Effective Date, the Deferred Effective Date provision will not apply to you.

If you become insured under the Group Insurance Policy on the Plan Effective Date and were covered under the Prior Plan on the day before the Plan Effective Date, the Pre-existing Conditions Limitation will cease to apply on the first to occur of the following dates:
1. the Policy Effective Date, if your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Plan; or
2. if your coverage was limited by a pre-existing condition restriction under the Prior Plan, the date the restriction would have ceased to apply had the Prior Plan remained in force.

**POL011**

The amount of the Monthly Benefit payable for a Pre-existing Condition in accordance with the previous paragraph will be the lesser of:
1. the Monthly Benefit which was paid by the Prior Plan; or
2. the Monthly Benefit provided by this plan.

No payment shall be made after the earlier to occur of:
1. the date payments would have ceased under the Prior Plan; or
2. the date payments cease under this plan.

If you received Monthly Benefits for Disability under the Prior Plan, and:
1. you returned to work as an Active Full-time Employee before the Effective Date of this plan;
2. within 6 months of the return to work, you have a recurrence of the same Disability under this plan; and
3. there are no benefits available for the recurrence under the Prior Plan,

the Elimination Period of this plan, which would otherwise apply to the recurrence, will be waived if the recurrence would have been covered without any further Elimination Period under the Prior Plan had it remained in force.

## TERMINATION

**When does your coverage terminate?**
You will cease to be covered on the earliest to occur of the following dates:
1. the date the Group Insurance Policy terminates;
2. the date the Group Insurance Policy no longer insures your class;
3. the date premium payment is due but not paid by the Employer;
4. the last day of the period for which you make any required premium contribution, if you fail to make any further required contribution;
5. the date you cease to be an Active Full-time Employee in an eligible class including:
   a) temporary layoff;
   b) leave of absence, including but not limited to leave for military service; or
   c) a general work stoppage (including a strike or lockout); or
6. the date your Employer ceases to be a Participant Employer, if applicable.

**Does your coverage continue if your employment terminates or you cease to be a member of an eligible class?**
If your insurance terminates because your employment terminates or you cease to be a member of an eligible class, your insurance will automatically be continued until the end of a 31 day period from the date your insurance terminates or the date you become eligible for similar benefits under another group plan, whichever occurs first.

If your insurance terminates because your employment is terminated as a result of a plant closing or covered partial closing, your insurance may be continued. You must elect in writing to continue insurance and pay the required premium for continued coverage. Coverage will cease on the earliest to occur of the following dates:
1. ninety days from the date you were no longer eligible for coverage as an Active Full-time Employee;
2. the date you become eligible for similar benefits under another group plan;
3. the last day of the period for which required premium is made;
4. the date the Group Insurance Policy terminates; or
5. the date your Employer ceases to be a Participant Employer, if applicable.

Continued coverage is subject to all other applicable terms and conditions of the policy.

**Does your coverage continue if your employment terminates because you are Disabled?**
If you are Disabled and you cease to be an Active Full-time Employee, your insurance will be continued:
1. during the Elimination Period while you remain Disabled by the same Disability; and
2. after the Elimination Period for as long as you are entitled to benefits under the Policy.

**Must premiums be paid during a Disability?**
No premium will be due for you:
1. after the Elimination Period; and
2. for as long as benefits are payable.

**POL012**

**Do benefits continue if the plan terminates?**

If you are entitled to benefits while Disabled and the Group Insurance Policy terminates, benefits:

1. will continue as long as you remain Disabled by the same Disability; but
2. will not be provided beyond the date we would have ceased to pay benefits had the insurance remained in force.

Termination for any reason of the Group Insurance Policy will have no effect on our liability under this provision.

## BENEFITS

**When do benefits become payable?**

You will be paid a monthly benefit if:

1. you become Disabled while insured under this plan;
2. you are Disabled throughout the Elimination Period;
3. you remain Disabled beyond the Elimination Period;
4. you are, and have been during the Elimination Period, under the Regular Care of a Physician; and
5. you submit Proof of Loss satisfactory to us.

Benefits accrue as of the first day after the Elimination Period and are paid monthly.

**When will benefit payments terminate?**

We will terminate benefit payment on the first to occur of:

1. the date you are no longer Disabled as defined;
2. the date you fail to furnish Proof of Loss, when requested by us;
3. the date you are no longer under the Regular Care of a Physician, or refuse our request that you submit to an examination by a Physician;
4. the date you die;
5. the date your Current Monthly Earnings exceed:
   a) 80% of your Indexed Pre-disability Earnings if you are receiving benefits for being Disabled from Your Occupation;
   b) an amount that is equal to the product of your Indexed Pre-disability Earnings and the Benefit Percentage if you are receiving benefits for being Disabled from Any Occupation;
6. the date determined from the Maximum Duration of Benefits Table shown in the Schedule of Insurance;
7. the date no further benefits are payable under any provision in this plan that limits benefit duration; or
8. the date you refuse to participate in a Rehabilitation program or, refuse to cooperate with or try:
   a) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential Duties of Your Occupation;
   b) adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the Essential Duties of Your Occupation;
   c) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential Duties of Any Occupation, if you were receiving benefits for being disabled from Any Occupation; or
   d) adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the Essential Duties of Any Occupation, if you were receiving benefits for being disabled from Any Occupation,

   provided a qualified Physician agrees that such modifications, Rehabilitation program or adaptive equipment accommodate your medical limitation; or
9. the date you refuse to receive recommended treatment that is generally acknowledged by physicians to cure, correct or limit the disabling condition.

**POL013**

## MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS

**Are benefits limited for Mental Illness or Substance Abuse?**
If you are Disabled because of:
1. Mental Illness that results from any cause;
2. any condition that may result from Mental Illness;
3. alcoholism; or
4. the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance,

then, subject to all other Policy provisions, benefits will be payable:
1. only for so long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
2. when you are not so confined, a total of 24 months for all such Disabilities during your lifetime.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage.

## RECURRENT DISABILITY

**What happens if you return to work but become Disabled again?**
Attempts to return to work as an Active Full-time Employee during the Elimination Period will not interrupt the Elimination Period, subject to the following limitations:
1. for an Elimination Period of 180 or more days, up to 30 such return-days are allowed;
2. for an Elimination Period of less than 180 days, up to 5 such return-days are allowed for each 30 days of Elimination Period.

Any day you were Actively at Work will not count towards the Elimination Period.

After the Elimination Period, when a return to work as an Active Full-time Employee is followed by a recurrent Disability, and such Disability is:
1. due to the same cause; or
2. due to a related cause; and
3. within 6 month(s) of the return to work,

the Period of Disability prior to your return to work and the recurrent Disability will be considered one Period of Disability, provided the Group Insurance Policy remains in force.

If you return to work as an Active Full-time Employee for 6 month(s) or more, any recurrence of a Disability will be treated as a new Disability. A new Disability is subject to a new Elimination Period and a new Maximum Duration of Benefits. The Elimination Period and Maximum Duration of Benefits Table are in the Schedule of Insurance.

The term "Period of Disability" as used in this provision means a continuous length of time during which you are Disabled under this plan.

## CALCULATION OF MONTHLY BENEFIT

**How are Disability benefits calculated?**

**Return to Work Incentive**
If you remain Disabled after the Elimination Period, but work while you are Disabled, we will determine your Monthly Benefit for a period of up to 12 consecutive months as follows:
1. multiply your Pre-Disability Earnings by the Benefit Percentage;
2. compare the result with the Maximum Benefit; and
3. from the lesser amount, deduct Other Income Benefits.

**POL014**

Current Monthly Earnings will not be used to reduce your Monthly Benefit. However, if the sum of your Monthly Benefit and your Current Monthly Earnings exceeds 100% of your Pre-disability Earnings, we will reduce your Monthly Benefit by the amount of excess.

The 12 consecutive month period will start on the last to occur of:
1. the day you first start such work; or
2. the end of the Elimination Period.

If you are Disabled and not receiving benefits under the Return to Work Incentive, we will calculate your Monthly Benefit as follows:
1. multiply your Monthly Income Loss by the Benefit Percentage;
2. compare the result with the Maximum Benefit; and
3. from the lesser amount, deduct Other Income Benefits.

The result is your Monthly Benefit.

**What happens if the sum of the Monthly Benefit, Current Monthly Earnings and Other Income Benefits exceeds 100% of Pre-disability Earnings?**
We will reduce your Monthly Benefit by the amount of the excess.

**Minimum Monthly Benefit**
Your Monthly Benefit will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

**How is the benefit calculated for a period of less than a month?**
If a Monthly Benefit is payable for less than a month, we will pay 1/30 of the Monthly Benefit for each day you were Disabled.

Benefit Percentages and Maximum Benefits are shown in the Schedule of Insurance.

## REHABILITATION

**What is Rehabilitation?**
Rehabilitation is a process of working together to plan, adapt, and put into use options and services to meet your return to work needs.

A Rehabilitation program may include, when we consider it to be appropriate, any necessary and feasible:
1. vocational testing;
2. vocational training;
3. alternative treatment plans such as:
    a) support groups;
    b) physical therapy;
    c) occupational therapy; and
    d) speech therapy;
4. work-place modification to the extent not otherwise provided; and
5. job placement,

and similar services.

POL015

# FAMILY CARE CREDIT BENEFIT

**What if you must incur expenses for Family Care Services in order to participate in a Rehabilitative program?**
If you are working as part of a program of Rehabilitative Employment, we will, for the purpose of calculating your benefit, deduct the cost of Family Care from earnings received from a Rehabilitative program, subject to the following limitations:

1. Family Care means the care or supervision of:
   a) your children under age 13; or
   b) a member of your household who is mentally or physically handicapped and dependent upon you for support and maintenance;
2. the maximum monthly deduction allowed for each qualifying child or family member is:
   a) $350 during the first 12 months of Rehabilitative Employment; and
   b) $175 thereafter,
   c) but in no event may the deduction exceed the amount of your monthly earnings;
3. Family Care Credits may not exceed a total of $2,500 during a calendar year;
4. the deduction will be reduced proportionally for periods of less than a month;
5. the charges for Family Care must be documented by a receipt from the caregiver;
6. the credit will cease on the first to occur of the following:
   a) you are no longer in a Rehabilitative program; or
   b) Family Care Credits for 24 months have been deducted during your Disability; and
7. no Family Care provided by an immediate relative of the family member receiving the care will be eligible as a deduction under this provision. An immediate relative is a spouse, sibling, parent, step-parent, grandparent, aunt, uncle, niece, nephew, son, daughter or grandchild.

Your Current Monthly Earnings after the deduction of your Family Care Credit will be used to determine your Monthly Income Loss. In no event will you be eligible to receive a Monthly Benefit under the plan if your Current Monthly Earnings before the deduction of the Family Care Credit exceed 80% of your Indexed Pre-disability Earnings.

# SURVIVOR INCOME BENEFIT

**Will your survivors receive a benefit if you should die while receiving Disability Benefits?**
If you die while receiving benefits under this plan, a Survivor Benefit will be payable to:
1. your surviving Spouse;
2. your surviving Child(ren), in equal shares, if there is no surviving Spouse; or
3. your estate, if there is no surviving Spouse or Child.

If a minor Child is entitled to benefits, we may, at our option, make benefit payments to the person caring for and supporting the Child until a legal guardian is appointed.

The Benefit is one payment of an amount that is 3 times the lesser of:
1. your Monthly Income Loss multiplied by the Benefit Percentage; or
2. the Maximum Monthly Benefit shown in the Schedule of Insurance.

The following terms apply to this Benefit:
1. "Spouse" means your wife or husband who:
   a) is mentally competent; and
   b) was not legally separated from you at the time of your death; and
2. "Child" means your son or daughter under age 23 who is dependent on you for financial support.

**POL016**

# WORKPLACE MODIFICATION BENEFIT

**Will our Rehabilitation program provide for modifications to the workplace to accommodate a Disabled employee's return to work?**

We will reimburse your Employer for the expense of reasonable modifications to your workplace to accommodate your Disability and enable you to return to work as an Active Full-time Employee. To qualify for this benefit:
1. your Disability must be covered by this plan;
2. the Employer must agree to make modifications to the workplace in order to reasonably accommodate your return to work and the performance of the essential duties of your job; and
3. any proposed modifications must be approved in writing by us.

Benefits paid for such workplace modification shall not exceed the amount equal to your Pre-disability Earnings multiplied by the Benefit Percentage.

We have the right, at our expense, to have you examined or evaluated by:
1. a physician or other health care professional; or
2. a vocational expert or rehabilitation specialist,

of our choice so that we may evaluate the appropriateness of any proposed modification.

The Employer's costs for approved modifications will be reimbursed after:
1. the proposed modifications made on your behalf are complete;
2. we have been provided written proof of the expenses incurred to provide such modification; and
3. you have returned to work as an Active Full-time Employee.

This Workplace Modification benefit will not be payable if:
1. the Employer does not incur any cost in making the modification;
2. we have not given written approval of the modification prior to expenses being incurred; or
3. you become self-employed, or return to work for another employer.

**Workplace Modification** means change in your work environment, or in the way a job is performed, to allow you to perform, while Disabled, the Essential Duties of your job. Payment of this benefit will not reduce or deny any benefit you are eligible to receive under the terms of this plan.

## GENERAL PROVISIONS

**What happens if facts are misstated?**

If material facts about you were not stated accurately:
1. your premium may be adjusted; and
2. the true facts will be used to determine if, and for what amount, coverage should have been in force.

No statement made by you relating to your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during your lifetime. In order to be used, the statement must be in writing and signed by you.

**When should we be notified of a claim?**

You must give us written notice of a claim within 30 days after Disability starts. If notice cannot be given within that time, it must be given as soon as possible. Such notice must include your name, your address and the Group Insurance Policy number.

**Are special forms required to file a claim?**

When we receive a notice of claim, you will be sent forms for providing us with Proof of Loss. We will send these forms within 15 days after receiving a notice of claim. If we do not send the forms within 15 days, you may submit any other written proof which fully describes the nature and extent of your claim.

**POL017**

## What is Proof of Loss?

Proof of Loss may include but is not limited to the following:

1. documentation of:
   a) the date your Disability began;
   b) the cause of your Disability;
   c) the prognosis of your Disability;
   d) your Earnings or income, including but not limited to copies of your filed and signed federal and state tax returns; and
   e) evidence that you are under the Regular Care of a Physician;
2. any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;
3. the names and addresses of all:
   a) Physicians and practitioners of healing arts you have seen or consulted;
   b) hospitals or other medical facilities in which you have been seen or treated; and
   c) pharmacies which have filled your prescriptions within the past three years;
4. your signed authorization for us to obtain and release:
   a) medical, employment and financial information; and
   b) any other information we may reasonably require;
5. your signed statement identifying all Other Income Benefits; and
6. proof that you and your dependents have applied for all Other Income Benefits which are available. You will not be required to claim any retirement benefits which you may only get on a reduced basis.

All proof submitted must be satisfactory to us.

## When must Proof of Loss be given?

Written Proof of Loss must be sent to us within 90 days after the start of the period for which we owe payment. If proof is not given by the time it is due, it will not affect the claim if:

1. it was not possible to give proof within the required time; and
2. proof is given as soon as possible; but
3. not later than 1 year after it is due, unless you are not legally competent.

We may request Proof of Loss throughout your Disability. In such cases, we must receive the proof within 30 days of the request.

## When must one apply for Social Security Benefits?

You will be required to apply for Social Security disability benefits when the duration of your Disability meets the minimum duration required to apply for such benefits. If the Social Security Administration denies your eligibility for benefits, you will be required:

1. to follow the process established by the Social Security Administration to reconsider the denial; and
2. if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

## What additional Proof of Loss are we entitled to?

We may have you examined to determine if you are Disabled. Any such examination will be:

1. at our expense; and
2. as reasonably required by us.

## Who gets the benefit payments?

All payments are payable to you. Any payments owed at your death may be paid to your estate. If any payment is owed to your estate, a person who is a minor or a person who is not legally competent, then we may pay up to $1,000 to any of your relatives who is entitled to it in our opinion. Any such payment shall fulfill our responsibility for the amount paid.

## When are payment checks issued?

When we determine that you are Disabled and eligible to receive benefits, we will pay accrued benefits at the end of each month that you are Disabled. We may, at our option, make an advance benefit payment based on our estimated duration of your Disability. If any payment is due after a claim is terminated, it will be paid as soon as satisfactory Proof of Loss is received.

**POL018**

**What notification will you receive if your claim is denied?**
If a claim for benefits is wholly or partly denied, you will be furnished with written notification of the decision. This written decision will:
1. give the specific reason(s) for the denial;
2. make specific reference to the Policy provisions on which the denial is based;
3. provide a description of any additional information necessary to prepare a claim and an explanation of why it is necessary; and
4. provide an explanation of the review procedure.

**What recourse do you have if your claim is denied?**
On any denied claim, you or your representative may appeal to us for a full and fair review. You may:
1. request a review upon written application within 60 days of the claim denial;
2. review pertinent documents; and
3. submit issues and documents in writing.

We will make a decision no more than 60 days after the receipt of the request, except in special circumstances (such as the need to hold a hearing), but in no case more than 120 days after the request for review is received. The written decision will include specific references to the Policy provisions on which the decision is based.

**When can legal action be started?**
Legal action cannot be taken against us:
1. sooner than 60 days after due Proof of Loss has been furnished; or
2. three years after the time written Proof of Loss is required to be furnished according to the terms of the Policy (five years in Kansas; six years in South Carolina).

**What happens if benefits are overpaid?**
An overpayment occurs when it is determined that the total amount we have paid in benefits is more than the amount that was due to you under the plan. This includes, but is not limited to, overpayments resulting from:
1. retroactive awards of Other Income Benefits;
2. failure to report, or late notification to us of Other Income Benefits or earned income;
3. misstatement; or
4. an error we may make.

We have the right to recover from you any amount that is an overpayment of benefits under this plan. You must refund to us the overpaid amount. We may also, without forfeiting our right to collect an overpayment through any means legally available to us, recover all or any portion of an overpayment by reducing or withholding future benefit payments, including the Minimum Monthly Benefit.

**What are our subrogation rights?**
If an Insured Person:
1. suffers a Disability because of the act or omission of a third party;
2. becomes entitled to and is paid benefits under the Group Insurance Policy in compensation for lost wages; and
3. does not initiate legal action for the recovery of such benefits from the third party in a reasonable period of time,

then we will be subrogated to any rights the Insured Person may have against the third party and may, at our option, bring legal action to recover any payments made by it in connection with the Disability.

**How do we deal with fraud?**
Insurance Fraud occurs when you and/or your Employer, with the intent to injure, defraud or deceive us, provides us with false information or files a claim for benefits that contains any false, incomplete or misleading information. It is a crime if you and/or your Employer commit Insurance Fraud. We will use all means available to us to detect, investigate, deter and prosecute those who commit Insurance Fraud. We will pursue all available legal remedies if you and/or your Employer perpetrates Insurance Fraud.

**POL019**

**Who interprets policy terms and conditions?**
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

# TABLE OF CONTENTS

## Group Life Insurance Benefits

PAGE

CERTIFICATE OF INSURANCE .................................................................................................................21
SCHEDULE OF INSURANCE .....................................................................................................................22
  Who is eligible for coverage? ..................................................................................................................22
  When will You become eligible? (Eligibility Waiting Period)...................................................................22
  When will You become eligible for Dependent Coverage?......................................................................22
  What is the Guaranteed Issue Amount?....................................................................................................22
  What is Evidence of Good Health?............................................................................................................22
  When will Evidence of Good Health be required? ...................................................................................22
  What Life benefits are available to You? ..................................................................................................23
  What AD&D Benefits are available to You?..............................................................................................24
  What reductions in Your coverage will occur due to Your age? ..............................................................24
  What benefits are available to Your Dependents? ...................................................................................24
  Must You contribute toward the cost of coverage? ................................................................................25
  What is the Deferred Effective Date provision for employees?...............................................................26
  When does coverage for Your Dependent(s) start? .................................................................................26
  What is the Deferred Effective Date provision for Dependents? ............................................................27
  When are changes effective? ...................................................................................................................27
BENEFITS.....................................................................................................................................................27
  Life Insurance Benefit ..............................................................................................................................27
  Accelerated Death Benefit ........................................................................................................................28
  Accidental Death and Dismemberment (AD&D) Benefit .........................................................................29
TERMINATION..............................................................................................................................................31
  When does Your coverage terminate? .....................................................................................................31
  Under what conditions can Your insurance be continued under the continuation provisions?................31
  When does Dependent Coverage terminate? ..........................................................................................33
  Under what conditions can Dependent child insurance be continued? ...................................................33
PORTABILITY ...............................................................................................................................................34
CONVERSION PRIVILEGE ..........................................................................................................................35
GENERAL PROVISIONS ..............................................................................................................................35
DEFINITIONS................................................................................................................................................37

POL021

## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
Hartford, Connecticut
(Herein called Hartford Life)

---

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy**
As of the
**Effective Date**
Issued by
**HARTFORD LIFE**
to
**The Policyholder**

---

This is to certify that We have issued and delivered the Group Insurance Policy (Policy) to the Policyholder. The Policy insures the Policyholder's employees who:

- are eligible for the insurance;
- become insured; and
- continue to be insured,

according to the terms of the Policy.

The terms of the Policy which affect an employee's insurance are summarized in the following pages.

This Certificate of Insurance, and the following pages, will become Your Booklet-certificate. The Booklet-certificate is a part of the Policy. This Booklet-certificate replaces any other which We may have issued to the Policyholder to give to You under the Policy specified herein.

Lynda Godkin, *Secretary*

Lowndes A. Smith, *President*

**Z-TERM(C01)**
12-'96

21

Some of the terms used within this Booklet-certificate are capitalized and have special meanings. Please refer to the definitions at the end of this Booklet-certificate when reading about Your benefits.

## SCHEDULE OF INSURANCE

Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office.

| | |
|---|---|
| The Policyholder: | UROMED CORPORATION |
| The Policy Number: | GL-219661 |
| Policy Effective Date: | April 1, 2000 |
| Anniversary Date: | April 1 of each year, beginning in 2001. |

**Who is eligible for coverage?**
Eligible Class(es):                              All Active Full-time Employees who are U.S. citizens or U.S. residents

All persons who are insured for employee coverage will be eligible for coverage for Dependents.

**When will You become eligible? (Eligibility Waiting Period)**
You are eligible on the later of either the Policy Effective Date or the date You enter an eligible class.

The waiting period will be reduced by the period of time You were an Active Full-time Employee with the Employer under the Prior Plan.

**When will You become eligible for Dependent Coverage?**
You will become eligible for Dependent coverage on the later of:
1.  the date You become eligible for employee coverage; or
2.  the date You acquire Your first Dependent.

**What is the Guaranteed Issue Amount?**
This is the Amount of Insurance for which We do not require Evidence of Good Health. The Guaranteed Issue Amount is shown in the Schedule of Insurance.

**What is Evidence of Good Health?**
Evidence of Good Health is information about a person's health from which We can determine if coverage or increases in coverage will be effective. Information may include questionnaires, physical exams, or written documentation as required by Us.

Inquiries as to the status of Your submission of Evidence of Good Health should be addressed to Your Employer and/or Benefit Administrator. Your Employer and/or Benefit Administrator will notify You of approvals. We will notify You, in writing, of any disapprovals.

**When will Evidence of Good Health be required?**
Evidence of Good Health is required if:
1.  You enroll for coverage for Yourself or Your Dependent more than 31 days after the date You are first eligible to do so;
2.  You elect no coverage for Yourself or Your Dependent when eligible to do so and later opt for coverage.

If Evidence of Good Health is not approved in the situation(s) described above, no coverage, including the Guaranteed Issue Amount, will become effective. Evidence of Good Health must be provided at Your own expense.

**POL023**

Evidence of Good Health is also required if the Amount of Insurance You request exceeds the Guaranteed Issue Amount for each coverage. If Evidence of Good Health is not approved in this situation, You and Your Dependents are eligible for the amount for which You enrolled, up to the Guaranteed Issue Amount.

Evidence of Good Health is also required if You elect to increase coverage.

Additionally, once approved, Evidence of Good Health will be required on the first to occur of the following:
1. Your Amount of Life Insurance is increasing to an amount which is greater than $100,000 higher than when last approved; or
2. three years has passed since last approved.

This will apply each time Evidence of Good Health is approved.

**Are there exceptions to the Evidence of Good Health requirement for late enrolling Dependents?**
This Evidence of Good Health requirement will be waived for Your Dependent spouse and/or Dependent children, if:
1. You do not elect coverage for Your spouse when first eligible to do so, but, within 31 days following the date You acquire Your first child, You elect spouse coverage; or
2. Your spouse and children were previously covered for life benefits provided by Your spouse's employer group plan; and
   a) Your spouse and children have ceased to be covered under the employer's group plan due to Your spouse's loss of employment or cancellation of that group plan;
   b) Your spouse and children provide Us with proof of prior coverage, including the date of termination, when applying for Dependent Coverage; and
   c) coverage with Us is requested within 31 days of Your spouse's loss of coverage.

Dependents who qualify for this waiver will be subject to all other conditions, restrictions and limitations of the Policy.

## AMOUNT OF LIFE INSURANCE
### Employee Only

**What Life benefits are available to You?**

**Basic Amount of Life Insurance:**
a) a Guaranteed Issue Amount equal to 1 times Your annual rate of basic Earnings, subject to a maximum of $180,000 without Evidence of Good Health; or
b) a maximum amount equal to 1 times Your annual rate of basic Earnings, subject to a maximum of $300,000 with Evidence of Good Health,

rounded to the next higher multiple of $1,000, if not already such a multiple.

In no event however will Your Basic Amount of Life Insurance be less than $10,000.

**Supplemental Amount of Life Insurance:**
a) a Guaranteed Issue Amount equal to an amount You elect in increments of $10,000, subject to a maximum of $50,000 without Evidence of Good Health; or
b) a maximum amount equal to an amount You elect in increments of $10,000, subject to a maximum of $300,000 with Evidence of Good Health.

In no event however will Your Supplemental Amount of Life Insurance be less than $10,000.

The Amount You elect is indicated on Your group enrollment form.

POL024

Your Amount of Life Insurance will be reduced by any life benefit:
1.  paid to You under an accelerated death benefit in the Prior Plan; and
2.  in force for You under any disability extension provision of the Prior Plan.

**If You convert, does it affect the Amount of Life Insurance benefit payable?**
The Amount of Life Insurance under the Policy will be reduced by the amount of the individual life insurance issued in accordance with the Conversion Privilege for reasons other than reductions in coverage.

### ACCIDENTAL DEATH, DISMEMBERMENT
### AND LOSS OF SIGHT BENEFIT (AD&D)
### Employee Only

**What AD&D Benefits are available to You?**

**Basic Principal Sum:**
An amount which equals the Basic Amount of Life Insurance in force for You.

Although Evidence of Good Health is not required for AD&D benefits, the Principal Sum will not exceed the Amount of Life Insurance for which You are insured.

### Reduced Amounts of Insurance

**What reductions in Your coverage will occur due to Your age?**
Your Amount of Life Insurance and Principal Sum will decrease on the Anniversary Date which occurs on or next follows the date You attain any of the ages specified in the following table. The Amount of Life Insurance and Principal Sum in force immediately prior to that Anniversary Date will be reduced by the percentage indicated in the following table.

Additionally, if:
1.  You become insured under the Policy; or
2.  Your coverage increases,

on or after the date You attain age 70, We reduce the amount of coverage for which You would otherwise be eligible in the same manner.

| Age When Reduction Occurs | 70 | 75 |
|---|---|---|
| Percentage by which current amount of coverage (after all previous reductions) will be reduced | 35% | 23% |

Reduced amounts of Life Insurance and Principal Sum will be rounded to the next higher multiple of $500, if not already such a multiple.

### AMOUNT OF LIFE INSURANCE
### Dependent Only

**What Life benefits are available to Your Dependents?**
**NOTE:** The amount of spouse coverage may never exceed 50% of the Amount of Life Insurance in force for the employee.

**Supplemental Dependent Spouse:**

**POL025**

a) a Guaranteed Issue amount You elect in increments of $10,000, subject to a minimum of $10,000 and a maximum of $20,000 without Evidence of Good Health; or
b) a maximum amount You elect in increments of $10,000, subject to a maximum of $50,000 with Evidence of Good Health.

**Supplemental Dependent Children:**

Option 1:
15 day(s) of age or older:         $2,000

Option 2:
15 day(s) of age or older:         $5,000

Option 3:
15 day(s) of age or older:         $10,000

The Amount You elect is indicated on Your group enrollment form.

**Eligibility and Enrollment**

**Must You contribute toward the cost of coverage?**
With respect to Basic Life Insurance and AD&D coverage, You do not contribute toward the cost.

With respect to Supplemental Life Insurance and Supplemental Dependent Life Insurance coverage, You must contribute toward the cost.

**How do You enroll?**
To enroll You must:
1. complete and sign a group insurance enrollment form which is satisfactory to Us; and
2. deliver it to the Employer.

If You do not enroll within 31 days after becoming eligible, the following limitations will apply to a later enrollment:
1. You must submit Evidence of Good Health; and
2. You may not enroll until:
   a) an Annual Enrollment Period; or
   b) You have a Change in Family Status.

Any such enrollment must be made during the Annual Enrollment Period or within 31 days of the Change in Family Status.

The Annual Enrollment Period is March 1 - March 31.

**What constitutes a Change in Family Status?**
A Change in Family Status means:
1. Your marriage, or the birth or adoption of a child, or becoming the legal guardian of a child;
2. the death of or divorce from Your spouse;
3. the death of or emancipation of a child;
4. spouse's loss of employment which results in a loss of group insurance; or
5. change in classification from part-time to full-time or from full-time to part-time.

POL026

**When does coverage start?**

Your coverage will start on the latest of the dates determined below:
1. the date You become eligible, if You enroll or have enrolled by then;
2. the date on which You enroll, if You do so within 31 days after the date You are eligible;
3. the date We approve Evidence of Good Health which We may have required; or
4. the first day of the month following the Annual Enrollment Period if You enroll during an Annual Enrollment Period.

All of the above effective dates are subject to the Deferred Effective Date provision.

**What is the Deferred Effective Date provision for employees?**

If You are absent from work due to a physical or mental condition on the date Your insurance, an increase in coverage or a new benefit added to the Policy would otherwise have become effective, the effective date of Your insurance, any increase in insurance or the additional benefit will be deferred until the date You return to work as an Active Full-time Employee.

**Are there exceptions to the Deferred Effective Date provision?**

If You were actively at work or on an approved leave of absence in conformity with the Family or Medical Leave Act of 1993, and insured under the Prior Plan on the day before the Policy Effective Date and You would be eligible for coverage on the Policy Effective Date except that You are not able to meet the requirements of the Deferred Effective Date provision, then:
1. the Deferred Effective Date provision will not apply to the original effective date of coverage; and
2. the coverage amount shown in the Schedule of Insurance will not apply to You.

Instead, You will be considered to be insured and your coverage amount will be the lesser of:
1. the Amount of Life Insurance and Principal Sum under the Prior Plan; or
2. the Amount of Life Insurance and Principal Sum shown in the Schedule of Insurance,

reduced by:
1. any coverage amount in force or otherwise payable due to any disability benefit extension under the Prior Plan; or
2. any coverage amount that would have been in force due to any disability benefit extension under the Prior Plan had timely election for the disability provision been made.

You will remain insured under this provision until the first to occur of:
1. the date You return to work as an Active Full-time Employee;
2. the date Your insurance terminates for a reason stated under the Termination provision;
3. the last day of a period of 12 consecutive months which begins on the Policy Effective Date; or
4. the last day You would have been covered under the Prior Plan, had the Prior Plan not terminated.

**When does coverage for Your Dependent(s) start?**

You are required to enroll for contributory Dependent coverage. To do so You have to complete and sign a group insurance enrollment form acceptable to Us and deliver it to the Employer.

Your spouse will become insured for coverage for which We do not require Evidence of Good Health on the first to occur of:
1. the date You are eligible for Dependent Coverage, if You enroll or have enrolled for spouse coverage by then; or
2. the date You enroll for Dependent Coverage, if You do so within 31 days after the date You are eligible.

If You enroll for Dependent Coverage more than 31 days after You are first eligible to do so, no coverage will be available without Evidence of Good Health.

Coverage for which We require Evidence of Good Health will be effective on the later of:
1. the date You become eligible; or
2. the date approved by Us.

POL027

Each child will become insured for coverage for which We do not require Evidence of Good Health on the first to occur of:

1. the date You are eligible for Dependent Coverage, if You enroll or have enrolled for child coverage by then; or
2. the date You enroll for coverage for Your child, if You do so within 31 days after the date You acquire the child.

If You enroll for Dependent Coverage more than 31 days after You are first eligible to do so, no coverage will be available without Evidence of Good Health.

Coverage for which We require Evidence of Good Health will be effective once approved by Us.

In no event will Dependent Coverage become effective before the date You become insured.

All effective dates of coverage are subject to the Deferred Effective Date provision for Dependents.

### What is the Deferred Effective Date provision for Dependents?
If a Dependent, other than a newborn, is confined at home, in a hospital or elsewhere because of a physical or mental condition on the date insurance, an increase in coverage or a new benefit added to the Policy would otherwise have become effective, the effective date of insurance, any increase or additional benefit will be deferred until the Dependent is discharged from the hospital or no longer confined and has engaged in substantially all the normal activities of a healthy person of the same age for a period of at least 15 days in a row.

"Confined elsewhere" means the individual is unable to perform, unaided, the normal functions of daily living, or leave home or other place of residence without assistance.

### When are changes effective?
The provisions, terms and conditions of the Schedule of Insurance or this Booklet-certificate may be modified, amended or changed at any time; consent from any covered individual is not required.

If there is any type of change in Your class, Earnings, the Schedule of Insurance or the Booklet-certificate which:

1. decreases an amount of coverage or deletes, limits or restricts the availability of a benefit or provision, then that decrease, deletion, limitation or restriction will be effective on the date the change in class, Earnings, the Schedule of Insurance or the Booklet-certificate is effective;
2. increases an amount of coverage or adds, improves or increases availability of a benefit or provision, then that increase, addition or improvement will be effective on the date the change in class, Earnings, the Schedule of Insurance or the Booklet-certificate is effective, subject to application of the Deferred Effective Date provision and Our approval where Evidence of Good Health is required.

## BENEFITS

## Life Insurance Benefit

### To whom and how are benefits paid?
A completed claim form, a certified copy of the death certificate and Your enrollment form must be sent to the Employer or Us. When the required claim papers are received and approved by Us, the Amount of Life Insurance will be paid.

Benefits payable for a Dependent's death are payable to You if living, otherwise, We may, at Our option, pay the benefit to Your surviving spouse or to the executors or administrators of Your estate.

Your death benefit will be paid in a lump sum to the beneficiary(ies) designated by You in writing and on file with the Employer.

POL028

Unless You have requested something different, payment will be made as follows:
1.  If more than one beneficiary is named, each will be paid an equal share.
2.  If any named beneficiary dies before You, His share will be divided equally among the named surviving beneficiaries.

If no beneficiary is named, or if no named beneficiary survives You, We may, at Our option, pay:
1.  up to $500 of Your life insurance to any party that We deem is entitled because of their payment of burial expenses. We will be released from further liability for any amount so paid; and/or
2.  the executors or administrators of Your estate; or
3.  Your surviving relatives in the following order:
    a)  all to Your surviving spouse; or
    b)  if Your spouse does not survive You, in equal shares to Your surviving children; or
    c)  if no child survives You, in equal shares to Your surviving parents.

If a minor does not have a legal guardian, We may, until such a guardian is appointed, pay the person We deem to be caring for and supporting him. Such payment will be in monthly installments of not more than $200.

If a death benefit payable meets Our guidelines, then the benefit is payable into a checking account. In the case of a Dependent death benefit, You own the checking account. In the case of Your death benefit, Your beneficiary owns the checking account. A lump sum payment may be elected by writing a check for the full amount in the checking account.

**What benefit is payable if Your death results from suicide?**
No Supplemental Life or Supplemental Dependent Life benefit will be payable if death results from suicide, whether sane or insane, within 2 years of the effective date of Your coverage. Additionally, if death resulting from suicide, whether sane or insane, occurs within 2 years of the effective date of an increase in Your coverage, the death benefit payable is limited to the amount of coverage in force prior to the increase. The 2 year period includes the time coverage was in force under a Prior Plan.

**Accelerated Death Benefit**

**What is the benefit?**
If You are or Your Dependent is diagnosed as being Terminally Ill and proof of such diagnosis is provided by an attending physician licensed to practice in the United States, and that person is:
1.  less than age 60; and
2.  insured for at least $10,000,

then You may request that a portion of that person's Amount of Life Insurance be paid to You prior to death.

The request cannot exceed 80% of the in force Amount of Life Insurance, and is subject to a minimum of $3,000 and a maximum of $500,000. You may exercise this option only once per person.

For example, if You have an Amount of Life Insurance equal to $20,000 and You are Terminally Ill, You can request any portion of the life insurance between $3,000 to $16,000 to be paid to You now instead of to Your beneficiary at Your death. However, if You decide to request only $3,000 now, You cannot request the additional $13,000 in the future.

**What does Terminal Illness/Terminally Ill mean?**
Terminally Ill or Terminal Illness means that an individual has a life expectancy of 12 months or less.

**RECEIPT OF ANY BENEFITS IN ACCORDANCE WITH THIS PROVISION WILL REDUCE LIFE INSURANCE BENEFITS PAYABLE UPON DEATH.**

**POL029**

**What if an individual is no longer Terminally Ill?**
If diagnosed as no longer Terminally Ill, coverage may or may not remain in force. Coverage which remains in force will be reduced by any amount of Accelerated Death Benefits received and premium is due for this reduced amount. If coverage does not remain in force, then the reduced amount of coverage may be converted.

**What limitations apply to this benefit?**
The Accelerated Death Benefit provision will be subject to all applicable terms and conditions of the Policy.

No Accelerated Death Benefit will be paid if You are required by law to accelerate benefits to meet the claims of creditors, or if a government agency requires You to apply for benefits to qualify for a government benefit or entitlement.

**What if You made an assignment under this plan?**
If You have executed an assignment of rights and interest with respect to Your Amount of Life Insurance, in order to pay benefits to You under this provision, We must receive a release from the individual to whom the assignment was made before any benefits are payable.

### Accidental Death and Dismemberment (AD&D) Benefit
### Employee Only

**What conditions are necessary for benefits to become payable?**
We will pay a benefit if You suffer an accidental injury while insured and:
1.  a Loss results directly from such injury, independent of all other causes; and
2.  such Loss occurs within 90 days after the date of the accident causing the injury.

**When should We be notified of a claim?**
A claimant must give Us, or Our appropriate representative, written notice of a claim within 20 days after the loss happens or starts. If notice cannot be given within that time, it must be given as soon as possible after that.

Such notice must include:
1.  the claimant's name and address; and
2.  the Policy or account number.

**Are special forms required to file a claim?**
Within 15 days of receiving a notice of claim, We or Our appropriate representative will send forms to the claimant for providing proof of loss. If the forms are not provided within 15 days, the claimant may submit any other written proof which fully describes the nature and extent of claim.

**When must Proof of Loss be given?**
Satisfactory written proof of loss must be sent to Us or Our appropriate representative, within 90 days after the date of such loss. However, all claims must be submitted to Us within 90 days of the date any individual's insurance terminates.

If proof is not given by the time it is due, it will not affect the claim if:
1.  it was not possible to give proof within the required time; and
2.  proof is given as soon as possible, but no later than a year after it is due unless the claimant is not legally competent.

**When and to whom will Your claim be paid?**
Benefits for Loss of life will be paid in accordance with Your life insurance beneficiary designation. Unless otherwise specified, benefits for all other Losses are payable to You.

Benefits for all other Losses will be paid as soon as due written proof is received. Benefits for all other Losses will be paid not more than 60 days after written proof is received.

**POL030**

Any payments, other than for Loss of life, which are owing at Your death may be paid to Your estate. If any payment is owed to:

1. Your estate;
2. a person who is a minor; or
3. a person who is not legally competent,

then We may pay up to $1,000 to Your relative who is entitled to it in Our opinion. Any such payment shall fulfill Our responsibility for the amount paid.

### What types of injuries are excluded from coverage?
No benefit will be paid for a Loss caused or contributed to by:

1. sickness;
2. disease;
3. any medical treatment for items (1) or (2);
4. any infection, except a pus-forming infection of an accidental cut or wound;
5. war or any act of war, whether war is declared or not;
6. any injury received while in any armed service of a country which is at war or engaged in armed conflict;
7. any intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane;
8. taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered by a licensed physician; or
9. the injured person's intoxication.

Intoxication means that blood alcohol content or the results of other means of testing blood alcohol level, meet or exceed the legal presumption of intoxication under the law of the state where the accident took place.

### What is the benefit payable?
The benefit payable for any Loss is that which is shown opposite the Loss in the following schedule. The Principal Sum is shown in the Schedule of Insurance. No benefit is payable for any Loss which is not shown in the schedule below.

| DESCRIPTION OF LOSS | BENEFIT |
|---|---|
| Loss of life | Principal Sum |
| Loss of a hand | One-half the Principal Sum |
| Loss of a foot | One-half the Principal Sum |
| Loss of an eye | One-half the Principal Sum |
| More than one of the above resulting from one accident | Principal Sum or the sum of the Benefits payable for each Loss, whichever is lesser. |

Loss means the following:

1. Loss of a hand or foot means that it is completely cut off at or above the wrist or ankle joint.
2. Loss of an eye means that sight in the eye is completely lost and cannot be recovered or restored.

**POL031**

## TERMINATION
## Employee Coverage

**When does Your coverage terminate?**
Unless continued in accordance with the Exceptions to Termination section, Your insurance will terminate on the first to occur of:
1. the date the Policy terminates;
2. the last day of the period for which You made any required premium contribution, if You fail to make any further required contribution;
3. the date You are no longer in a class eligible for coverage;
4. the date Your Employer terminates Your employment; or
5. the date You are absent from work as an Active Full-time Employee.

## EXCEPTIONS TO TERMINATION

**Under what conditions can Your insurance be continued under the continuation provisions?**
If You are absent from work as an Active Full-time Employee, Your insurance may be continued up to the maximum period of time stated. In each instance, such continuation shall be at the Employer's option, but must be according to a plan which applies to all employees in the same way. Continued coverage:
1. is subject to any reductions in the Policy;
2. is subject to payment of premium by the Employer; and
3. terminates when the Policy terminates.

If You are on a documented leave of absence, all of Your coverages (including Dependent Life coverage) may be continued until the last day of the month following the month in which the leave of absence commenced.

If You are laid off due to lack of work, all of Your coverages (including Dependent Life coverage) may be continued until the last day of the month following the month in which the layoff commenced.

If Your employment status changes from full-time to part-time, all of Your coverages (including Dependent Life coverage) may be continued for 3 consecutive month(s) following the date of such change in employment status.

If You are absent from work due to sickness or injury, all of Your coverages (including Dependent Life coverage) may be continued until the last day of a period of 12 month(s) which begins on the date You were first absent from work as an Active Full-time Employee. If You feel that Your condition may continue for an extended period of time, You should request that Your Employer file a waiver of premium claim.

**What is Waiver of Premium?**
Waiver of premium is a provision which allows for continued employee or Dependent life insurance, without payment of premium, while You are Disabled. You or Your Dependent may not exercise the rights under the Portability provision and qualify for waiver of premium.

**To what coverages does the Waiver of Premium apply?**
These provisions apply only to Your Basic and Supplemental Life Insurance and Dependent Life Insurance.

Waiver of Premium does not apply to any AD&D Insurance.

**What conditions must be satisfied before You qualify for Waiver of Premium?**
1. You must be less than age 60, insured and Disabled; and
2. acceptable proof of Your condition must be furnished to Us within one year of Your last day of work as an Active Full-time Employee.

**POL032**

**What does Disabled mean?**
Disabled means that You have a condition that prevents You from doing any work for which You are or could become qualified by education, training or experience and it is expected that this condition will last for at least nine consecutive months from Your last day of work as an Active Full-time Employee; or You have been diagnosed with a life expectancy of 12 months or less.

**When will We waive premium?**
We will waive premium after proof that You are Disabled is provided by an attending physician licensed to practice in the United States and We approve the proof. You will be notified by Us of the date We will begin to waive premium.

Continued coverage will be subject to any age reductions provided by any part of the Policy.

**What if You or Your Dependent die before You qualify for Waiver of Premium?**
If:
1. You or Your Dependent should die within one year of Your last day of work as an Active Full-time Employee but prior to qualifying for waiver of premium; and
2. You were Disabled,

We will pay the Amount of Life Insurance which is in force for You or Your Dependent. Your Dependent Life coverage will terminate on the date you die. They may be eligible for conversion as of that date.

**Can We have You examined for proof that You continue to be Disabled?**
During the first two years following the date You qualify as Disabled, We may have You examined at reasonable intervals. Thereafter, We will only require an annual examination to confirm that You continue to be Disabled. If You fail to submit any required proof or refuse to be examined as required by Us, then Your coverage will terminate.

**What if You are no longer Disabled?**
If, for any reason, You are no longer Disabled, Your premium will no longer be waived. On that date, You may or may not return to work.

If You return to work in an Eligible Class, then all of Your coverages will be reinstated subject to the terms of the Policy in effect on the reinstatement date.

If You do not return to work within an Eligible Class, and You are not eligible for any other group life insurance, then You are entitled to the Conversion Privilege. You may convert the Amount of Life Insurance that is in force for You and Your Dependent on the date it is determined that You are no longer Disabled.

**How long will premiums be waived?**
Your premium will be waived and Your coverage will be continued until You attain Normal Retirement Age.

The premium for Dependent Life coverage will be waived and subject to all Policy provisions, Dependent Life coverage will continue until the first to occur of the date:
1. You die;
2. You no longer qualify for Waiver of Premium;
3. the date the Policy terminates; or
4. You attain Normal Retirement Age.

On the date waiver of premium terminates, if You do not return to work, You will be entitled to convert Your coverage. You may convert no more than Your Amount of Life Insurance that is in force on the date waiver of premium terminates. On the date the waiver of premium terminates for Dependent Life coverage, your Dependents may be eligible to convert.

**What if the Policy terminates before You qualify for waiver of premium?**
If the Policy terminates before You qualify for waiver of premium, You may be eligible to convert. Additionally, You may later be approved for waiver of premium.

**What if the Policy terminates after You qualify for waiver of premium?**

**POL033**

Termination of the Policy will not affect Your coverage under the terms of this provision.

## DEPENDENT COVERAGE

**When does Dependent Coverage terminate?**
Unless continued in accordance with the Exception to Termination section, a covered Dependent's insurance will terminate on the earliest of:
1. the date Your coverage terminates;
2. the last day of the period for which any required premium contribution is made, if You fail to make any further required contribution;
3. the date You are no longer eligible for Dependent Coverage;
4. the date the Dependent no longer meets the definition of Dependent; or
5. the date We or the Employer terminate Dependent Coverage.

## EXCEPTIONS TO TERMINATION

**Under what conditions can Dependent child insurance be continued?**
If a covered Dependent child reaches the age at which He would otherwise cease to be a Dependent as defined, and the Dependent child is:
1. disabled and incapable of earning His own living; and
2. unmarried and primarily dependent on You for support and maintenance,

then Dependent coverage will not terminate solely due to age if You submit satisfactory proof of the Dependent child's disability to Us within 31 days of the date the Dependent child reaches such age.

Coverage will continue while the Policy remains in force as long as:
1. the child continues to meet the required conditions; and
2. any required premium is paid.

We will have the right to require satisfactory proof that the child continues to meet the required conditions as often as necessary during the first two years of continuation, but not more than once a year after that.

**POL034**

# PORTABILITY

**When can a person elect Portability?**
You may elect portability if:
1. the Policy is still in force;
2. Your supplemental life insurance terminates because:
   a. Your employment terminates for any reason prior to Retirement; or
   b. You are no longer in an Eligible Class; and
3. You do not currently have coverage for the amount of life insurance You intend to continue under a certificate of insurance issued in accordance with a conversion, portability or other similar provision under this Policy.

A Dependent may elect portability if:
1. the Policy is still in force;
2. He has not reached Retirement status; and
3. His supplemental life insurance terminates because:
   a. Your employment terminates for any reason prior to Retirement;
   b. Your membership in a class eligible for Dependent's coverage ceases;
   c. You die; or
   d. He ceases to be an eligible Dependent as defined, except a child who reaches the limiting age under the Policy.

In order for a Dependent child to continue coverage, You and/or Your spouse must elect continuation.

**What does Retirement mean?**
Retirement means the date You or Your Dependent attain normal retirement age under the 1983 United States Social Security Act, and any amendments thereto.

**Will the Waiver of Premium provision be available if You elect to continue coverage under this Portability provision?**
No.

**Will Conversion be available if a person elects to continue coverage under this Portability provision?**
If a person elects to continue all terminated coverage under this portability provision, then the Conversion provision is not available. If a person elects to continue only a portion of terminated coverage under this portability provision, then the Conversion privilege will be available for the remaining amount.

**How is Portability elected?**
A person must, within 31 days of the date group coverage terminates:
1. make written application to Us; and
2. pay the required premium.

If this is done, We will issue a certificate of insurance under a group portability policy. Such coverage will be:
1. issued without evidence of good health;
2. on one of the forms then being issued by Us for portability purposes; and
3. effective on the day following the date insurance terminates.

The terms and conditions of coverage under the group portability policy will be similar, but may not be identical, to coverage under this plan.

**What limitations apply to this benefit?**
A person may elect to continue 50%, 75% or 100% of his amount of life insurance being terminated. Such amount will be rounded to the next higher $1,000, if not already an even multiple thereof. No employees amount of life insurance continued may exceed $250,000. No spouse's amount of life insurance continued may exceed $50,000. No child's amount of life insurance continued may exceed $10,000.

**POL035**

If an election is made to continue 50% or 75% now, a person may not continue any portion of the remaining amount. In no event will a person be able to continue an amount of life insurance which is less than $5,000 unless he is a Dependent child.

**How much does Portability cost?**
See Your Employer for the cost.

## CONVERSION PRIVILEGE

The following does not apply to any AD&D Benefits.

**When can an individual convert?**
If insurance, or any portion thereof, terminates, then any individual covered under the Policy may convert his life insurance to a conversion policy without providing Evidence of Good Health.

If the qualifying event is policy termination or termination of coverage for a class then the individual must have been insured for at least 5 years under the Policy in order to be eligible for this conversion privilege.

**What is the conversion policy?**
The conversion policy will:
1. be on one of the life insurance policy forms, except term insurance, then customarily issued by Us for conversion purposes;
2. contain no disability, supplementary or AD&D benefits; and
3. be effective on the 32nd day after group life insurance terminates.

**How much can be converted?**
If the qualifying event is policy termination or termination of coverage for a class, then the amount which may be converted is limited to the lesser of:
1. the amount of group coverage in force prior to the qualifying event, reduced by the amount of any other group coverage for which the individual becomes covered within 31 days of termination of group coverage; or
2. $2,000.

If conversion is due to retirement or any other qualifying event, the full amount of coverage lost may be converted.

**How does an individual convert coverage?**
To convert life insurance, the individual must, within 31 days of the date group coverage terminates, make written application to Us and pay the premium required for his age and class of risk.

**What if death occurs during the conversion election period?**
If the individual should die within the 31 day conversion election period, We will, upon receipt of acceptable proof of His death, pay the Amount of Life Insurance He was entitled to convert.

## GENERAL PROVISIONS

**When can this plan be contested?**
Except for non-payment of premium, the Policy cannot be contested after two years from the Policy Effective Date.

No statement relating to insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during the individual's lifetime. In order to be used, the statement must be in writing and signed by the affected individual.

**Who interprets policy terms and conditions?**
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

POL036

### Are there any rights of assignment?
Except for the dismemberment benefits under the AD&D Benefit, You have the right to absolutely assign all of Your rights and interest under the Policy including, but not limited to, the following:
1. the right to make any contributions required to keep the insurance in force;
2. the privilege of converting; and
3. the right to name and change a beneficiary.

No absolute assignment of rights and interest shall be binding on Us until and unless:
1. the original of the form documenting the absolute assignment; or
2. a true copy of it,

is received and acknowledged by Us at our home office.

We have no responsibility:
1. for the validity or effect of any assignment; or
2. to provide any assignee with notices which We may be obligated to provide to You.

### How do You designate or change Your beneficiary?
You may designate or change a beneficiary by doing so in writing on a form satisfactory to Us and filing the form with the Employer. Only satisfactory forms sent to the Employer prior to Your death will be accepted.

Designations will become effective as of the date You signed and dated the form, even if You have since died. We will not be liable for any amounts paid before receiving notice of a beneficiary change from the Employer.

In no event may a beneficiary be changed by a Power of Attorney.

### Can We have a claimant examined or request an autopsy?
We reserve the right to have a claimant examined and to have an autopsy performed, if not forbidden by law. Any such examinations will be as reasonably required by Us and at Our expense.

### What notification will You receive if Your claim is denied?
If a claim for benefits is wholly or partly denied, the claimant will be furnished with written notification of the decision. This written decision will:
1. give the specific reason(s) for the denial;
2. make specific reference to the provisions upon which the denial is based; and
3. provide an explanation of the review procedure.

### What recourse do You have if Your claim is denied?
On any denied claim, the claimant or His representative may appeal to Us for a full and fair review.

The claimant may:
1. request a review upon written application within 60 days of receipt of claim denial;
2. review pertinent documents; and
3. submit issues and comments in writing.

A request for an appeal will not be denied if not submitted within 60 days if it is not reasonably possible to make such request within 60 days. In this case, the request must be submitted as soon as reasonably possible thereafter.

A decision will be made by Us no more than 60 days after the receipt of the request, except in special circumstances (such as the need to hold a hearing), but in no event more than 120 days after the request for review is received.

### When can legal action be taken?
Legal action cannot be taken against Us:
1. sooner than 60 days after proof of loss has been furnished; or
2. 3 or more years after the time proof of loss is required to be furnished according to the terms of the Policy.

**POL037**

**How does this plan affect Workers' Compensation coverage?**
The Policy does not replace Workers' Compensation or affect any requirement for Workers' Compensation coverage.

**Physician-patient Relationship**
You may choose any licensed physician. We shall not in any way disturb the physician-patient relationship.

## DEFINITIONS

**Active Full-time Employee** – An employee who works for the Employer on a regular basis in the usual course of the Employer's business. An employee must work at least the number of hours in the Employer's normal work week. This must be at least 30 hours. You will be considered actively at work with Your Employer on a day which is one of Your Employer's scheduled work days if You are performing, in the usual way, all of the regular duties of Your job on a full-time basis on that day. You will also be considered actively at work on a paid vacation day or a day which is not one of Your Employer's scheduled work days only if You were actively at work on the preceding scheduled work day.

**Amount of Life Insurance** – This term means both the Basic and Supplemental Life Amounts unless otherwise stated in specific provisions and benefits.

**Anniversary Date** – The date occurring in each calendar year which is an anniversary of the Policy Effective Date.

**Dependent**
1. Your spouse; and
2. Your unmarried child who is:
   a) at least 15 day(s) old but not yet 19 years old; or
   b) 19, but has not yet attained age 23, is primarily dependent upon You for financial support and attends an accredited school (other than a correspondence school) on a regular and full-time student basis as his principal activity; or
   c) 19 years old or older, and is disabled and primarily dependent upon You for financial support.

   The term "full-time student" shall mean registered for not less than 12 course credit hours per semester. If the institution establishes full-time student status by a method other than semester credit hours, We reserve the right to determine whether the student qualifies as a Dependent.

   The term "child", shall also include Your:
   1. stepchild;
   2. legally adopted child; and
   3. any other child related to You by blood or marriage and who lives with You in a regular parent-child relationship, provided that You claim such child as a dependent on Your most current federal income tax return Form 1040.

You may not elect coverage for Your Dependent if Your Dependent is covered as an employee under the Policy. Any person who is in full-time military, naval or air force service cannot be a Dependent. No person can be insured as a Dependent of more than one employee under the Policy.

**Earnings** - Regular pay, not counting:
1. commissions;
2. bonuses;
3. overtime pay; or
4. any other pay or fringe benefits.

**Employer** – The Policyholder named in the Schedule of Insurance.

**He/His** – He or she. His or her.

**Normal Retirement Age** – The Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by Your date of birth.

**Prior Plan** – A plan of group term life insurance sponsored by the Employer which was in force on the day before the Policy Effective Date.

**We/Us/Our** – The Hartford Life and Accident Insurance Company.

**You/Your** – The employee to whom this Booklet-certificate is issued.

**POL039**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford, Connecticut
**Endorsement**

**Policyholder:** UROMED CORPORATION

**Group Policy No.:** GL/GLT-219661

**Effective Date:** April 1, 2000

This endorsement forms a part of your Booklet-certificate which describes the provisions of the group policy specified above.

With respect to All Active Full-time Employees earning $40,000 or more annually, the following provisions appearing in Your Booklet-certificate are hereby amended as follows:

- The **"Maximum Monthly Benefit"** appearing in the Schedule of Insurance section is hereby deleted and replaced with the following:

  **Maximum Monthly Benefit:**                $10,000

- The definition of **"Disability or Disabled"** appearing in the Definitions section is hereby deleted and replaced with the following:

  **Disability or Disabled** means you are prevented by:
  1. accidental bodily injury;
  2. sickness;
  3. Mental Illness;
  4. Substance Abuse; or
  5. pregnancy,

  from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

  Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Disabled.

*Lynda Godkin*
Lynda Godkin, *Secretary*

*Lowndes A. Smith*
Lowndes A. Smith, *President*

GR-2025(496)A-HLA 219661(GLT/GL)1  (A)                                              7-'00

1

**POL040**

## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
Hartford, Connecticut
### Endorsement

**Policyholder:** UROMED CORPORATION

**Group Policy No.:** GLT/GL-219661

**Effective Date:** June 1, 2001

This endorsement forms a part of your Booklet-certificate which describes the provisions of the group policy specified above.

With respect to All Active Full-time Employees, the **Basic Amount of Life Insurance** maximum as shown in the **Schedule of Insurance** portion of Your Booklet-certificate is amended to read as follows:

**Basic Amount of Life Insurance:**
a) a Guaranteed Issue Amount equal to 1 times Your annual rate of basic Earnings, subject to a maximum of $180,000 without Evidence of Good Health; or
b) a maximum amount equal to 2 times Your annual rate of basic Earnings, subject to a maximum of $500,000 with Evidence of Good Health,

rounded to the next higher multiple of $1,000, if not already such a multiple.

In no event however will Your Basic Amount of Life Insurance be less than $10,000.

Lynda Godkin, *Secretary*

Lowndes A. Smith, *President*

GR-2025(496)A-HLA 219661(GL)1 No. 1

7-'01

1

POL041

**THIS POLICY IS A REPLACEMENT IN IT'S ENTIRETY TO GROUP POLICY GLT/GL- 219661 REVISED OCTOBER 25, 2001, EFFECTIVE OCTOBER 1, 2001.**

**Name of Policyholder: ALLIANT MEDICAL TECHNOLOGIES**

| | | |
|---|---|---|
| **Policy Number:** | **Effective Date:** | **Place of Delivery:** |
| GLT/GL-219661 | April 1, 2000 | Massachusetts |

**Anniversary Dates:**
April 1 of each year, beginning in 2001.

**Premium Due Dates:**
Monthly, on the first day of each policy month.

### HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
200 Hopmeadow Street, Simsbury, Connecticut 06089

(A stock insurance company, herein called Hartford Life)

Agrees with the Policyholder to insure certain persons who are entitled to the insurance provided by this policy. This policy is issued in consideration of the application of the Policyholder, and the payment of the first premium. The first premium is due and payable on the effective date of the policy. Subject to the policy's grace period provision, all premiums after the first must be paid when or before they are due.

Signed for Hartford Life:

Christine Hayer Repasy, *Secretary*          Thomas M. Marra, *President*

Countersigned by_____
                          Licensed Resident Agent

Table of Contents
Agreement to Insure _____ 1
Participant Employers_____ 2
Incorporation Provision _____ 3
Schedule of Insurance_____ 3.1
Premiums_____ 4
Policy Provisions_____ 7

**POL042**

## PARTICIPANT EMPLOYERS

An employer may be included as a Participant Employer if the Policyholder and Hartford Life so agree. Hartford Life will keep a list of accepted Participant Employers and the effective dates of coverage for each.

The Policyholder may act for or on behalf of all Participant Employers in all matters of the policy. The following will be binding on all Participant Employers:
- all agreements between Hartford Life and the Policyholder;
- all notices from Hartford Life to the Policyholder; and
- all notices from the Policyholder to Hartford Life.

An employee of a Participant Employer will be deemed to be an employee of the Policyholder for insurance purposes.

Coverage for a Participant Employer will terminate on the first to occur of:
- the date his premium is due, but not paid; or
- the date on which the Policyholder wants the employer to be removed from the policy. Such date must be stated in written notice to Hartford Life, and must be after the date of the notice.

**POL043**

# INCORPORATION PROVISION

**Booklet-Certificate**
The Booklet-certificate(s), and the endorsement form(s) enclosed therein, attached to this Policy are hereby incorporated in, and made a part of, this policy.

| Booklet Form(s): | Endorsement Form(s): |
|---|---|
| 219661(GLT/GL)1 | GR-2025(496)A-HLA 219661(GL)1 No. 1 |
| | GR-2025(496)B-HLA 219661(GLT/GL)1  (A) |
| | GR-2025(496)B-HLA 219661(GLT/GL)1  (B) |
| | GR-2025(496)A-HLA 219661(GLT/GL)1  (A) |

The terms found in the Booklet-certificate(s) will control:
- the benefit plan provisions;
- the eligibility and effective date of insurance rules;
- the termination of insurance rules;
- exclusions; and
- other general policy provisions pertaining to state insurance law requirements.

**POL044**

**Schedule of Insurance**

The Schedule(s) of Insurance for Group Insurance Policy GLT/GL-219661 listed below:

- Basic Life Insurance
- Accidental Death, Dismemberment and Loss of Sight Benefit
- Long Term Disability Insurance
- Supplemental Life Insurance
- Supplemental Dependent Life Insurance

are shown in Booklet-certificate(s) 219661(GLT/GL)1.

The Schedule(s) of Insurance will control the:

- benefit amounts and maximum limits;
- eligibility and effective date rules; and
- other schedule amounts and limits,

which apply to the employees of the Policyholder.

**POL045**

## PREMIUMS

**Initial Monthly Premium Rates**

The initial monthly premium rates to be charged for employee Coverage and/or child/spouse coverage, if applicable, will be:

| | |
|---|---|
| Basic Life Insurance | $ .13 for each $1,000 of Basic Life Insurance |
| Accidental Death, Dismemberment and Loss of Sight Benefit | $ .025 for each $1,000 of Principal Sum |
| Long Term Disability Benefits | $ .25 per $100 of insured payroll |
| Supplemental Life Insurance (Employee and Spouse) | *for each $1,000 of Supplemental Life Insurance the monthly premium rate shall be determined in accordance with the employee's age as follows: |

| | |
|---|---|
| *Less than age 30 | $.09 |
| 30 years of age but less than 35 years of age | $.09 |
| 35 years of age but less than 40 years of age | $.15 |
| 40 years of age but less than 45 years of age | $.23 |
| 45 years of age but less than 50 years of age | $.39 |
| 50 years of age but less than 55 years of age | $.66 |
| 55 years of age but less than 60 years of age | $1.10 |
| 60 years of age but less than 65 years of age | $1.46 |
| 65 years of age but less than 70 years of age | $2.27 |
| 70 years of age but less than 75 years of age | $3.99 |
| 75 years of age or more | $6.52 |

Supplemental Dependent Child Life Insurance      $ .09 per Child Unit

For Long Term Disability Benefits, the amount of an employee's Earnings which is disregarded in determining his Monthly Benefit because of the Maximum Monthly Benefit limitation will also be disregarded in determining the amount of the total insured payroll.

Hartford Life reserves the right to terminate Dependent Life Insurance Benefits on any premium due date on which:
- there are fewer than 10 persons insured for Dependent Coverage; or
- less than 75% of the persons eligible for Dependent Coverage on a Contributory Basis are insured.

Hartford Life shall give the Policyholder 31 days notice of its intent to terminate the Dependent Life Insurance Benefit.

The Initial Monthly Premium Rates may be converted as follows:

| To Convert Rates to: | Use a Conversion Factor of: |
|---|---|
| -- annual rates | 11.8227 |
| -- semi-annual rates | 5.9557 |
| -- quarterly rates | 2.9852 |

**POL046**

**Change in Monthly Premium Rates**

Initial Monthly Premium rates are guaranteed as follows:

| | |
|---|---|
| Basic Life Insurance | until April 1, 2002 |
| Accidental Death, Dismemberment and Loss of Sight Benefit | until April 1, 2002 |
| Long Term Disability Benefits | until April 1, 2002 |
| Supplemental Life Insurance | until April 1, 2002 |
| Supplemental Dependent Life Insurance | until April 1, 2002 |

Subject to the Rate Guarantee period shown above, Hartford Life has the right to change premium rates on any premium due date if:

- written notice is delivered to the Policyholder's last address on record; and
- the change is effective at least 31 days after the date of notice.

The rate guarantee described above (the "Rate Guarantee") supersedes only those provisions appearing elsewhere in this policy which give Hartford Life the right to change the premium rates, and then, only for the period of time stated for the Rate Guarantee. However, Hartford Life may change the premium rates during the Rate Guarantee period if there is a change in the group policy, or if there is a 10% increase or decrease in the number of insured employees, or if the Policyholder adds or deletes a subsidiary or affiliated business entity. Hartford Life may also change the premium rates during the Guarantee Period if there has been a material misstatement in the reported experience during the pre-sale process. The Rate Guarantee in no way affects, amends or supersedes any other provision in this policy.

**Calculation**

Premiums may be calculated by multiplying the rate times the applicable number of units of coverage.

If any insurance is added, increased or becomes effective after the policy is in force, the premium charges will begin:

- the day the coverage is effective, if it is also the first day of a policy month; or if not
- the first day of the next policy month.

For insurance which is terminated, premium charges will stop as of the first day of the next policy month.

Premiums may be calculated by any other method which both Hartford Life and the Policyholder agree to in writing.

**POL047**

**Premium Payments**
Premium payments are due and payable in full to a place designated by Hartford Life or, with respect to the initial premium payment, premium payments may be made to an authorized agent of Hartford Life.

Payment of premiums for a period before it is due will not guarantee the insurance for that period.

**Experience Rating**
If the policy is experience rated, any credit amount due the Policyholder will be allowed him on the Policy Anniversary Date and, at the Policyholder's request, will be:

- paid to him in cash;
- used to reduce his premiums; or
- used to provide additional insurance for Covered Persons.

Any credit amount shall be determined by the rating plan or plans used by Hartford Life.

**POL048**

# POLICY PROVISIONS

**Entire Contract**

The contract between the parties consists of:

- the policy;
- the application of the Policyholder, a copy of which is attached to and made a part of the policy when issued; and
- the applications, if any, of each insured person.

All statements made by the Policyholder, Participant Employers, and persons insured under the policy are true and complete to the best of the knowledge and belief of the person(s) making them. No statement will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his beneficiary.

**Incontestability**

Except for non-payment of premium, the insurance provided by the policy cannot be contested after a period of 2 years from the date of issue of such insurance.

**Change in The Policy**

No change may be made unless approved in writing by the President; or a Vice President; an Assistant Vice President; a Secretary; or an Assistant Secretary of Hartford Life. No other person may change or waive any part of the policy. Any approved change shall be added to the policy in writing.

If any change to state or federal law, including but not limited to the Federal Social Security Act, affects Hartford Life's liability under the policy, Hartford Life may change the policy, the premiums or both. Such change:

- will be effective as of the date of the change to the state or federal law;
- will not be made until Hartford Life gives the Policyholder 31 days notice.

**Right to Amend**

Notwithstanding the above, after the policy has been in force for 12 months, Hartford Life may change any or all of the provisions of this contract by notifying the Policyholder. Hartford Life must give the Policyholder at least 31 days advance written notice of any change.

**Grace Period**

Hartford Life will allow the Policyholder a 45 day grace period for the payment of all premiums after the first. During this 45 day period, the policy will stay in force. If the owed premium is not paid by the 45th day, the policy will automatically terminate. If the Policyholder gives Hartford Life written advance notice of an earlier cancellation date, the policy will terminate on the earlier date. Premium is due for each day the policy is in force.

**POL049**

**Termination of Policy**
Hartford Life may terminate the policy for the following reasons by giving the Policyholder 31 days written notice:
- The Policyholder fails to furnish any information which Hartford Life may reasonably require;
- The Policyholder fails to perform any of his other obligations pertaining to this policy;
- Less than 100% of the persons eligible for coverage on a Non-contributory Basis are insured; or
- Less than 75% of the persons eligible for coverage on a Contributory Basis are insured.
- Fewer than 10 persons are insured.

In addition, Hartford Life may terminate this policy on any premium due date after the policy has been in force for 12 months.

**Certificate**
Hartford Life will give the Policyholder an individual Booklet-certificate for each insured employee. The Booklet-certificate is part of the policy, and will explain the important features of the policy.

**Data To Be Furnished**
The Policyholder will give Hartford Life all information Hartford Life needs regarding matters pertaining to the insurance. At any reasonable time while the policy is in force and for 1 year after that, Hartford Life may inspect any of the Policyholder's documents, books, or records which may affect the insurance or premiums of this policy.

If the Policyholder gives Hartford Life any incorrect information, the relevant facts will be determined to establish if insurance is in effect and in what amount.

No person will be deprived of insurance to which he is otherwise entitled or have insurance to which he is not entitled, because of any misstatement of fact by the Policyholder. Any required adjustment may be made in premiums or benefits.

**No Replacement for Workers' Compensation**
The policy does not replace Workers' Compensation or affect any requirement for Workers' Compensation coverage.

**Time Period**
All periods begin and end at 12:01 A.M., standard time, at the Policyholder's address.

**Jurisdiction**
This policy is governed by the laws of the state where it is delivered.

**POL050**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford, Connecticut
**Endorsement**

**Policyholder:** UROMED CORPORATION

**Group Policy No.:** GL/GLT-219661

**Effective Date:** April 1, 2000

This endorsement forms a part of your Booklet-certificate which describes the provisions of the group policy specified above.

With respect to All Active Full-time Employees earning $40,000 or more annually, the following provisions appearing in Your Booklet-certificate are hereby amended as follows:

- The **"Maximum Monthly Benefit"** appearing in the Schedule of Insurance section is hereby deleted and replaced with the following:

  **Maximum Monthly Benefit:**           $10,000

- The definition of **"Disability or Disabled"** appearing in the Definitions section is hereby deleted and replaced with the following:

  **Disability or Disabled** means you are prevented by:
  1. accidental bodily injury;
  2. sickness;
  3. Mental Illness;
  4. Substance Abuse; or
  5. pregnancy,

  from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

  Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Disabled.



*Lynda Godkin, Secretary*                          Lowndes A. Smith, *President*

GR-2025(496)A-HLA 219661(GLT/GL)1 (A)                                    7-'00

1

**AR365**

# EXHIBIT 5

## VIDEO DISCS OF DEPOSITION OF LISA TRACEY

## (CANNOT BE ATTACHED ELECTRONICALLY; LODGED WITH COURT AND COPY IN POSSESSION OF ALL COUNSEL )



1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| GIL CAPIANCO, | CASE NO. 03CV562 DMS (AJB) |
| Plaintiff, | DECLARATION OF GIL CAPIANCO |
| v. | |
| LONG-TERM DISABILITY PLAN OF SPONSOR UROMED CORP., et. al., | |
| Defendants. | TRIAL JUDGE: HON. DANA M. SABRAW HEARING DATE: September 23, 2005 HEARING TIME: 1:30 PM COURTROOM:    10 PRETRIAL CONFERENCE: 12-09-05 TRIAL DATE: NONE SET |

18      I, GIL CAPIANCO, declare:

19      1.      I am the Plaintiff in this case, and have personal knowledge of the facts and

20  circumstances set forth in this Declaration. If called as a witness I could competently testify thereto.

21      2.      The determination that I was barred from receiving LTD benefits due to

22  the "preexisting condition limitation" was made by HARTFORD, by way its denial letter dated May

23  3, 2002. In that letter, the only reason given by HARTFORD for the denial consisted of a recitation

24  of the Plan Policy's "Preexisting Condition Limitation". The denial letter did not mention that that

25  provision was immediately followed by another one entitled "Continuity of Coverage". That

26  provision has already been quoted several times by both parties and will not be restated again here.

27                                          -1-

28

DECLARATION OF GIL CAPIANCO IN SUPPORT OF PLAINTIFF'S MOTION                    ENT
RE: ENTIRE CASE                                                         03

**EXHIBIT**

**6**

3.   The Continuity of Coverage provision should have been applied to me, since I was covered by a "prior plan", i.e. the plan in place by UROMED's predecessor-in-interest, Prowess Systems/ SSGI. I meet all of the above requirements, since I was employed full-time while the prior Prowess plan was in force; I was not yet eligible to receive benefits under that prior plan; I was covered under the prior Plan on the day before the effective date of the UROMED Plan; and my coverage was not limited under the prior plan for any pre-existing condition.

4.   Although I had previously attempted to bring the Continuity of Coverage situation to HARTFORD's attention, my requests were totally ignored. I even informed HARTFORD about the fact that I inquired, in good faith, prior to even applying for LTD benefits, to make sure that I would be eligible for coverage. I spoke with Ms. Lisa Scibilia (aka Lisa Tracey, and hereafter "Ms. Scibilia") of the Human Resources/ Benefits Department at UROMED, and she told me she would ask HARTFORD and Blue Cross (the medical insurance component that would have gone along with my LTD benefits) whether I was barred by the preexisting condition limitation or eligible under the Continuity of Coverage provision. Ms. Scibilia wrote me back by e-mail dated April 12, 2001, a true and correct copy of which memo is attached hereto as Exhibit "A". In her letter, Ms. Scibilia clearly stated that " I called the HARTFORD and Blue Cross and they said that since your group is being considered a transfer and not as new hires and you are coming directly from another plan, than [sic] both for medical and all disabilities that the preexisting conditions are waived."

5.   In view of the above assurances, I reasonably relied upon the fact that I would be granted LTD benefits by HARTFORD due to my MS, which illness itself was never contested by HARTFORD.  HARTFORD has apparently stated that Ms. Scibila's statements are untrue. It should be noted that Ms. Scibila has refused to voluntarily sign a Declaration attesting to these facts, and I have been informed by my attorney that since depositions have not been allowed in this case there is no other way to obtain her testimony. I stand by my statements regarding Ms. Scibila's assurances of prior coverage as well as her documentation in this Court's files.

-2-

6.     Despite the assurances set forth above, HARTFORD nonetheless denied any LTD benefits, as described above, while ignoring, in its denial letter, both the Continuity of Coverage provision and Ms. Scibilia's letter, despite my having raised both issues with HARTFORD.

7.     Since I had a right to an administrative review, I hired my current attorney, Howard Bennett Hellen ("Mr. Hellen") to write a letter of appeal to HARTFORD. Mr. Hellen's appeal letter, dated October 28, 2002, has already been attached to my earlier Declarations, to the Complaint, and to many of the papers filed in this action, including HARTFORD's own purported "Administrative Record". In that letter were set forth the events preceding that date, as well as reasons as to why the LTD benefits should have been allowed under the Continuity of Coverage Provision. Despite all this, HARTFORD ignored all of my specific points, and chose instead to fail and refuse to respond to my appeal letter on a timely basis, or at all, in any meaningful way that would allow me to know whether it was upholding the denial or not.

8.     Finally, left with no other choice, I asked Mr. Hellen to file suit. He filed suit in late March of 2003, about a month and a half after the last ERISA deadline for HARTFORD to respond to my appeal (on or about February 12, 2003) expired.

9.     There are several inaccuracies contained in HARTFORD's Motion for Summary Judgment that I am required to correct. First, HARTFORD once again states, for at least the third time in this case, that I applied for long-term disability benefits *because* I was being laid off. This is outrageous. I applied for disability benefits because my Multiple Sclerosis had gotten to the point where I could no longer perform the functions of my position. My application had nothing to do with the "layoff", and the "layoff" did not divest me from eligibility for LTD benefits.

10.     In response to statements made by HARTFORD in its Motion, in which it asserts that there is "no evidence" of a prior plan policy, I already have provided to this Court, and to HARTFORD during my appeal, the memo from July, 2000, from Ms. Lisa Scibilia of UROMED stating affirmatively that the preexisting condition exclusion was waived due to my prior coverage. Once again, this memo came to me prior to my even applying for LTD benefits.

-3-

1    11.    I have found additional evidence in my records of the existence of this prior
2    coverage. This evidence was already presented in my Declaration in support of my Motion for
3    Summary Judgement Re: Standard of Review, as well as in my Declaration in support of my Motion
4    to Compel further Responses to Discovery, but it will be restated and resubmitted here, in the
5    following paragraphs.

6    12.    A memo dated June 28, 2002 from Jill R. Welch of NOMOS, one of the
7    predecessors to UROMED with which I was an employee, is attached hereto as Exhibit "B". Said
8    letter clearly sates that I was a covered employee under the Radiation Oncology Computer System's
9    (the predecessor to Prowess Systems) long term disability plan through UNUM from
10   October 1, 1999 through November 30, 2000. In that letter Ms. Welch states in an additional
11   handwritten note to me "Gil, I couldn't find a benefit booklet, maybe you can attach the memo you
12   have to this letter.... Jill". It is clear that I was covered by a UNUM LTD policy with
13   Prowess/SSGI. This adds to the evidence already provided in the form of Ms. Scibilia-Tracey's
14   memo. Although I cannot find a copy of the precise LTD component of the UNUM plan, I have
15   found a copy of the UNUM Group Life and Accidental Death Plan for Prowess/SSGI which went
16   along with the LTD Plan. A copy of that Policy is attached for general reference as Exhibit "C". It
17   should be noted that I cannot locate Ms. Welch; however, I stand by my assertion that I did in fact
18   communicate with her as evidenced by the attached Exhibits.

19   13.    A true and correct copy of a memo from Prowess Systems (also known for a time
20   as "SSGI") is attached hereto as Exhibit "D". That memo, entitled "Insurance and Benefits (as of
21   November 2000)", also confirms the existence of LTD benefits (see second paragraph on the first
22   page of Exhibit "D").

23   14.    Yet further, a true and correct copy of a memo from ROCS (the name of my
24   employer prior to Prowess/SSGI) dated July 23, 1997, is attached hereto as Exhibit "E". That
25   memo, signed by Lynn Swenson of the benefits division of Human Resources, clearly states that "all
26   ROCS employees are enrolled in the UNUM Long Term Disability Base Plan. I cannot locate Ms.

27                                              -4-

28

1  Swenson. I naturally opted for this plan, as evidenced by the copy of the UNUM policy and the

2  other, later-dated memos from my employers referred to above and attached hereto as Exhibits "A"

3  through "D".

4      15.    Still further, a true and correct copy of a letter on Uromed letterhead directed to

5  "All UroMed Employees", of which I was one on April 1, 2000, the date referenced in this letter,

6  is attached hereto as Exhibit "F". This letter clearly stated that my long-term disability coverage was

7  switching over from UNUM ("The Provident", part of UNUM/Provident Corporation) effective

8  April 1, 2000. The attachment page to that letter, headed "UROMED CORPORATION: The

9  Hartford Long Term Disability Benefits Summary", clearly states, under the heading "Benefit

10  Provision", and under the category "Pre-Existing Condition Limitation", the following:

11      "   3/3/12 (applies only to new employees").

12      I was an existing employee and not a "new" employee. Also, note that the memo directs all

13  employees, including me, to "send both forms back to Lisa Scibilia". Ms. Scibila is the UROMED

14  employee who wrote me the e-mail referred to above, reconfirming waiver of the preexisting

15  condition exclusion.

16      16.    Yet further, a true and correct copy of a booklet I received from SSGI (aka

17  Prowess Systems) entitled "Employee Benefits Review for SSGI, Inc." dated February 10, 2000,

18  consisting of four (4) pages, is attached hereto as Exhibit "G". The "NOTICE" clearly states that

19  the summary of benefits provided thorough SSGI as plan sponsor included UNUM benefits. The

20  contents of this booklet state that I was receiving coverage from UNUM through SSGI, specifically

21  including LTD coverage.

22      17.    I have presented not less than seven (7) pieces of documentary evidence

23  proving that I was in fact covered by a prior plan, and that the continuity of coverage provision

24  should have been applied by HARTFORD in this case.

25      18.    Although HARTFORD produced one (1) memo in which it asked whether I was

26  covered by my prior employer and/or by a prior LTD policy, that memo does not indicate that

27      -5-

28

HARTFORD ever followed up or received an actual answer to its inquiry. A copy of this inquiry memo is attached hereto as Exhibit "I".

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED:

_____
GIL CAPIANCO

-6-

# nomos

June 28, 2002

To Whom It May Concern:

Please allow this letter to serve as verification that Gilbert Capianco was a covered employee under Radiation Oncology Computer Systems' long term disability plan through UNUM from October 1, 1999 until November 30, 2000.

Sincerely,

Jill R. Welch
Jill R. Welch
Human Resources Manager

Gil,
I couldn't find a benefit booklet. maybe you can attach the memo you have to this letter.

Jill





**EXHIBIT**

B

# SSGI

Your Policy Number: 530009-011

# Your Group Life & Accidental Death and Dismemberment Plan

2/99

EXHIBIT

C

# CERTIFICATE OF COVERAGE

UNUM Life Insurance Company of America (referred to as UNUM) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

UNUM has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult UNUM's claims paying office. UNUM will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of UNUM can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

UNUM Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

CC.FP-2     CC.FP-1   (10/1/1998)

1

# TABLE OF CONTENTS

CERTIFICATE OF COVERAGE..................................................CC-FP-1

BENEFITS AT A GLANCE....................................................B@G-LIFE-1

LIFE INSURANCE PLAN.......................................................B@G-LIFE-1

BENEFITS AT A GLANCE.....................................................B@G-AD&D-1

ACCIDENTAL DEATH AND DISMEMBERMENT
INSURANCE PLAN...........................................................B@G-AD&D-1

GENERAL PROVISIONS.......................................................EMPLOYEE-1

WHAT IS THE CERTIFICATE OF COVERAGE...................EMPLOYEE-1

WHEN ARE YOU ELIGIBLE FOR COVERAGE....................EMPLOYEE-2

WHEN DOES YOUR COVERAGE BEGIN............................EMPLOYEE-3

WHAT IF YOU ARE ABSENT FROM WORK ON THE
DATE YOUR COVERAGE WOULD NORMALLY
BEGIN..........................................................................EMPLOYEE-4

ONCE YOUR COVERAGE BEGINS, WHAT
HAPPENS IF YOU ARE NOT WORKING DUE TO
INJURY OR SICKNESS....................................................EMPLOYEE-4

ONCE YOUR COVERAGE BEGINS, WHAT
HAPPENS IF YOU ARE TEMPORARILY NOT
WORKING.....................................................................EMPLOYEE-4

ONCE YOUR COVERAGE BEGINS, WHAT
HAPPENS IF YOU ARE NOT WORKING DUE TO A
LABOR DISPUTE INVOLVING YOUR EMPLOYER...........EMPLOYEE-4

WHEN WILL CHANGES TO YOUR COVERAGE
TAKE EFFECT...............................................................EMPLOYEE-5

WHEN DOES YOUR COVERAGE END...............................EMPLOYEE-6

WHAT ARE THE TIME LIMITS FOR LEGAL
PROCEEDINGS.............................................................EMPLOYEE-6

HOW CAN STATEMENTS MADE IN YOUR
APPLICATION FOR THIS COVERAGE BE USED...........EMPLOYEE-6

HOW WILL UNUM HANDLE INSURANCE FRAUD............EMPLOYEE-7

DOES THE SUMMARY OF BENEFITS REPLACE OR
AFFECT ANY WORKERS' COMPENSATION OR

STATE DISABILITY INSURANCE....................................EMPLOYEE-7

DOES YOUR EMPLOYER ACT AS YOUR AGENT
OR UNUM'S AGENT.......................................................EMPLOYEE-8

LIFE INSURANCE...............................................................LIFE-GI-1

GENERAL INFORMATION...................................................LIFE-GI-1

WHAT GROUP(S) OF EMPLOYEES ARE ELIGIBLE
FOR COVERAGE...............................................................LIFE-GI-1

HOW MANY HOURS MUST YOU WORK TO BE
ELIGIBLE FOR COVERAGE................................................LIFE-GI-1

WHAT IS YOUR WAITING PERIOD.......................................LIFE-GI-1

WHO PAYS FOR YOUR COVERAGE......................................LIFE-GI-1

BENEFIT INFORMATION...................................................LIFE-BEN-1

WHEN WILL YOUR BENEFICIARY RECEIVE
PAYMENT.....................................................................LIFE-BEN-1

WHAT DOCUMENTS ARE REQUIRED FOR PROOF
OF DEATH....................................................................LIFE-BEN-1

HOW MUCH WILL UNUM PAY YOUR BENEFICIARY
IF UNUM APPROVES YOUR DEATH CLAIM...................LIFE-BEN-1

WHAT ARE YOUR ANNUAL EARNINGS.............................LIFE-BEN-1

WHAT WILL WE USE FOR ANNUAL EARNINGS IF
YOU BECOME DISABLED DURING A COVERED
LAYOFF OR LEAVE OF ABSENCE...................................LIFE-BEN-2

WHAT HAPPENS TO YOUR LIFE INSURANCE
COVERAGE IF YOU BECOME DISABLED........................LIFE-BEN-2

HOW LONG MUST YOU BE DISABLED BEFORE
YOU ARE ELIGIBLE TO HAVE LIFE PREMIUMS
WAIVED.......................................................................LIFE-BEN-2

WHEN WILL YOUR LIFE INSURANCE PREMIUM
WAIVER BEGIN.............................................................LIFE-BEN-2

WHEN WILL YOUR LIFE INSURANCE PREMIUM
WAIVER END.................................................................LIFE-BEN-3

HOW DOES UNUM DEFINE DISABILITY............................LIFE-BEN-4

WHAT INSURANCE IS AVAILABLE WHILE YOU ARE

SATISFYING THE DISABILITY REQUIREMENTS? (SEE CONVERSION PRIVILEGE) ............ LIFE-BEN-5

WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (CONVERSION PRIVILEGE) ............ LIFE-BEN-6

WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (CONVERSION PRIVILEGE) ............ LIFE-BEN-7

WHAT CONVERSION IS AVAILABLE TO YOU IF YOU ARE TOTALLY DISABLED ON THE DATE THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (CONVERSION PRIVILEGE) ............ LIFE-BEN-8

WILL UNUM ACCELERATE YOUR DEATH BENEFIT FOR THE PLAN IF YOU BECOME TERMINALLY ILL? (ACCELERATED BENEFIT) ............ LIFE-BEN-8

WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN ............ LIFE-BEN-10

OTHER BENEFIT FEATURES ............ LIFE-OTR-1

WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (PORTABILITY) ............ LIFE-OTR-1

CLAIM INFORMATION ............ LIFE-CLM-1

WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM ............ LIFE-CLM-1

HOW DO YOU FILE A CLAIM FOR A DISABILITY ............ LIFE-CLM-1

WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM ............ LIFE-CLM-2

HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (BENEFICIARY DESIGNATION) ............ LIFE-CLM-4

HOW WILL UNUM MAKE PAYMENTS ............ LIFE-CLM-5

WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM ............ LIFE-CLM-5

WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (ASSIGNABILITY RIGHTS) ............ LIFE-CLM-6

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE ............ AD&D-GI-1

GENERAL INFORMATION ............ AD&D-GI-1

WHAT GROUP(S) OF EMPLOYEES ARE ELIGIBLE FOR COVERAGE ............ AD&D-GI-1

HOW MANY HOURS MUST YOU WORK TO BE ELIGIBLE FOR COVERAGE ............ AD&D-GI-1

WHAT IS YOUR WAITING PERIOD ............ AD&D-GI-1

WHO PAYS FOR YOUR COVERAGE ............ AD&D-GI-1

BENEFIT INFORMATION ............ AD&D-BEN-1

WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT ............ AD&D-BEN-1

WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH ............ AD&D-BEN-1

WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT ............ AD&D-BEN-1

HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR CERTAIN OTHER COVERED LOSSES ............ AD&D-BEN-1

WHAT ARE YOUR ANNUAL EARNINGS ............ AD&D-BEN-3

WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE ............ AD&D-BEN-4

WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE ............ AD&D-BEN-4

WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE ............ AD&D-BEN-4

WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN ............ AD&D-BEN-6

WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD ............ AD&D-BEN-7

WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN ............ AD&D-BEN-7

OTHER BENEFIT FEATURES..................................AD&D-OTR-1

WHAT COVERAGE IS AVAILABLE IF YOU END
EMPLOYMENT OR YOU WORK REDUCED HOURS?
(PORTABILITY)..................................................AD&D-OTR-1

CLAIM INFORMATION...........................................AD&D-CLM-1

WHEN DO YOU OR YOUR AUTHORIZED
REPRESENTATIVE NOTIFY UNUM OF A CLAIM...........AD&D-CLM-1

HOW DO YOU FILE A CLAIM FOR A COVERED
LOSS...............................................................AD&D-CLM-1

WHAT INFORMATION IS NEEDED AS PROOF OF
CLAIM..............................................................AD&D-CLM-2

HOW DO YOU DESIGNATE OR CHANGE A
BENEFICIARY? (BENEFICIARY DESIGNATION)...........AD&D-CLM-3

HOW WILL UNUM MAKE PAYMENTS......................AD&D-CLM-4

WHAT HAPPENS IF UNUM OVERPAYS YOUR
CLAIM..............................................................AD&D-CLM-5

WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR
THE DEATH BENEFITS UNDER YOUR
ACCIDENTAL DEATH AND DISMEMBERMENT
INSURANCE BENEFITS? (ASSIGNABILITY
RIGHTS)...........................................................AD&D-CLM-5

STATE REQUIREMENTS........................................STATE REQ-1

ERISA..............................................................ERISA-1

SUMMARY PLAN DESCRIPTION.............................ERISA-1

GLOSSARY.......................................................GLOSSARY-1

---

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your
beneficiary(ies) by paying a benefit in the event of your death. The
amount your beneficiary(ies) receive(s) is based on the amount of
coverage in effect just prior to the date of your death according to
the terms and provisions of the plan.

**EMPLOYER'S ORIGINAL PLAN
EFFECTIVE DATE:**  October 1, 1998

**IDENTIFICATION
NUMBER:**  530009 011

**ELIGIBLE GROUP(S):**

All Employees in active employment

**MINIMUM HOURS REQUIREMENT:**

Employees must be working at least 30 hours per week.

**WAITING PERIOD:**

For employees in an eligible group on or before October 1,
1998:  None

For employees entering an eligible group after October 1,
1998:  First of the month coincident with or next following 1
month of continuous active employment

**ELIMINATION PERIOD:**

Premium Waiver: 180 days

Disability-based benefits begin the day after UNUM
approves your claim and the elimination period is completed.

## LIFE INSURANCE BENEFIT:

AMOUNT OF LIFE INSURANCE FOR YOU

$15,000

AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED

If you have reached age 70, but not age 75, your amount of life insurance will be:
- 65% of the amount of life insurance you had prior to age 70; or
- 65% of the amount of life insurance shown above if you become insured on or after age 70 but before age 75.

There will be no further increases in your amount of life insurance.

If you have reached age 75 or more, your amount of life insurance will be:
- 50% of the amount of life insurance you had prior to your first reduction; or
- 50% of the amount of life insurance shown above if you become insured on or after age 75.

There will be no further increases in your amount of life insurance.

SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.

OTHER FEATURES:

Accelerated Benefit

Conversion

Noncontributory

Portability

The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.

B@G-LIFE-2 (10/1/1998)

8

---

# BENEFITS AT A GLANCE

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PLAN

This accidental death and dismemberment insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death or for you in the event of any other covered loss. The amount you or your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death or any other covered loss according to the terms and provisions of the plan.

EMPLOYER'S ORIGINAL PLAN
EFFECTIVE DATE: October 1, 1998

IDENTIFICATION
NUMBER: 530009 011

ELIGIBLE GROUP(S):

All Employees in active employment

MINIMUM HOURS REQUIREMENT:

Employees must be working at least 30 hours per week.

WAITING PERIOD:

For employees in an eligible group on or before October 1, 1998: None

For employees entering an eligible group after October 1, 1998: First of the month coincident with or next following 1 month of continuous active employment

ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT:

AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT
(AD&D) INSURANCE FOR YOU (FULL AMOUNT)

$15,000

AMOUNT OF ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED

B@G-AD&D-1 (10/1/1998)

9

If you have reached age 70, but not age 75, your amount of AD&D insurance will be:
- 65% of the amount of AD&D insurance you had prior to age 70; or
- 65% of the amount of AD&D insurance shown above if you become insured on or after age 70 but before age 75.

There will be no further increases in your amount of AD&D insurance.

If you have reached age 75 or more, your amount of AD&D insurance will be:
- 50% of the amount of AD&D insurance you had prior to your first reduction; or
- 50% of the amount of AD&D insurance shown above if you become insured on or after age 75.

There will be no further increases in your amount of AD&D insurance.

## REPATRIATION BENEFIT FOR YOU

Maximum Benefit Amount:

Up to $5,000

The Repatriation Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Repatriation Benefit, your accidental death benefit must be paid first.

## SEATBELT(S) AND AIR BAG BENEFIT FOR YOU

Maximum Benefit Payment:

Seatbelt(s):     $10,000

Air bag:         $5,000

The Seatbelt(s) and Air Bag Benefit is separate from any accidental death and dismemberment benefit which may be payable. To receive the Seatbelt(s) and Air Bag Benefit, your accidental death benefit must be paid first.

## EDUCATION BENEFIT

Each Qualified Child

Benefit Amount per Academic Term for which a Qualified Child is enrolled:

The lesser of:
- 12.5% of the Full Amount of the employee's accidental death and dismemberment insurance; or
- $12,500

Maximum Benefit Payments:

8 per lifetime

Maximum Benefit Amount:

$100,000

Maximum Benefit Period:

6 years from the date the first benefit payment has been made.

The Education Benefit is separate from any accidental death and dismemberment benefit which may be payable. In order for your Qualified Child to receive the Education Benefit, your accidental death benefit must be paid first.

## SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.

## OTHER FEATURES:

Noncontributory

Portability

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.**

# GENERAL PROVISIONS

## WHAT IS THE CERTIFICATE OF COVERAGE?

This certificate of coverage is a written statement prepared by UNUM and may include attachments. It tells you:

- the coverage for which you may be entitled;
- to whom UNUM will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

Throughout this certificate:

**YOU** means an employee who is eligible for UNUM coverage.

**WE, US** and **OUR** mean UNUM Life Insurance Company of America.

**EMPLOYEE** means a citizen or permanent resident of the United States or Canada who is in active employment in the United States with the Employer unless an exception is applied for and approved in writing by UNUM.

**EMPLOYER** means the Employer/Applicant named in the Application for Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**INSURED** means any person covered under a plan.

**PLAN** means a line of coverage under the Summary of Benefits.

## WHEN ARE YOU ELIGIBLE FOR COVERAGE?

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period.**

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in **active employment** in an eligible group before you are eligible for coverage under a plan.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment. Temporary and seasonal workers are excluded from coverage.

## WHEN DOES YOUR COVERAGE BEGIN?

When your Employer pays 100% of the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date UNUM approves your evidence of insurability form, if **evidence of insurability** is required.

When you and your Employer share the cost of your coverage under a plan or when you pay 100% of the cost yourself, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date UNUM approves your evidence of insurability form, if evidence of insurability is required.

---

*EVIDENCE OF INSURABILITY means a statement of your medical history which UNUM will use to determine if you are approved for coverage. Evidence of insurability will be provided at your expense if you apply for coverage more than 31 days after your eligibility date.*

---

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or
- voluntarily cancelled your coverage and are reapplying.

An evidence of insurability form can be obtained from your Employer.

## WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence, your coverage will begin on the date you return to active employment.

## ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date.

## ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary layoff, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

---

*LAYOFF or LEAVE OF ABSENCE means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.*

*Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.*

---

## ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO A LABOR DISPUTE INVOLVING YOUR EMPLOYER?

If you are not working due to a labor dispute involving your Employer, and if premium is paid, coverage will be continued until:

- the expiration of 6 months from the date you ceased active employment;
- the date you accept active employment with another Employer; or
- the date less than seventy-five percent (75%) of the employees affected by the labor dispute are continuing insurance;

whichever occurs first.

To keep your insurance in force, you must pay, on time, to your Employer or Union, an amount equal to 120% of the required premium during the continuation. Your Employer or Union will forward your premium to us.

**WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?**

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date UNUM approves your evidence of insurability form, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

PAYABLE CLAIM means a claim for which UNUM is liable under the terms of the Summary of Benefits.

**WHEN DOES YOUR COVERAGE END?**

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a labor dispute or due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

UNUM will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

**WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?**

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

**HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?**

UNUM considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

We will use only statements made in a signed application or an evidence of insurability form as a basis for doing this.

UNUM can take action only in the first 2 years coverage is in force.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and
- make a fair adjustment of the premium.

## HOW WILL UNUM HANDLE INSURANCE FRAUD?

UNUM wants to ensure you and your Employer do not incur additional insurance costs as a result of the under-mining effects of insurance fraud. UNUM promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive UNUM, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as sub-mission of materially false information, will result in denial of your claim, and are subject to prosecution and punish-ment to the full extent under state and/or federal law. UNUM will pursue all appropriate legal remedies in the event of insurance fraud.

## DOES THE SUMMARY OF BENEFITS REPLACE OR AFFECT ANY WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE?

The Summary of Benefits does not replace or affect the requirements for coverage by any workers' compensation or state disability insurance.

## DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of UNUM.

# LIFE INSURANCE

## GENERAL INFORMATION

### WHAT GROUP(S) OF EMPLOYEES ARE ELIGIBLE FOR COVERAGE?

The eligible group(s) are:

All Employees in active employment

### HOW MANY HOURS MUST YOU WORK TO BE ELIGIBLE FOR COVERAGE?

You must be working at least 30 hours per week.

### WHAT IS YOUR WAITING PERIOD?

If you are in an eligible group on or before October 1, 1998: None

If you are entering an eligible group after October 1, 1998: First of the month coincident with or next following 1 month of continuous active employment

#### Rehire

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

#### Credit Prior Service

UNUM will apply any prior period of work with your Employer toward the waiting period to determine your eligibility date.

### WHO PAYS FOR YOUR COVERAGE?

Your Employer pays the cost of your coverage.

# LIFE INSURANCE

## BENEFIT INFORMATION

### WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?

Your beneficiary(ies) will receive payment when UNUM approves your death claim.

### WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?

UNUM will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?

UNUM will determine the payment according to the amount of insurance shown in the LIFE INSURANCE "BENEFITS AT A GLANCE" page.

### WHAT ARE YOUR ANNUAL EARNINGS?

"Annual Earnings" means your average annual income as figured:

a. from the income box on your W-2 form which reflects wages, tips and other compensation received from your Employer for the calendar year just prior to the date of loss; or

b. for the period of your employment with your Employer if you did not receive a W-2 form prior to the date of loss.

Average annual income is your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from bonuses, car, housing or moving allowance, Employer contributions to a qualified deferred compensa-

tion plan or income received from sources other than your Employer.

## WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

## WHAT HAPPENS TO YOUR LIFE INSURANCE COVERAGE IF YOU BECOME DISABLED?

Your life insurance coverage may be continued for a specific time and your life insurance premium will be waived if you qualify as described below.

## HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO HAVE LIFE PREMIUMS WAIVED?

You must be disabled through your elimination period.

Your elimination period is 180 days.

> **ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to have your life premium waived by UNUM.

## WHEN WILL YOUR LIFE INSURANCE PREMIUM WAIVER BEGIN?

Your life insurance premium waiver will begin when we approve your claim, if the elimination period has ended and you meet the following conditions. Your Employer may continue premium payments until UNUM notifies your

Employer of the date your life insurance premium waiver begins.

Your life insurance premium will be waived if you meet these conditions:

- you are less than 60 and insured under the plan.
- you become disabled and remain disabled during the elimination period.
- you meet the notice and proof of claim requirements for disability while your life insurance is in effect or within three months after it ends.
- your claim is approved by UNUM.

After we approve your claim, UNUM does not require further premium payments for you while you remain disabled according to the terms and provisions of the plan.

Your life insurance amount will not increase while your life insurance premiums are being waived. Your life insurance amount will reduce or cease at any time it would reduce or cease if you had not been disabled.

## WHEN WILL YOUR LIFE INSURANCE PREMIUM WAIVER END?

The life insurance premium waiver will automatically end if:

- you recover and you no longer are disabled;
- you fail to give us proper proof that you remain disabled;
- you refuse to have an examination by a doctor chosen by UNUM; or
- you reach age 65 or your retirement date, whichever occurs first.

You will not be considered retired or reaching your retirement date if you are receiving disability payments under:

- the United States Social Security Act; or
- any similar **law**, **plan or act**; or
- your Employer's **Retirement Plan**.

However, you will be considered retired if you are receiving retirement benefits.

LAW, PLAN OR ACT means the original enactments of the law, plan or act and all amendments.

RETIREMENT PLAN means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by post tax or employee contributions, as that term is used in the Internal Revenue Code of 1986, as amended.

## HOW DOES UNUM DEFINE DISABILITY?

You are disabled when UNUM determines that:

- during the elimination period, you are not working in any occupation due to your injury or sickness; and
- after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are or become reasonably fitted by training, education or experience and which disability is, in fact, preventing you from engaging in any employment or occupation for wage or profit.

INJURY means a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the plan.

SICKNESS means an illness or disease. Disability must begin while you are covered under the plan.

GAINFUL OCCUPATION means an occupation that within 12 months of your return to work is or can be expected to provide you with an income that is at least equal to 60% of your annual earnings in effect just prior to the date your disability began.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a doctor, other medical practitioner or vocational expert of our choice. UNUM will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized UNUM Representative.

## APPLYING FOR LIFE INSURANCE PREMIUM WAIVER

Ask your Employer for a life insurance premium waiver claim form.

The form has instructions on how to complete and where to send the claim.

## WHAT INSURANCE IS AVAILABLE WHILE YOU ARE SATISFYING THE DISABILITY REQUIREMENTS? (See Conversion Privilege)

You may use this life conversion privilege when your life insurance terminates while you are satisfying the disability requirements. Please refer to the conversion privilege below. You are not eligible to apply for this life conversion if you return to work and, again, become covered under the plan.

If an individual life insurance policy is issued to you, any benefit for your death under this plan will be paid only if the individual policy is returned for surrender to UNUM. UNUM will refund all premiums paid for the individual policy.

The amount of your death benefit will be paid to your named beneficiary for the plan. If, however, you named a different beneficiary for the individual policy and the policy is returned to UNUM for surrender, that different beneficiary will not be paid.

If you want to name a different beneficiary for this group plan, you must change your beneficiary as described in the Beneficiary Designation page of this group plan.

## WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)

When coverage ends under the plan, you can convert your coverage to an individual life policy, without evidence of insurability. The maximum amount that you can convert is the amount you are insured for under the plan. You may convert a lower amount of life insurance.

You must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by UNUM. You may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

## WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

You may convert a limited amount of life insurance if you have been insured under your Employer's group plan with UNUM for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with UNUM; or
- changes so that you no longer are eligible.

The individual life policy maximum will be the lesser of:

- $10,000; or
- your coverage amount under the plan less any amount that becomes available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

### PREMIUMS

Premiums for the converted insurance will be based on:

- your then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- UNUM's customary rates in use at that time; and
- the class of risk to which you belong.

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

### DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD

If you die within the 31 day conversion application period, UNUM will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

# APPLYING FOR CONVERSION

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

UNUM - Individual Life Administration
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

## WHAT CONVERSION IS AVAILABLE TO YOU IF YOU ARE TOTALLY DISABLED ON THE DATE THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

If you are totally disabled on the date the Summary of Benefits or the plan is cancelled, you have the same life conversion privilege on the date your insurance terminates as that provided for you when you end employment. The maximum life amount that may be converted is the amount in effect on the date the insurance terminates. But there is no conversion for any life amount for which you become insured under any replacement coverage.

## WILL UNUM ACCELERATE YOUR DEATH BENEFIT FOR THE PLAN IF YOU BECOME TERMINALLY ILL? (Accelerated Benefit)

If you become terminally ill while you are insured by the plan, UNUM will pay you a portion of your life insurance benefit one time. The payment will be based on 50% of your life insurance amount. However, the one-time benefit paid will not be greater than $500,000.

Your right to exercise this option and to receive payment is subject to the following:

- you request this election, in writing, on a form acceptable to UNUM;
- you must be terminally ill at the time of payment of the Accelerated Benefit;

- your doctor must certify, in writing, that you are terminally ill and your life expectancy has been reduced to less than 12 months; and
- the doctor's certification must be deemed satisfactory to UNUM.

The Accelerated Benefit is available on a voluntary basis. Therefore, you are not eligible for benefits if:

- you are required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- you are required by a government agency to use this benefit in order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance unless you qualify to have your life premium waived.

If you have assigned your rights under the plan to an assignee or made an irrevocable beneficiary designation, UNUM must receive consent, in writing, that the assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment on your behalf in a form acceptable to UNUM before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit that has been paid; and
- any amount of life insurance that would be continued under a disability continuation provision or that may be available under the conversion privilege will be reduced by the amount of the Accelerated Benefit paid. The remaining life insurance amount will be paid according to the terms of the Summary of Benefits subject to any reduction and termination provisions.

Benefits paid may be taxable. UNUM is not responsible for any tax or other effects of any benefit paid. As with all tax matters, you should consult your personal tax advisor to assess the impact of this benefit.

## LIFE INSURANCE

### WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any losses where death is caused by, contributed to by, or results from:

- suicide occurring within 24 months after your initial effective date of insurance; and
- suicide occurring within 24 months after the date any increases or additional insurance becomes effective for you.

The suicide exclusion will apply to any amounts of insurance for which you pay all or part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of insurability requirements and UNUM approves the evidence of insurability form and the amount you applied for at that time.

## LIFE INSURANCE

### OTHER BENEFIT FEATURES

#### WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself.

#### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all UNUM group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000. If the current amounts under the plan are less than $5,000, you may port the lesser amounts.

Your amount of life insurance will reduce or cease at any time it would reduce or cease for your eligible group if you had continued in active employment with your Employer.

# APPLYING FOR PORTABLE COVERAGE

You must apply for portable coverage for yourself and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

You are not eligible to apply for portable coverage for yourself if:

- you have an **injury** or **sickness**, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

*INJURY means a bodily injury that is the direct result of an accident and not related to any other cause.*

*SICKNESS means an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.*

If we determine that because of an injury or sickness, which has a material effect on life expectancy, you were not eligible for portability at the time you elected portable coverage, the benefit will be adjusted to the amount of coverage the premium would have purchased under the Conversion Privilege.

# APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You may increase or decrease the amount of life insurance coverage. The minimum and maximum benefit amounts are shown above. However, the amount of life insurance coverage cannot be decreased below $5,000. All increases are subject to evidence of insurability. Portable coverage will reduce at the ages and amounts shown in the LIFE INSURANCE "BENEFITS AT A GLANCE" page.

# WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

If portable coverage ends due to a failure to pay required premium, portable coverage cannot be reinstated.

# PREMIUM RATE CHANGES FOR PORTABLE COVERAGE

UNUM may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to UNUM's underwriting risk studies. UNUM will notify the insured in writing at least 31 days before a premium rate is changed.

If you are not eligible to apply for portable coverage or
portable coverage ends, then you may qualify for conver-
sion coverage. Refer to Conversion Privilege under this
plan.

Ask your Employer for a conversion application form which
includes cost information.

When you complete the application, send it with the first
premium amount to:

UNUM - Individual Life Administration
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

---

# LIFE INSURANCE

# CLAIM INFORMATION

## WHEN DO YOU OR YOUR AUTHORIZED REPRESENTA-
## TIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to
notify us as soon as possible, so that a claim decision can
be made in a timely manner.

If a claim is based on your disability, written notice and
proof of claim must be sent no later than 90 days after the
end of the elimination period.

If a claim is based on death, written notice and proof of
claim must be sent no later than 90 days after the date of
death.

If it is not possible to give proof within these time limits, it
must be given no later than 1 year after the proof is
required as specified above. These time limits will not
apply during any period you or your authorized represen-
tative lacks the legal capacity to give us proof of claim.

The claim form is available from your Employer, or you or
your authorized representative can request a claim form
from us. If you or your authorized representative does not
receive the form from UNUM within 15 days of the request,
send UNUM written proof of claim without waiting for the
form.

If you have a disability, you must notify us immediately
when you return to work in any capacity, regardless of
whether you are working for your Employer.

## HOW DO YOU FILE A CLAIM FOR A DISABILITY?

You or your authorized representative, and your Employer
must fill out your own sections of the claim form and then
give it to your attending doctor. Your doctor should fill out
his or her section of the form and send it directly to UNUM.

## WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

If your claim is based on your disability, your proof of claim, provided at your expense, must show:

- that you are under the **regular care** of a **doctor**;
- the date your disability began;
- the cause of your disability;
- the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or any gainful occupation; and
- the name and address of any **hospital or institution** where you received treatment, including all attending doctors.

*REGULAR CARE* means:

- *you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and*
- *you are receiving the most appropriate treatment and care which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.*

*DOCTOR* means:

- *a person performing tasks that are within the limits of his or her medical license; and*
- *a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or*
- *a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or*
- *a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.*

UNUM will not recognize you, or your spouse, children, parents or siblings as a doctor for a claim that you send to us.

*HOSPITAL OR INSTITUTION* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

We may request that you send proof of continuing disability indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

If claim is based on death, proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give UNUM authorization to obtain additional medical and non-medical information as part of your proof of claim or proof of continuing disability. UNUM will deny your claim if the appropriate information is not submitted.

## HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by UNUM with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, UNUM has the right to make payment to the first surviving family members of the family listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, UNUM may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies UNUM's legal duty to the extent of that payment and UNUM will not have duty to make payment again.

Also, at UNUM's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

## HOW WILL UNUM MAKE PAYMENTS?

If your life claim is at least $10,000, UNUM will make available to the beneficiary a **retained asset account** (the UNUM Security Account).

> **RETAINED ASSET ACCOUNT** is an interest bearing account established at an intermediary bank in the name of your beneficiary, as owner.

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by UNUM.

If the life claim is less than $10,000, UNUM will pay it in one lump sum to your beneficiary.

Also, your beneficiary may request the life claim to be paid according to one of UNUM's other settlement options. This request must be in writing in order to be paid under UNUM's other settlement options.

## WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

UNUM has the right to recover any overpayments due to:

- fraud; and
- any error UNUM makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

UNUM will not recover more money than the amount we paid you.

## WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (Assignability Rights)

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and accept- able to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

---

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## GENERAL INFORMATION

### WHAT GROUP(S) OF EMPLOYEES ARE ELIGIBLE FOR COVERAGE?

The eligible group(s) are:

All Employees in active employment

### HOW MANY HOURS MUST YOU WORK TO BE ELIGIBLE FOR COVERAGE?

You must be working at least 30 hours per week.

### WHAT IS YOUR WAITING PERIOD?

If you are in an eligible group on or before October 1, 1998: None

If you are entering an eligible group after October 1, 1998: First of the month coincident with or next following 1 month of continuous active employment

### Rehire

If your employment ends and you are rehired within 1 year, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

### Credit Prior Service

UNUM will apply any prior period of work with your Employer toward the waiting period to determine your eli- gibility date.

### WHO PAYS FOR YOUR COVERAGE?

Your Employer pays the cost of your coverage.

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## BENEFIT INFORMATION

### *WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT IN THE EVENT OF YOUR DEATH IF YOUR DEATH IS THE DIRECT RESULT OF AN ACCIDENT?*

Your beneficiary(ies) will receive payment when UNUM approves your death claim providing you meet certain conditions.

### *WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF ACCIDENTAL DEATH?*

UNUM will require a certified copy of the death certificate, enrollment documents and Notice of Proof of Claim form.

### *WHEN WILL YOU RECEIVE PAYMENT IN THE EVENT OF CERTAIN OTHER COVERED LOSSES IF THE LOSS IS THE DIRECT RESULT OF AN ACCIDENT?*

You will receive payment when UNUM approves the claim.

### *HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IN THE EVENT OF YOUR ACCIDENTAL DEATH OR YOU FOR CERTAIN OTHER COVERED LOSSES?*

If UNUM approves the claim, UNUM will determine the payment according to the Covered Losses and Benefits List below. The benefit UNUM will pay is listed opposite the corresponding covered loss.

The benefit will be paid only if:

- death occurs within 365 days from the date of the accident; or
- the **accidental bodily injury(ies)** results in one or more of the covered losses listed below within 365 days from the date of the accident.

---

Also, the accident must occur while you are insured under the plan.

> *ACCIDENTAL BODILY INJURY means bodily harm caused by accident and not contributed to by any other cause.*

| Covered Losses | Benefit Amounts |
|---|---|
| Life | The Full Amount |
| Both Hands or Both Feet or Sight of Both Eyes | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and Sight of One Eye | The Full Amount |
| One Foot and Sight of One Eye | The Full Amount |
| One Hand or One Foot | One Half The Full Amount |
| Sight of One Eye | One Half The Full Amount |

> *LOSS OF A HAND means that all four fingers are cut off at or above the knuckles joining each to the hand.*

**LOSS OF A FOOT** means that all of the foot is cut off at or above the ankle joint.

The most UNUM will pay for any combination of Covered Losses from any one accident is the full amount.

**LOSS OF SIGHT** means the eye is totally blind and that no sight can be restored in that eye.

The Full Amount is the amount shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE "BENEFITS AT A GLANCE" page.

## WHAT ARE YOUR ANNUAL EARNINGS?

"Annual Earnings" means your average annual income as figured:

a. from the income box on your W-2 form which reflects wages, tips and other compensation received from your Employer for the calendar year just prior to the date of loss; or

b. for the period of your employment with your Employer if you did not receive a W-2 form prior to the date of loss.

Average annual income is your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from bonuses, car, housing or moving allowance, Employer contributions to a qualified deferred compensation plan or income received from sources other than your Employer.

## WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you have an accidental bodily injury that results in one or more of the covered losses while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

## WHAT REPATRIATION BENEFIT WILL UNUM PROVIDE?

UNUM will pay an additional benefit for the preparation and transportation of your body to a mortuary chosen by you or your authorized representative. Payment will be made if, as the result of a covered accident, you suffer loss of life at least 75 miles away from your principal place of residence.

However, when combined with two or more UNUM accidental death and dismemberment insurance plans, the combined overall maximum for these plans together cannot exceed the actual expenses for the preparation and transportation of your body to a mortuary.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE "BENEFITS AT A GLANCE" page.

## WHAT SEATBELT(S) AND AIR BAG BENEFIT WILL UNUM PROVIDE?

UNUM will pay you or your authorized representative an additional benefit if you sustain an accidental bodily injury which causes your death while you are driving or riding in a **Private Passenger Car**, provided:

For Seatbelt(s):

- the Private Passenger Car is equipped with seatbelt(s); and
- the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and

- the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer. A copy of the police accident report must be submitted with the claim.

Also, if such certification is not available, and it is clear that you were properly wearing seatbelt(s), then we will pay the additional seatbelt benefit.

However, if such certification is not available, and it is unclear whether you were properly wearing seatbelt(s), then we will pay a fixed benefit of $1,000.

For Air Bag:

- the Private Passenger Car is equipped with a single air bag and you are the driver; or
- the Private Passenger Car is equipped with an air bag for both the driver and an air bag for the front passenger seat and you are the driver or front seat passenger; or
- the Private Passenger Car is equipped with an air bag for the driver seat, air bag for the front passenger seat and air bags for the rear passenger seats and you are the driver, front seat passenger or rear seat passenger; and
- the seatbelt(s) must be in actual use and properly fastened at the time of the covered accident.

No benefit will be paid if you are the driver of the Private Passenger Car and do not hold a current and valid driver's license.

The accident causing your death must occur while you are insured under the plan.

The maximum benefit amount is shown in the ACCIDENTAL DEATH AND DISMEMBERMENT "BENEFITS AT A GLANCE" page.

> *PRIVATE PASSENGER CAR means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.*

## WHAT EDUCATION BENEFIT WILL UNUM PROVIDE FOR YOUR QUALIFIED CHILDREN?

UNUM will pay your authorized representative on behalf of each of your qualified children a lump sum payment if:

- you lose your life:
  • as a result of an accidental bodily injury; and
  • within 365 days after the date of the accident causing the accidental bodily injury;
- the accident causing your accidental bodily injury occurred while you were insured under the plan;
- proof is furnished to UNUM that the child is a qualified child; and
- the qualified child continues to be enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level.

The benefit amount per academic term, maximum benefit payments, maximum benefit amount and maximum benefit period are shown in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE "BENEFITS AT A GLANCE" page.

> *QUALIFIED CHILD is any of your unmarried dependent children under age 25 who, on the date*

of your death as a result of an accidental bodily injury, was either:

- enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
- at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

## WHEN WILL THE EDUCATION BENEFIT END FOR EACH QUALIFIED CHILD?

The education benefit will terminate for each qualified child on the earliest of the following dates:

- the date your qualified child fails to furnish proof as required by us;
- the date your qualified child no longer qualifies as a dependent child for any reason except your death; or
- the end of the maximum benefit period.

## WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any accidental losses caused by, contributed to, or resulting from:

- suicide, self destruction while sane, intentionally self-inflicted injury while sane, or self-inflicted injury while insane.

- active participation in a riot.
- an attempt to commit or commission of a crime under state or federal law.
- voluntary use of any controlled substance. (This is defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and all amendments.) This exclusion will not apply to you if the controlled substance is prescribed for you by a doctor.
- disease of the body, mental infirmity or diagnostic, medical or surgical treatment.
- war, declared or undeclared, or any act of war.

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

## OTHER BENEFIT FEATURES

### WHAT COVERAGE IS AVAILABLE IF YOU END EMPLOYMENT OR YOU WORK REDUCED HOURS? (Portability)

If your employment ends with or you retire from your Employer or you are working less than the minimum number of hours as described under Eligible Groups in this plan, you may elect portable coverage for yourself.

### PORTABLE INSURANCE COVERAGE AND AMOUNTS AVAILABLE

The portable insurance coverage will be the current coverage and amounts that you are insured for under your Employer's group plan.

However, the amount of portable coverage for you will not be more than:

- the highest amount of life insurance available for employees under the plan; or
- 5x your annual earnings; or
- $750,000 from all UNUM group life and accidental death and dismemberment plans combined,

whichever is less.

The amount of ported life insurance must be equal to or greater than the amount of ported accidental death and dismemberment insurance.

The minimum amount of coverage that can be ported is $5,000. If the current amounts under the plan are less than $5,000, you may port the lesser amounts.

Your amount of AD&D insurance will reduce or cease at any time it would reduce or cease for your eligible group if

you had continued in active employment with your Employer.

### APPLYING FOR PORTABLE COVERAGE

You must apply for portable coverage for yourself and pay the first premium within 31 days after the date:

- your coverage ends or you retire from your Employer; or
- you begin working less than the minimum number of hours as described under Eligible Groups in this plan.

You are not eligible to apply for portable coverage for yourself if:

- you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy;
- the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates); or
- you failed to pay the required premium under the terms of this plan.

*INJURY means a bodily injury that is the direct result of an accident and not related to any other cause.*

*SICKNESS means an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.*

### APPLYING FOR INCREASES OR DECREASES IN PORTABLE COVERAGE

You may increase or decrease the amount of AD&D insurance coverage. The minimum and maximum benefit

amounts are shown above. However, the amount of accidental death and dismemberment insurance coverage cannot be decreased below $5,000. Portable coverage will reduce at the ages and amounts shown below in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE "BENEFITS AT A GLANCE" page.

## WHEN PORTABLE COVERAGE ENDS

Portable coverage for you will end for the following reasons:

- the date you fail to pay any required premium; or
- the date the policy is cancelled (the Policy is the group policy issued to the Trustees of the Select Group Insurance Trust in which your Employer participates).

If portable coverage ends due to failure to pay required premium, portable coverage cannot be reinstated.

## PREMIUM RATE CHANGES FOR PORTABLE COVERAGE

UNUM may change premium rates for portable coverage at any time for reasons which affect the risk assumed, including those reasons shown below:

- changes occur in the coverage levels;
- changes occur in the overall use of benefits by all insureds;
- changes occur in other risk factors; or
- a new law or a change in any existing law is enacted which applies to portable coverage.

The change in premium rates will be made on a class basis according to UNUM's underwriting risk studies. UNUM will notify the insured in writing at least 31 days before a premium rate is changed.

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

# CLAIM INFORMATION

## WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on death or other covered loss, written notice and proof of claim must be sent no later than 90 days after the date of the death or the date of any other covered loss.

If a claim is based on the Education Benefit, written notice and proof of claim must be sent no later than 60 days after the date of your death.

If it is not possible to give proof within these time limits, it must be given no later than 1 year after the time proof is required as specified above. These time limits will not apply during any period you or your authorized representative lacks the legal capacity to give us proof of claim.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from UNUM within 15 days of your request, send UNUM written proof of claim without waiting for the form.

## HOW DO YOU FILE A CLAIM FOR A COVERED LOSS?

You or your authorized representative and your Employer must fill out your own sections of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to UNUM.

If claim is based on death or other covered loss, proof of claim for death or covered loss, provided at your or your authorized representative's expense, must show:

- the cause of death or covered loss;
- the extent of the covered loss;
- the date of covered loss; and
- the name and address of any **hospital or institution** where treatment was received, including all attending **doctors.**

HOSPITAL OR INSTITUTION means an accredited facility licensed to provide care and treatment for the condition causing your disability;

DOCTOR means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

UNUM will not recognize you, or your spouse, children, parents or siblings as a doctor for a claim that you send to us.

Also, in case of death, a certified copy of the death certificate must be given to us.

In some cases, you will be required to give UNUM authorization to obtain additional medical and non-medical information as part of your proof of claim. UNUM will deny your claim if the appropriate information is not submitted.

If a claim is based on the Education Benefit, proof of claim, provided at your authorized representative's expense, must show:

- the date of enrollment of your qualified child in an accredited post-secondary institution of higher learning;
- the name of the institution;
- a list of courses for the current academic term; and
- the number of credit hours for the current academic term.

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your accidental death and dismemberment insurance. You may change your beneficiary at any time by filing a form approved by UNUM with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, UNUM has the right to make payment to the first surviving family members of the family in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, UNUM may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies UNUM's legal duty to the extent of that payment and UNUM will not have to make payment again.

Also, at UNUM's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

## HOW WILL UNUM MAKE PAYMENTS?

If your accidental death or dismemberment claim is at least $10,000 UNUM will make available to you or your beneficiary a **retained asset account** (the UNUM Security Account).

> **RETAINED ASSET ACCOUNT** is an interest bearing account established at an intermediary bank in the name of you or your beneficiary, as owner.

Payment for the accidental death or dismemberment claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by UNUM.

If the accidental death or dismemberment claim is less than $10,000, UNUM will pay it in one lump sum to you or your beneficiary.

AD&D-CLM-4  (10/1/1998)

Also, your beneficiary may request the accidental death claim to be paid according to one of UNUM's other settlement options. This request must be in writing in order to be paid under UNUM's other settlement options.

The Education Benefit will be paid to your qualified child or the qualified child's legal representative.

All other benefits will be paid to you.

## WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

UNUM has the right to recover any overpayment due to:

- fraud; and
- any error UNUM makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

UNUM will not recover more money than the amount we paid you.

## WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS? (Assignability Rights)

The rights provided to you by the plan(s) for accidental death insurance benefits are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

AD&D-CLM-5  (10/1/1998)

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s)' provisions before receiving and registering an assignment.

# STATE REQUIREMENTS

## CALIFORNIA
## CONTACT NOTICE

**GENERAL QUESTIONS:** If you have any general questions about your insurance, you may contact the Insurance Company by:

**CALLING:**
1-800-421-0344 (Customer Information Call Center)

-OR-

**WRITING TO:**
UNUM Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

**COMPLAINTS:** If a complaint arises about your insurance, you may contact the Insurance Company by:

**CALLING:**
1-800-321-3889 (Compliance Center Complaint Line)

-OR-

**WRITING TO:**
Chief Compliance Officer
UNUM Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

**WHEN CALLING OR WRITING TO THE INSURANCE COMPANY, PLEASE PROVIDE YOUR INSURANCE IDENTIFICATION NUMBER.**

If the Summary of Benefits or Certificate of Coverage was issued or delivered by an agent or broker, please contact your agent or broker for assistance.

You also can contact the California Department of Insurance. However, the California Department of Insurance

should be contacted only after discussions with the Insurance Company or its agent or other representative, or both, have failed to produce a satisfactory resolution to the problem.

Department of Insurance
Consumer Communications Bureau
300 South Spring Street - South Tower
Los Angeles, California 90013
Toll Free Hotline Telephone Number: 1-800-927-4357
Local Telephone Number: 213-897-8921
Fax: 213 736-2562
Office Hours: 8:00 a.m. - 5:00 p.m.

This form is for contact information only, and it is not to be considered as a condition for the Summary of Benefits.

# ERISA

## SUMMARY PLAN DESCRIPTION

**Name of Plan:**
SSGI

**Policy Number:**
292000

**Identification Number:**
530009   011

**Participants Included:**
Refer to Eligible Group(s) under each plan.

**Name and Address of Employer:**
SSGI
1370 Ridgewood Drive
Suite 20
Chico, California
95973

**Contributions:**
Refer to "Who Pays For Your Coverage" under each plan.

**Plan Identification Number:**
a. Employer IRS Identification #: 68-0124142
b. Plan #: 506

**Plan Year Ends:**
March 31

**Plan Administrator, Name, Address, and Telephone Number:**
SSGI
1370 Ridgewood Drive
Suite 20
Chico, California.
95973

(530) 898-0660

**Agent for Service of
Legal Process on the Plan:**
SSGI
1370 Ridgewood Drive
Suite 20.
Chico, California
95973

## TYPE OF ADMINISTRATION

Insurer Administration

## AMENDING THE EMPLOYER'S ERISA PLAN

The Employer's ERISA plan may be changed in whole or in part by the Employer's company. Such changes must be in writing and endorsed on or attached to the ERISA plan.

## AMENDING UNUM'S SUMMARY OF BENEFITS

The Summary of Benefits may be changed in whole or in part. The Employer can request a Summary of Benefits change. Only an officer or registrar of UNUM can approve a change. The change must be in writing and endorsed on or attached to the Summary of Benefits.

NOTE: If you end active employment, see your supervisor to determine what arrangements, if any, may be made to continue your coverage beyond the date you end active employment.

## WHO CAN CANCEL THE SUMMARY OF BENEFITS OR A PLAN UNDER THE SUMMARY OF BENEFITS?

The Summary of Benefits or a plan under the Summary of Benefits can be cancelled:

- by UNUM; or
- by the Policyholder.

UNUM may cancel or offer to modify the Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for an Employer paid plan; or
- there is less than 75% participation of those eligible employees who pay all or part of the premium for a plan; or
- the Employer does not promptly provide UNUM with information that is reasonably required; or

- the Employer fails to perform any of its obligations that relate to this Summary of Benefits; or
- fewer than 10 employees are insured under a plan; or
- the Employer fails to pay any premium within the 31 day grace period.

If UNUM cancels the Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date.

If the premium is not paid during the grace period, the plan will terminate automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay UNUM all premium due for the full period each plan is in force.

The Employer may cancel the Summary of Benefits or a plan by written notice delivered to UNUM at least 31 days prior to the cancellation date. When both the Employer and UNUM agree, the Summary of Benefits or a plan can be cancelled on an earlier date. If UNUM or the Employer cancels the Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the Summary of Benefits or a plan is cancelled, the cancellation will not affect a payable claim.

## WHAT ARE YOUR RIGHTS UNDER ERISA?

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

- examine, without charge, at the Plan Administrator's office and at other specified locations, all plan documents including insurance contracts, and copies of all documents filed by the plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions;
- obtain copies of all plan documents and other plan information upon written request to the Plan Administra-

tor. The Plan Administrator may make a reasonable charge for the copies; and
- receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan.

The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries.

No one, including your Employer, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

If your claim for a benefit is denied, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have your claim reconsidered.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay these court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about your plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## WHAT IF YOUR CLAIM IS DENIED?

In the event that your claim is denied, either in full or in part, UNUM will notify you in writing within 90 days after your claim form was filed. Under special circumstances, UNUM is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision. If such an extension is required, you will receive a written notice from UNUM indicating the reason for the delay and the date you may expect a final decision. UNUM's notice of denial shall include:

- the specific reason or reasons for denial with reference to those Summary of Benefits' provisions on which the denial is based;

- a description of any additional material or information necessary to complete the claim and of why that material or information is necessary; and

- the steps to be taken if you or your beneficiary wish to have the decision reviewed.

Please note that if UNUM does not respond to your claim within the time limits set forth above, you should automatically assume that your claim has been denied and you should begin the appeal process at that time.

## WHAT DO YOU DO TO APPEAL?

If you or your authorized representative appeal a denied claim, it must be submitted within 60 days after you receive UNUM's notice of denial. You have the right to:

- submit a request for review, in writing, to UNUM;
- review pertinent documents; and
- submit issues and comments in writing to UNUM.

UNUM will make a full and fair review of the claim and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension, and a decision shall be made not later than 120 days following receipt of the request for review. The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those Summary of Benefits' provisions upon which the final decision is based.

**ACCIDENTAL BODILY INJURY** means bodily harm caused by accident and not contributed to by any other cause.

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment. Temporary and seasonal workers are excluded from coverage.

**ANNUAL EARNINGS** means your annual income received from your Employer as defined in the plan.

**DOCTOR** means:

- a person performing tasks that are within the limits of his or her medical license; and
- a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

UNUM will not recognize you, or your spouse, children, parents or siblings as a doctor for a claim that you send to us.

**ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to have your life premium waived by UNUM.

**EMPLOYEE** means a citizen or permanent resident of the United States or Canada who is in active employment in the United States with the Employer unless an exception is applied for and approved in writing by UNUM.

**EMPLOYER** means the Employer/Applicant named in the Application For Participation in the Select Group Insurance Trust, on the first page of the Summary of Benefits and in all amendments. It includes any division, subsidiary or affiliated company named in the Summary of Benefits.

**EVIDENCE OF INSURABILITY** means a statement of your medical history which UNUM will use to determine if you are approved for coverage. Evidence of insurability will be provided at your expense if you apply for coverage more than 31 days after your eligibility date.

**GAINFUL OCCUPATION** means an occupation that within 12 months of your return to work is or can be expected to provide you with an income that is at least equal to 60% of your annual earnings in effect just prior to the date your disability began.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INJURY** means:

- **for purposes of Portability**, a bodily injury that is the direct result of an accident and not related to any other cause.
- **for all other purposes**, a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the plan

INSURED means any person covered under a plan.

LAW, PLAN OR ACT means the original enactments of the law, plan or act and all amendments.

LAYOFF or LEAVE OF ABSENCE means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

LOSS OF A FOOT means that all of the foot is cut off at or above the ankle joint.

LOSS OF A HAND means that all four fingers are cut off at or above the knuckles joining each to the hand.

LOSS OF SIGHT means the eye is totally blind and that no sight can be restored in that eye.

PAYABLE CLAIM means a claim for which UNUM is liable under the terms of the Summary of Benefits.

PLAN means a line of coverage under the Summary of Benefits.

PRIVATE PASSENGER CAR means a validly registered four-wheel private passenger car (including Employer-owned cars), station wagons, jeeps, pick-up trucks, and vans that are used only as private passenger cars.

QUALIFIED CHILD is any of your unmarried dependent children under age 25 who, on the date of your death as a result of an accidental bodily injury, was either:

- enrolled as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level; or
- at the 12th grade level and enrolls as a full-time student in an accredited post-secondary institution of higher learning beyond the 12th grade level within 365 days following the date of your death.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

REGULAR CARE means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
- you are receiving the most appropriate treatment and care which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

RETAINED ASSET ACCOUNT:

- for Life Insurance, is an interest bearing account established at an intermediary bank in the name of your beneficiary, as owner.
- for Accidental Death and Dismemberment Insurance, is an interest bearing account established at an intermediary bank in the name of you or your beneficiary, as owner.

RETIREMENT PLAN means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by post tax or employee contributions, as that term is used in the Internal Revenue Code of 1986, as amended.

SICKNESS means:

- for purposes of Portability, an illness, disease or symptoms for which a person, in the exercise of ordinary prudence, would have consulted a health care provider.
- for all other purposes, an illness or disease. Disability must begin while you are covered under the plan.

**TRUST** means the policyholder trust named on the first page of the Summary of Benefits and all amendments to the policy.

**WAITING PERIOD** means the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.

**WE, US** and **OUR** means UNUM Life Insurance Company of America.

**YOU** means an employee who is eligible for UNUM coverage.

# Prowess Systems
### Insurance & Benefits
### (As of November 2000)

Prowess Systems provides a variety of employee benefits and insurance. The following is brief summary of these benefits and you are encouraged to refer to the original policy documents for a full understanding.

Presently the company provides medical, dental, long-term disability and life insurance for which it pays 85 percent of the premium for each employee who elects to enroll in the plan. Also, the company will pay 95% of the medical and dental premium for dependant coverage. Attached is a summary of these benefits provided by our insurance agency.

Salary will be paid in two monthly installments on the 15th and on the last business day of the month. You may elect to have a direct deposit to your personal checking account.

You will be entitled to 10 days of paid vacation for each full year of employment. It is requested that you discuss with your supervisor as early as possible in each year your desired vacation days. The company will endeavor to accommodate you, provided, however, it must be understood that the specific times for vacations must be authorized by your supervisor and must not fall at a time that would substantially inconvenience the company. The maximum vacation time you shall be eligible to accrue at any one time is 10 days. Once you have accrued the maximum 10 days you will stop accruing until you have used all or part of your earned vacation time. In addition, you are entitled to accrue six days sick leave of which you may accumulate a total of fifteen days of sick leave and roll into any subsequent calendar year for application against sick leave incurred that year, but in no event for monetary compensation.

The company has adopted a 401(k) salary deferral plan. The plan allows eligible employees to defer part of their income on a tax-favored basis into the plan. Your taxable income is reduced for every dollar you deposit into the plan. The money grows tax-free until your retirement. However, you must pay taxes when the money is paid out unless it is transferred into another retirement plan or IRA. You may begin deferring income on January 1, April 1, July 1 or October 1 of each year. You will have several investment options available to you. Paine Webber manages these accounts for us. The company may elect to make discretionary contributions.

For those employees located in Chico, California the company provides health club membership at a substantial savings.

As you well know, the availability of these fringe benefits is a function of, among other things, their cost and therefore the company reserves the right to change or rescind any and all of the fringe benefits offered at any one time by it

EXHIBIT



## MEMORANDUM

**DATE:**      July 23, 1997

**TO:**      ALL ROCS EMPLOYEES

**FROM:**      Lynn Swenson

**SUBJECT:**      Long Term Disability Buy-up Plan

---

Effective 8/1/97, all ROCS employees are enrolled in the Unum Long Term Disability Base Plan. This plan provides up to 60% of your monthly salary should you become disabled for more than 90 days. The base plan provides a basic LTD benefit percentage to 40% of salary and a Disability Plus benefit percentage for 20%. To qualify for the Disability Plus benefit there must be a loss of two activities of daily living or cognitive impairment as described on your personalized enrollment form. A booklet which describes your plan in detail will be forthcoming.

In addition, you may voluntarily participate in the buy-up plan which, depending on your selection of options, could provide coverage up to 80% of your monthly income (up to a maximum of $8,000). Attached is a booklet describing this voluntary buy-up plan and an individualized rate sheet of the cost to participate based on semi-monthly payroll deductions.

If you wish to participate in the voluntary buy-up plan, please select one of the available options, sign and date the personalized form, and return it to me no later than Wednesday, July 30th.







# UroMed
C O R P O R A T I O N

To All UroMed Employees:

Due to increasing costs, we are changing our Supplemental Life, Long Term Disability and Life/Accidental Death and Dismemberment benefit providers to The Hartford Group effective April 1, 2000.

## Long Term Disability

| Old Policy: | The Provident | Current Rate: | $0.59 per $100 of monthly covered payroll |
| New Policy: | The Hartford | Proposed Rate | $0.26 per $100 of monthly covered payroll |

Long Term Disability Premium is paid 80% by the company and 20% by the employee. Changing to the Hartford decreases the company and employee cost by 50% while increasing the maximum benefit from $6,000 per month to a maximum of $10,000 per month.

## Basic Life Insurance/Accidental Death and Dismemberment

| Old Policy: | The Phoenix | 0.16 per thousand | Company paid 1X salary |
| New Policy: | The Hartford | 0.15 per thousand | Company paid 2X salary |

Basic Life/Accidental Death and Dismemberment is a benefit paid 100% by UroMed Corporation. This change provides double the coverage for less the premium rate.

## Supplemental Life Insurance(Additional Life)

The Supplemental Life Insurance is 100% paid by the employee. This is an optional plan that UroMed employees may elect. The plan rates will remain the same.

You will be receiving two enrollment forms with summary highlights on each plan. The first form is for the Basic Life/AD&D and Long Term Disability. The second form is a personalized form for additional, optional Supplemental life Insurance.

Please send both forms back to Lisa Scibilia by April 30th, 2001. (If you choose not to elect the optional life, please check the appropriate box and return.

Please call ext 415 if you have any questions.

Thank you

EXHIBIT

# UROMED CORPORATION

## *The Hartford Long Term Disability Benefits Summary*

*Effective April 1, 2000*

| *Benefit Provisions* | *The Hartford* | |
|---|---|---|
| Eligibility | Class 1 : | All Full Time Employees Earning Less than $40,000 |
| | Class 2 : | All Full Time Employees Earning $40,000 or more |
| Benefit Percentage | 60% of annual base annual salary | |
| Minimum Monthly Benefit | Greater of 10% of salary or $100 | |
| Maximum Monthly Benefit | $10,000 | |
| Elimination Period | 90 days | |
| Own Occupation Period | Class 1 : | Two years own occupation |
| | Class 2 : | Own occupation to age 65 |
| Benefit Duration | ADEA Social Security Normal Retirement Age | |
| Pre-Existing Condition Limitation | 3/3/12 (applies only to new employees) | |
| Mental /Nervous & Substance Abuse Lifetime Benefit Limitation | 24 months | |
| Survivor Income Benefit | Lump sum payment equal to 3 months gross benefit | |
| Other Standard Benefits: | • Return to Work Incentives<br>• Social Security Integration<br>• Zero Day Residual | |

# UROMED CORPORATION

## *Sample Long Term Disability Rate Calculation*

*Hartford LTD Rate:*  $0.26  *Per $100 of Monthly Covered Payroll*

| Employee | Annual Salary | Individual Monthly Covered Payroll | Monthly Cost | Total Cost Per Pay Period |
|---|---|---|---|---|
| Mary Smith | $45,000.00 | $3,750.00 | $9.75 | $4.50 |
| John Jones | $32,000.00 | $2,666.67 | $6.93 | $3.20 |
| Jane Doe | $125,000.00 | $10,416.67 | $0.00 | $12.50 |

$$\frac{Sal}{12} \times 0.26$$

*Please Note :*   Monthly Covered Payroll Cap =   $10,000

# UROMED CORPORATION

## *The Hartford Group Basic Life & AD&D Benefit Summary*

| | |
|---|---|
| **Employee Life / AD&D Benefit** | Two times base annual earnings rounded to the next higher $1,000 |
| **Employee Contribution** | None ; Uromed Corporation pays 100% of the Basic Life/AD&D premium. |
| **Benefit Maximum** | $300,000 |
| **Waiver of Premium** | The amount of life insurance may be extended, without premium payments, during a period of total disability provided that the employee becomes disabled prior to retirement age, and the total disability last for at least nine months. |
| **Accelerated Death Benefit** | Employees may receive 50% of their life benefit (to a maximum of $50,000) if diagnosed with a terminal illness and an expectation that death will occur within 6 months. |
| **Benefit Reduction Schedule** | Up through age 64     100%<br>65-69     Reduce by 35%<br>70-74     Reduce by 35%<br>75÷     Reduce by 35% |

# LIFE/DISABILITY ENROLLMENT FORM

☒ Initial ☐ Change ☐ Termination ☐ Reinstatement

Hartford Life

## TO BE COMPLETED BY THE EMPLOYEE

| NAME | LAST | FIRST | M.I. | BIRTH DATE: M/D/Y |
|------|------|-------|------|-------------------|
| | CAPIANO | GIL | | JUNE 23 1958 |

| SOCIAL SECURITY NUMBER | SEX | MARITAL STATUS | | DATE OF MARRIAGE: M/D/Y |
|---|---|---|---|---|
| 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 | ☒M ☐F | ☐ Single ☒ Married | ☐ Widowed ☐ Separated ☐ Divorced | 5 MAY 1999 |

| EMPLOYEE HOME ADDRESS | STREET | CITY | STATE | ZIP |
|---|---|---|---|---|
| 4274 MT. HUKEE AVE | | SAN DIEGO | CALIF. | 92117-4734 |

DEPENDENT INFORMATION *(Complete only if dependent coverage is available and elected.)* [DEP LIFE ONLY]

| | LAST | FIRST | M.I. | SEX: M/F | BIRTH DATE: M/D/Y |
|---|---|---|---|---|---|
| SPOUSE *(Indicate last name if different than Employee)* | CAPIANO | ALLA | | F | 15 OCT 1972 |
| CHILD | | | | | |
| CHILD | | | | | |
| CHILD | | | | | |

Indicate type of coverage below. You may only elect coverages reflected in your Employer's contract. *(You will not be covered for coverages not included in your Employer's contract.)* To elect coverage check the box marked "Y". To decline coverage check the box marked "N".

| BASIC LIFE | SUPP LIFE | AD/D | WEEKLY DISABILITY | LTD |
|---|---|---|---|---|
| ☒ Y ☐ N | ☐ Y ☐ N | ☒ Y ☐ N | ☐ Y ☐ N | ☒ Y ☐ N |
| AMT _____ | ☐ ___ x Basic Annual Earnings ☐ OTHER | | ☐ ___ AMT _____ | |

| DEPENDENT LIFE | | | SUPP AD/D | LTD BUY-UP | |
|---|---|---|---|---|---|
| SPOUSE | ☐ Y ☒ N | AMT _____ | ☐ Y ☒ N | OPTION 1 _____ % | |
| CHILD | ☐ Y ☐ N | AMT _____ | | OPTION 2 _____ % | |

**BENEFICIARY DESIGNATION**—Please refer to the reverse side of this form for important information regarding beneficiary designation.

| | FULL NAME | ADDRESS | SSN | RELATIONSHIP | D.O.B. |
|---|---|---|---|---|---|
| PRIMARY | ALLA CAPIANO, WIFE | 4274 MT. HUKEE | 610 13 9393 | WIFE | 15 OCT 1972 |
| CONTINGENT | ROBERT CAPIANO, BROTHER | YONKERS NY | | BROTHER | 27 MAR 195 |

☐ I hereby apply for the coverages I have indicated above on behalf of myself and all dependents listed, and I authorize my Employer to make the appropriate deductions, if any, from my wages to pay for my share of the cost. I understand that the coverages available to me are in accordance with the provisions of the contract between Hartford Life and my Group Plan.

☐ I hereby waive the coverages offered to me. I understand that if I desire to apply for any of these coverages at a later date, I will be required to furnish, at my own expense, medical evidence in support of insurability, that is satisfactory to Hartford Life, before my coverage will become effective.

Signature _____ Date 10 APR 2001

## TO BE COMPLETED BY THE EMPLOYER

| POLICY SYMBOL | POLICY NUMBER | BILL UNIT | LOSS UNIT | BUSINESS LOCATION STATE | ORIGINAL EFFECTIVE DATE OF POLICY |
|---|---|---|---|---|---|
| | | | | | |

| EMPLOYER NAME | EMPLOYEE HIRE DATE | EFFECTIVE DATE OF COVERAGE | |
|---|---|---|---|

| EMPLOYEE OCCUPATION | EMPLOYEE CLASS | LIFE | WD | LTD |
|---|---|---|---|---|

| SALARY $ _____ | ☐ Annual | ☐ Monthly | ☐ Weekly | ☐ Hourly |
|---|---|---|---|---|

| TERMINATION DATE | REINSTATEMENT DATE |
|---|---|

*For Policyholders covered under Pennsylvania Long Term Disability policies: If, within 90 days immediately prior to becoming covered under the group contract, you or any dependent have received medical care or advice for a disease or physical condition, you, he or she may not be covered for such disease or physical condition until you, he or she has been covered for one year under this contract. This exclusion, however, only applies to a disease or physical condition for which medical care or advice has been received within 90 days immediately prior to becoming covered under the group contract.*

# Uromed Corporation

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

Name: *Gil Capianco*

Social Security #: _____
Date of Birth: _____
Date of Hire: _____
Effective Date: _____

The following costs should be calculated based on your age as of your effective date of coverage.

## Supplemental Life Insurance - Employee

You have the opportunity to enroll in Uromed Corporation's Supplemental Life Insurance plan. Your election may be made in increments of $10,000 to a maximum of 3 times your basic annual earnings or $350,000 – whichever is less. If you elect an amount that exceeds $50,000, you will need to provide evidence of good health that is satisfactory to Hartford Life before the excess can become effective. Use the rate chart and calculation line below to determine the pay period cost for this coverage.*

*Please note* - benefit reductions begin at age 65. Please see your benefits administrator for further information.

| Age | Under 35 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 | 65-69 | 70-74 | 75+ |
|-----|----------|-------|-------|-------|-------|-------|-------|-------|-------|-----|
| Rate | $0.450 | $0.750 | $1.150 | $1.950 | $3.300 | $5.500 | $7.300 | $11.350 | $19.950 | $32.600 |

☐ I elect to **enroll** in the Supplemental Life plan at the pay period cost below.*

_____ ÷ $10,000 = _____ x _____ = $ _____
Amount Elected                                          Rate Above                    Your Pay Period Cost*

☐ I elect to **decline** the Supplemental Life plan.

*Your cost may change if your age category changes within the benefits plan year.

## Supplemental Life Insurance - Spouse

If you elect the Supplemental Life plan for yourself, you may elect Supplemental Life coverage for your Spouse. Your election may be made in increments of $10,000 to a maximum of $50,000 but may not exceed 50% of your approved election. If you elect an amount that exceeds $20,000, your spouse will need to provide evidence of good health that is satisfactory to Hartford Life before the excess can become effective. Use the rate chart and calculation line below to determine your pay period cost for this coverage.** Spouse DOB: _____

| Age | Under 35 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 | 65-69 | 70-74 | 75+ |
|-----|----------|-------|-------|-------|-------|-------|-------|-------|-------|-----|
| Rate | $0.450 | $0.750 | $1.150 | $1.950 | $3.300 | $5.500 | $7.300 | $11.350 | $19.950 | $32.600 |

☐ I elect to **enroll** my Spouse in the Supplemental Life plan at the pay period cost below.**

_____ ÷ $10,000 = _____ x _____ = $ _____
Elected Benefit Amount                                   Rate Above                    Your Pay Period Cost**

☐ I elect to **decline** the Supplemental Life plan for my Spouse.

**Your cost may change if your spouse's age category changes within the benefits plan year.

# EMPLOYEE BENEFITS

## Review

for

# SSGI
# INC.

February 10, 2000

Prepared by

## Thomas E. Hughes, RHU

**Lindo, Hanna & Abbott**
a division of
InterWest Insurance Services, Inc.

1357 E. Lassen Avenue, Suite A
Post Office Box 8110
Chico, CA 95927
(530) 895-1010
(800) 873-3725
FAX (530) 895-3165
License # OBO1094
www.lhains.com



EXHIBIT

G

# *NOTICE*

The following is strictly a summary of the benefits package provided to you by your employer, **SSGI, Inc.** For a more detailed explanation of your benefits plan, please refer to the Benefits Booklet that has been provided by **Blue Shield of California, Guarantee Life and Unum.**



**NOMOS**

November 27, 2000

Gil Capianco
4274 Mt. Hukee Avenue
San Diego, CA 92117

Dear Gil:

As part of a corporate downsizing, your position with NOMOS Corporation is being eliminated effective December 8, 2000. Summarized below are the compensation and benefits you are entitled to receive.

Compensation. A paycheck will be issued to you on November 30, 2000, reflecting pay for regular time worked from your last paycheck through November 30, 2000. A check for the period December 1 through December 8, 2000, will be issued to you on December 15, 2000.

Accrued, Unused Vacation. All accrued, unused vacation will be paid to you in the November 30, 2000 payroll period, pending receipt of all outstanding time sheets.

Expense Reimbursement. All outstanding expenses for which you have submitted the appropriate paperwork for reimbursement will be paid to you within 5 business days of your date of termination. Reimbursement for qualified expenses submitted on an expense report turned in following your termination will be paid within 5 business days of receipt of the expense report. Subtracted from the expense reimbursements or from your final compensation check will be any advances that you have received from NOMOS.

COBRA. You and your eligible dependents have the option to continue as a member of the Company's group health insurance plans for the applicable period in accordance with federal law, i.e., COBRA, provided you pay all required premiums for such coverage in a timely manner. These premiums are at the Company's group rates.

401(k). You have the option of having your 401(k) account balance paid directly to you as a lump sum payment, having the account balance rolled over to another qualified plan or IRA, or keeping it in the current plan (as long as your balance exceeds $5,000). If you elect to receive a lump sum payment and do not directly rollover your account balance into another qualified plan or IRA, the plan is required to automatically withhold 20% of your payment for tax purposes. If you choose to have the payment made to you, you still have the option of rolling over the payment to a qualified plan or an IRA within 60 days (please check with a tax advisor to make sure it is an eligible rollover). However, 20% of your payment will still be withheld. Please refer to the enclosed "Special Tax Notice" for further information.

Life Insurance. Basic group life insurance benefits will cease on the date of termination. You have 31 days from your termination date to convert to an individual policy. If you are interested in conversion, please contact Human Resources.

Long Term Disability. Long Term Disability insurance benefits will cease on the date of termination.

**Stock Options.** Your right to exercise any vested stock options will terminate thirty (30) days after the date of your employment termination.

As a reminder, when you joined NOMOS, you signed an Employment Agreement that states your obligation not to disclose confidential or proprietary information obtained from the Company, its customers or clients.

If you have any questions concerning the benefits described in this letter, please contact me at (724) 934-8219 or Jill Welch at (724) 934-8269.

Sincerely,

John Manzetti /as

John W. Manzetti
Executive Vice President and CFO

NOTE: THIS EXHIBIT HAS BEEN INTENTIONALLY
DELETED

**<u>EXHIBIT "H"</u>**





Hartford Life

February 18, 2002

Lisa Scibilia
Uromed Corporation
1400 Providence Highway
Building #2
Norwood, MA  02062

Policy Holder:    Uromed Corporation
Claimant:         Gil Capianco
SSN:              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
Policy Number:    GLT219661

Dear Lisa:

In order to fully evaluate this claim for Long Term Disability (LTD) benefits, we need the following information:

Please complete and return the enclosed Physical Demands Analysis.

Please provide the weekly amounts and dates of Short Term Disability benefits
_____.

Please verify if this employee had coverage under your prior LTD carrier _____.
If so please provide the prior carrier policy booklet.

Please confirm the last day of work _____.

Please provide this employee's date of hire _____.

Please send us a photocopy of the enrollment card for this employee.  If not available, send copies of payroll records showing deductions for LTD premium since March 2001.

Please return all requested information within (21) days in order to avoid any delays in processing your claim for benefits.



EXHIBIT

Benefit Management Services
Syracuse Disability Claim Office
P.O. Box 4907
Syracuse, NY 13221-4907
(315) 385-5014

AR078

If you have any questions, please feel free to contact our office at (888) 875-4727. Our office hours are 8:00 AM to 6:00 PM EST, Monday through Friday.

Sincerely,

Christina M. Diecuch, Examiner
Hartford Life and Accident Insurance Co.

CC:    File Copy

 **Linda X Connor**
11/22/2002 06:28 AM

To: Kim M Huber/HLIFE@HARTFORD_LIFE
cc:
Fax to:
Subject: Re: EOI

I do not show where this individual came in through our office to be underwritten. I checked our old system as well as are new.
Linda
Kim M Huber

 **Kim M Huber**
11/21/2002 12:44 PM

To: Charlotte A Munsey/HLIFE@Hartford_Life, Linda X Connor/HLIFE@HARTFORD_LIFE
cc:
Fax to:
Subject: EOI

Charlotte and/or Linda,

I am working on an LTD claim appeal and I am trying to confirm whether evidence of insurability was ever submitted for the following individual.

Claimant:        Gil Capianco
SSN:             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
Policyholder:    Alliant Medical Technologies (UROMED)
Policy Number: GLT219661

If you need any additional information, please give me at call on 33178.

Thank you for your help.


Kim M Huber
BMS Appeal Specialist
(860) 843-3178

AR228

To: Craig Hatcher <CHatcher@UROMED.com>, Fritz Lagergren
    <flagergren@uromed.com>, Gearry Schroy <GSchroy@UROMED.com>, Steve Alt
    <SAlt@UROMED.com>, "Bret Heintz (E-mail)" <bheintz@prowess.com>,
    "Jeanne Holliday (E-mail)" <jholliday@prowess.com>,
Cc: Dan Muscatello <DMuscatello@UROMED.com>, Pat Donahue
    <PDonahue@UROMED.com>, Sharad Joshi <SJoshi@UROMED.com>, Domenic Micale
    <DMicale@UROMED.com>, "Julee Bennett (E-mail)" <jbennett@prowess.com>,
    "Vicki Terry (E-mail)" <vterry@prowess.com>
Subject: Acquisition News to Prowess/ROCS Customers

Hello.  I hope you're all doing well.  I am writing to let you know that all
U.S. Prowess and ROCS customers have been notified regarding the recent
acquisition.  Today, the following letter from Dan and news release was sent
out.  Please be sure to review the communication in case a customer
approaches you on this.  If you have any questions and/or concerns, please
do not hesitate to contact me.  Thank you and have a great day.
  <<Release letter to Prowess ROCs Clients_041601.doc>>  <<Abbreviated
Release Prowess Customers_041601.doc>>

Sincerely,
Heather L. Blasi
Marketing Coordinator

UroMed Corporation
1400 Providence Highway
Suite 2000
Norwood, MA  02062
(P) 781-762-2080  x-318
(F) 781-762-2737
(E) hblasi@uromed.com






April 17, 2001

Dear :

I am writing to introduce myself and our newly formed company to you. You may have heard our exciting news by now, but in case you have not, we want to let you know that UroMed Corporation has acquired SSGI/Prowess Systems. By combining our two organizations, we hope to provide you with a broader product offering and even better service and support.

UroMed (URMD) is a publicly traded company, which has been focused on the treatment of prostate cancer. Our plan is to continue to offer a range of products and services that include, but are not limited to, brachytherapy and external beam treatment planning systems, as well as Symmetra™ I-125 brachytherapy seeds. We, of course, will be contacting you to see how we are doing and apprise you of our future plans for product development.

In addition, we are pleased to let you know that Phillip Heintz, Ph.D. will remain with the new company as its Chief Technology Officer and a member of our Board of Directors. Lee Potts will remain an Executive Vice President. We look forward to working with Phil and Lee and building a solid future for our new organization.

This is an exiting opportunity for our two companies, but most importantly, it will create new opportunities for you, our valued customers. The next several months will be a time of transition for our new organization. We plan to regularly communicate with you on our overall progress.

Thank you for your continued support of our products. Attached for you review is an abbreviated version of our news release dated March 27, 2001, which includes further details regarding the acquisition.

Sincerely,


Dan Muscatello
President & Chief Executive Officer
UroMed Corporation

Enclosure

**FOR IMMEDIATE RELEASE**
Contact:
Domenic Micale
Vice President of Finance and Admin
UroMed Corporation
Tel: (781) 762-2080 x247
dmicale@uromed.com

## UROMED ANNOUNCES ACQUISITION OF SSGI PROWESS SYSTEMS

*Acquisition of SSGI Prowess Systems Expands Presence in Radiation Oncology*

NORWOOD, MA  March 27, 2001

## ACQUISITION OF SSGI PROWESS SYSTEMS

UroMed Corporation (OTCBB:URMD.OB) today announces the signing of a definitive
acquisition agreement with SSGI Prowess Systems ("SSGI"). SSGI, founded in 1987 by Philip Heintz,
PhD, and headquartered in Chico, California, is a privately held company that develops cancer treatment
planning software. The transaction is scheduled to close later today. SSGI is a leader in the field of
treatment planning for brachytherapy, a rapidly growing treatment modality for prostate cancer. In
addition, SSGI offers external beam therapy treatment planning systems and has a worldwide installed
customer base in excess of 500 sites. UroMed believes that the SSGI installed customer and revenue
base, combined with the UroMed customer base, presents a favorable environment on which to build a
stronger presence in the field of radiation oncology.

Dr. Heintz, founder of SSGI commented, "As an experienced Physicist and entrepreneur, I have a
unique perspective on this combination. Our combined companies now take a serious step toward
gaining the critical mass required to sustain a competitive edge in the radiation oncology field. I am
excited about being a large shareholder in the combined entity and the prospects for a bright future."

SSGI offers a network for radiation therapy planning that combines affordability with many
advanced high technological features. By utilizing a Windows NT software platform, SSGI systems
provide radiation oncology sites with advanced expansion capabilities through unmatched planning
system flexibility and low cost additional workstation licenses. SSGI's market penetration in the field of



**EXHIBIT**

**7**

brachytherapy treatment planning is strong; this is an area in which the combined company plans to expand throughout the world. The newly combined company will also capitalize on the external beam therapy market worldwide by solidifying key distribution partnerships.

"We are very pleased to announce the combination of UroMed and SSGI, as we believe it provides a solid platform on which to build a broader cancer therapeutics company", commented John Simon, UroMed's Chairman. Simon continued, "The combined company's revenue run rate is approximately double UroMed's stand-alone run rate and a deeper complementary product suite affords the new company the opportunity to establish itself as a more significant player in the broad-based cancer therapeutics market."

"This is one of the early steps in our core strategy of becoming a more substantial player in the field of radiation oncology, as well as prostate cancer specifically. This combined company will now be uniquely positioned in the brachytherapy market and will possess additional critical mass to allow it to more effectively compete in the overall market segment," said Dan Muscatello, UroMed's President and CEO. "Our Symmetra™ I-125 brachytherapy seed will now be the centerpiece of a unique brachytherapy product offering that may fuel the company's growth in the field of prostate cancer."

"UroMed's opportunity for success in the cancer therapeutics market is now enhanced as a result of this acquisition. We expect that synergies throughout the organization will be immediately capitalized on and our hope is that shareholder value will be realized as a result of this transaction," said Dan Muscatello, UroMed's President and CEO.

**COMPANY MISSION**

UroMed and SSGI are dedicated to establishing the combined company as a leader in the field of cancer treatment. As a result of the combination of the business of UroMed and SSGI, the new company will seek to market a portfolio of products including: the CaverMap Surgical Aid, available to aid physicians in preserving vital nerves during prostate cancer surgery; the Symmetra I-125 radioactive seeds, used in brachytherapy procedures to treat localized prostate cancer; brachytherapy introducer needles; Prosim - SSGI/Prowess product platform for 3D external beam cancer treatment, and the BrachyPro - SSGI/Prowess brachytherapy treatment planning system. In addition, the company plans to continue to dedicate resources to develop and/or acquire products that fit into its strategic platform.

**RISK FACTORS AND FORWARD-LOOKING STATEMENTS**

The Company recognizes that the previous paragraphs contain forward-looking statements relating to the Company's future activities, including the benefits expected through the Company's combination with SSGI, the development and commercialization of the SSGI product line and the company's CaverMap Surgical Aid and Symmetra I-125 radioactive seeds, the Company's anticipated sequential improvement in operating performance in the first quarter of 2001 and future growth. These forward-looking statements are based largely on the Company's expectations and are subject to a number of risks and uncertainties beyond the Company's control. Actual results could differ materially from these forward-looking statements as the result of certain risks, including the risk that the Company will not successfully manage the combination of the UroMed and SSGI businesses, that physicians will not use the Company's products in significant numbers, the risk that physicians using the Company's products will not develop into long-term users, the Company's ability to successfully reduce costs, the uncertainty of securing additional alliances, the uncertainty of manufacturing scale-up and general market acceptance of the SSGI product lines and the Company's Symmetra I-125 radioactive seeds, and the CaverMap Surgical Aid, as well as the Company's dependence on these products going forward, and the risk that the Company will not be able to successfully develop any new products. There can be no assurance that these risks would not have a material adverse effect on the Company. Other relevant risks are described in the Company's Annual Report on Form 10-K for the year ended December 31, 1999, under the headings "Forward-Looking Statements and Associated Risks" and "Risk Factors," which are incorporated herein by reference.

CaverMap ® Surgical Aid is a registered trademark of UroMed Corporation and Symmetra ™ I-125 Seeds is a trademark of UroMed Corporation.
Boston Healthcare Associates, Inc. served as the business advisor to UroMed in this transaction.

From: Lisa Scibilia <LScibilia@UROMED.com>
To: "'chico@prowess.com'" <chico@prowess.com>
Subject: FW: benefits agenda memo
Date: Thu, 12 Apr 2001 12:02:06 -0400
X-Mailer: Internet Mail Service (5.5.2650.21)


> -----Original Message-----
> From:    Domenic Micale
> Sent: Thursday, April 12, 2001 11:12 AM
> To:  Lisa Scibilia
> Subject:    benefits agenda memo
>
> <<Benefits overview.doc>>





EXHIBIT
9

1/9/2008

To:     UroMed/SSGI Chico Office
From:   Domenic Micale
        Lisa Tracey

Date:   April 12, 2001


## Benefits Overview Agenda

**Payroll**
- All paychecks will be processed by UroMed beginning with that for the period April 1 - April 15th, which you will receive by mail at the Chico office on April 13th.
- The payrolls are effective the closest business day prior to the 15th and the 30th of each month.
- All pre-selected direct deposits are effective with this first payroll.

**Health Insurance**
- Please return enrollment forms by April 20th.
- Transfer to the Blue Care Elect Preferred Plan effective June 1.
- Blue Care plan offers in-network and out-of-network options.
- Beginning June 1, employer pays 80% and employee pays 20% of of monthly premium.
- Reimbursement of deductible benefit (ie $1,000 paid you are reimbursed 80% of $750), will terminate on June 30, 2001. All acceptable claims submitted on or before June 30th will be honored.

**Dental Plan**
- Please return enrollment forms by April 20th.
- Transfer to the Delta Dental Plan effective June 1.
- Beginning June 1, employer pays 80% and employee pays 20% of of monthly premium.

**Life Insurance**
- Please return enrollment forms by April 20th.
- Transfer to the Harford Plan effective June 1.
- 100% paid by employer, offers 2 times base annual earnings, maximum of $300,000.
- Additional life available through Hartford, all excess premiums are employee paid.

**Long-term Disability**
- Please return enrollment forms by April 20th.
- Transfer to the Harford Plan effective June 1.
- Beginning June 1, employer pays 80% and employee pays 20% of of monthly premium

**Vacation Policy**
- Effective March 27th, you will earn at rate of 15 days of vacation per year or 1.25 days per month.
- At end of calendar year, you may carryover into subsequent year a maximum of 5 overall vacation days.
- All SSGI vacation balances at March 27th were transferred to UroMed.
- Additional vacation time earned (one additional day per year) for every year of service beginning with your 6th year of service. Original SSGI hire dates will be honored.

**Sick Time Policy**

- No changes to SSGI existing policy.

**Holidays**
- Total of 12 holidays per year.  10 scheduled holidays and 2 floating holidays per calendar year.  SSGI employees will have 2 floating holidays for 2001.

**401K Plan**
- You have received information packages for UroMed 401K Plan.
- On April 16th, you will receive the enrollment form and a rollover/distribution form.
- Return of enrollment and rollover/distribution forms by May 15th.
- All balance transfers into UroMed Plan will be effective July 10th, all employee 401k contributions through June 30th will be made to SSGI existing plan.

To: ssgi@prowess.com
Subject: New Phone list

Here is a new and integrated UroMed/Prowess Phone Directory.  I will no longer be updating the old list from
Access.  This list will probably change a few more times.  For now, Nancy Midgett and I will make sure they get
updated and emailed  out as they change.  This is made to be double-sided in a clear plastic sleeve.





EXHIBIT
10

**(Norwood Office)** 1400 Providence Hwy., Building 2 Norwood, MA 02062 **Tel:** (800) 433-5474 / (781) 762-2080 **Fax:** (781) 762-2416 **Web site:**

| Name | Title | Voicemail | | Email @ | |
|------|-------|-----------|--|---------|--|
| uromed.com | Pager | Cell Phone | | | |
| Benson, Dave | Shipping Dept. | 305 | | dbenson | |
| Blasi, Heather | Marketing Coordinator | 318 | | hblasi | |
| Donahue, Pat | Dir. of Brachytherapy Products | | 313 | pdonahue | |
| | 800-329-4905 | 781-888-0056 | | | |
| Joshi, Sharad | CaverMap Prod. Manager | 228 | | sjoshi | 888-694-1168 |
| | 508-344-9111 | | | | |
| Lauricella, Susan | Customer Service Manager | | 751 | slauricella | |
| | | | | | |
| Micale, Domenic | Chief Financial Officer (CFO) | | 247 | dmicale | |
| | 617-974-6668 | | | | |
| Midgett, Nancy | Assistant to CEO | 332 | | nmidgett | |
| Moniz, Mike | Director of Operations/IS | 483 | | mmoniz | 508-483-1894 |
| Muscatello, Dan | President/CEO | 489 | | dmuscate | |
| | 508-561-9011 | | | | |
| Rechdan, Ghassan | Electrical Engineer | 302 | | grechdan | |
| Ring, John | Quality Assurance Manager | | 232 | jring | |
| | | | | | |
| Rittenberg, Elisha | Accounting Manager | 317 | | erittenberg | |
| Scibilia, Lisa | Human Resources | 415 | | lscibilia | ← (LISA TRACEY) |
| Tobia, Fred | Dir. of Regulatory Affairs | 237 | | ftobia | |

**(Chico Office)** 1370 Ridgewood Drive, Suite 20 Chico, CA 95973 **Business:** (530) 898-0660 / **Sales** (800) 440-9506 / **Employee** (800) 952-7751 **Fax:** (530) 342-8966 / **Email:**

| Name | Title | Ext. | Uromed | Voicemail | Email @ | |
|------|-------|------|--------|-----------|---------|--|
| prowess.com | Home Phone (530) | Cell Phone | | | | |
| Bennett, Julee | Assistant to EVP | 213 | | jbennett | 342-5060 | |
| Bishop, James | Software Engineer | 242 | | jbishop | 894-1984 | |
| Bonser, Bryan | Customer Support | 241 | | bbonser | 894-6855 | |
| Heintz, Philip | Chief Technology Officer (CTO) | 229 | X 309 | pheintz | | |
| | 345-6606 | 530-518-3994 | | | | |
| Kerr, Rex | Software Engineer | 232 | | rkerr | 899-0701 | |
| Lewis, Dave | Tech. Operations | 205 | | dlewis | 892-9867 | |
| McCart, Ben | Software Engineer | 214 | | bmccart | 877-4355 | |
| McCracken, Diahanna | | Doc. Control/Product. | | | 220 | |
| | dmccracken | 343-1197 | | | | |
| Orner, Lance | Software Engineer | 236 | | lorner | 345-4964 | |
| Pace, Bob | Interim Accountant | 225 | | bpace | 877-8570 | |
| Ping, Mark | Software Engineer | 208 | | mping | 343-2430 | |
| Pompilio, Chris | SQA Coordinator | 245 | | cpompilio | 342-9727 | |
| Potts, Lee | Executive Vice President (EVP) | 215 | X 264 | lpotts | | |
| | 432-1416 | 530-521-7685 | | | | |
| Rollin, Mark | Sen. Software Engineer | 237 | X 306 | mrollin | 896-0257 | |
| Schloss, Andres | Project Manager | 226 | | aschloss | 384-0476 | |
| Slover, Angie | Executive Assistant | 221 | | aslover | 895-8507 | |
| Sullivan, Peter | Software Engineer | 231 | | psullivan | 343-8084 | |
| Terry, Vicki | IS/Cust. Support Mgr. | 223 | X 270 | vterry | 893-1076 | |
| | 530-990-0544 | | | | | |

| Trestrail, Lonnie | Software Engineer | 230 | | ltrestrail | 345-3052 | |
|---|---|---|---|---|---|---|
| Vargas, Karen | Customer Database | 218 | | kvargas | 345-4440 | |
| Vitale, Cindy | SQA Technician | 249 | | cvitale | 873-7703 | |
| Wild, Sue | SQA Manager | 238 | | swild | 873-6590 | |
| Zhang, Yu (JB) Ph.D. | | | Radiological Physicist | | 239 | |
| | zhang | | 899-0993 | | | |

## Sales and Field Applications Support

| Name/Address | Title | Email | Home/Office/Voicemail |
|---|---|---|---|
| | **Pager/Cell Phone** | | |
| Alt, Steve 608 Quail Keep Drive Safety Harbor, FL 34695 | | | Sales Rep. |
| | salt@uromed.com | | Office: 727-799-7387 Voice: |
| 800-433-5474 X 518 Fax: | 727-799-7387 | Pager: 800-651-3298 | |
| Capianco, Gil 4274 Mount Hukee Avenue San Diego, CA 92117 | | | ROCS Support (7am-5pm) |
| | gcapianco@prowess.com | | Home: 858-268-7920 Office: |
| 858-268-7878 | | | |
| Hatcher, Craig 172 San Simeon Place Vallejo, CA 94591 | | | Sales Rep. |
| | chatcher@uromed.com | | Office: 707-648-0429 Voice: |
| 800-433-5474 X 556 Fax: | 707-648-0429 | Pager: 888-206-9656 | Cell: 510-812-8333 |
| Heintz, Bret, M.S 6306 Parkland Oaks Drive San Antonio, TX 78240 | | | Physicist |
| | bheintz@prowess.com bheintz@saci.org | | Home: 210-543-2172 Office: |
| 210-616-5663 E-Fax: 419-828-9476 | | Pager: 800-963-9417 | Cell: 210-861-2061 |
| Holliday, Jeanne, C.M.D. 516 East 10th Street Rushville, IN 46173 | | | Sales/Field Applications |
| | jholliday@prowess.com | | Home: 765-932-5613 Office: |
| 765-938-3382 Fax: 765-938-5283 | | Cell: 530-570-0085 | |
| Johri, Vikram 32 Gorst Road London SW11 6JE United Kingdom | | | Sales Rep. |
| | vjohri@uromed.com vikramjohri@hotmail.com | | |
| | Office: (011) 44-207-223-9521 # 2: | | (011) 44-207-228-3406 Voice: 800- |
| 433-5474 X 506 Fax: (011) 44-207-223-9521 | | | |
| Jurisch, Roland 1419 McDonald Road Fallbrook, CA 92028 | | | Physicist / ROCS Support |
| (7am-5pm) | rjurisch@uromed.com | | Office: 760-451-0064 |
| Kao, Roger 895 Villa Street Mountain View, CA 94041 | | | Asia Sales Rep. |
| | rkao@prowess.com rogerkao@email.msn.com | | |
| | Office: 650-964-3010 Fax: 650-964-8138 | | |
| | Cell: 650-796-8827 | | |
| Kao, Roger (Korea Office) #717 Life Office tel 61-3 Yoeido-Dong Youngdungpo-ku Seoul, Korea | | | |
| | Asia Sales Rep. | SSGIKOR@kornet.net | Office: (011) 82-2-783-5513 |
| Fax: (011) 82-2-7835514 Cell: (011)82-182493969 | | | |
| Lacinski, Gary 12812 Kingston Way North Royalton, OH 44133 | | | V.P of Sales |
| | glacinski@prowess.com | | Office: 440-582-8002 Voice: |
| 800-433-5474 X 239 Fax: 440-582-8006 | | Cell: 530-518-2869 | |
| Lagergren, Fritz 6615 Elveddn Drive Dallas, TX 75248 | | | Sales Rep. |
| | flagergren@uromed.com | | Office: 972-380-6055 Voice: |
| 800-433-5474 X 546 Fax: 972-380-6754 | | Pager: 888-361-7179 | Cell: 972-467-2777 |
| Mahokey, Chuck 232 Oak Entrance Drive Jefferson Hills, PA 15025 | | | Sales Rep. |
| | cmahokey@prowess.com | | Home: 412-655-2305 Office: |
| 412-653-3887 Fax: 412-653-6122 | | Cell: 412-600-8772 | |
| Nydegger, Cecilia, C.M.D. 4707 Leydon Way Ellicott City, MD 21042 | | | Sales/Field Applications |
| | cnydegger@prowess.com | | Home: 410-992-0326 Office: |
| 410-992-3088 Fax: 410-992-3708 | | Pager: 410-416-4547 | Cell: 530-518-6650 |
| Smith, Shawn, C.M.D. 2328 Donegal Way Hudson, WI 54016 | | | Sales/Field Applications |
| | ssmith@prowess.com | | Home: 715-381-7391 Office: |
| 715-381-9808 Fax: 715-381-9809 | | Cell: 530-570-2557 | |
| Spivey, Brent, C.M.D. 1308 High Meadows Drive Norman, OK 73071 | | | Sales/Field Applications |

bspivey@prowess.com
Home: 405-364-3279 Office:

405-307-8495 Fax:  405-307-8496
Cell:  530-518-9471

Schroy, Gearry 7 Midbridge Drive Medford, NJ  08055
Sales Rep.

gschroy@uromed.com
Office: 609-953-5871 Voice:

800-433-5474 X 561 Fax:  609-953-5871
Pager: 877-247-1830 Cell:   609-870-7903